## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Pearlie Boyd, Alberto Camacho, Dieisha Hodges, Monic Serrano, Sienna Guerrero-Brown, Stephanie Puckett, Genna Unley, Connie Wilson, Cami McEvers, Laurie Cahill, Harmony Deflorio, Joslyn Sanders, Marsha Solmssen, and Jessica Brodiski individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Target Corp.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Pearlie Boyd, Alberto Camacho, Dieisha Hodges, Monic Serrano, Sienna Guerrero-Brown, Stephanie Puckett, Genna Unley, Connie Wilson, Cami McEvers, Laurie Cahill, Harmony Deflorio, Josyln Sanders, Marsha Solmssen, and Jessica Brodiski, (collectively referred to herein as "Plaintiffs"), by and through their attorneys of record, upon personal knowledge as to their own acts and experiences, and upon information and belief as to all other matters, file this complaint against Target Corp. ("Target" or "Defendant") and allege the following:

### INTRODUCTION

1.    This is a proposed class action against Target for misleading consumers through its "Target Clean" label, which it has applied to a large number of beauty products, many of which are not as "clean" as Target represents and contain harmful or unwanted

ingredients. By labeling certain unclean products, or products that contain harmful or unwanted ingredients as "Target Clean," Target has caused significant harm to consumers looking for cleaner beauty products for both them and the environment.

2.      Target has, intentionally and on its own, labeled certain products as "clean" and free from "commonly unwanted"[1] chemicals or ingredients.  In many cases, the manufacturers of these products and other retailers selling the products do not label, advertise, or market the products as "clean" or "free from unwanted" chemicals or ingredients.  Target created and utilized the "Clean" label for its own profit, marketing the Target Clean label as an easy way for consumers to identity purportedly cleaner products, without having to do any of their own analysis, and thereby creating an easier buying experience for consumers and increasing the likelihood that consumers would choose to shop at Target, over other retailers, for their beauty products.

3.      Target launched Target Clean in 2019, focusing on household essentials and baby goods, and months later expanded to beauty items.[2]  Now, Target sells more than 4,000 products featuring the green and white hexagonal Target Clean seal (pictured below), which purportedly helps shoppers distinguish products Target has identified and marketed as "clean" products. [3]

---

[1] https://corporate.target.com/article/2019/07/target-clean-beauty.
[2] Nicole Saunders, "Target Clean beauty guide: 7 top-rated products of 2021, NBC SELECT, Jan. 21, 2021, https://www.nbcnews.com/select/shopping/target-clean-beauty-products-ncna1254814 (Mar. 21, 2023).
[3] *Id.*



4. According to Target, to qualify for the "Target Clean" stamp of approval, beauty products, ranging from skin care and hair care to makeup, plus baby personal care items, like diaper rash creams and wipes, must be generally free of a group of ingredients. The ingredients include: (1) **Propylparaben and Butylparaben**, which are parabens (preservatives) and endocrine (hormone) disruptors, according to nonprofit Environmental Working Group's (EWG) ingredients database. The National Institute of Environmental Health Sciences reports that endocrine disruptors are linked to immune, reproductive and developmental health issues. Additionally, the Campaign for Safe Cosmetics found that parabens are endocrine disrupters and are related to developmental and reproductive toxicity, and UV-induced damage of skin cells[5]; (2) **Phthalates**, which are typically found in synthetic fragrances and can disrupt hormones[6]; (3) **Formaldehyde**, which according to

---

[4] *See supra*, fn. 1, https://www.target.com/c/target-clean/-/N-p4n12.

[5] Parabens, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/parabens/ (last visited Aug. 20, 2023).

[6] Phthalates are found on the State of California Environmental Protection Agency Office of Environmental Health Hazard Assessment Safe Drinking Water and Toxic Enforcement Act of 1986's list of Chemicals Known to the State to Cause Cancer or Reproductive Toxicity ("California Proposition-65). See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (Aug. 11, 2023).

the National Cancer Institute, can cause watery eyes, coughing, skin irritation, wheezing, and burning sensations in the eyes, nose, and throat; (4) **Formaldehyde donors**, which are preservatives that help extend a product's expiration date; (5) **Nonylphenol ethoxylates (NPEs)** are detergent-like substances that negatively impact marine life, according to the Environmental Protection Agency; (6) **Oxybenzone**, a chemical sun blocking agent that can be damaging to the coral and may enter the bloodstream; (7) **Sodium laureth sulfates (SLEs)**, cleansing agents which cause skin irritation; (8) **Retinyl Palmitate**, a skin conditioner made from vitamin A and palmitic acid that causes skin irritation; (9) **Hydroquinone**, a skin lightening agent that causes dryness and irritation, also prolonged use can cause skin to turn black and blue, according to the American Osteopathic College of Dermatology; (10) **Triclosan (TCS)**, which is typically found in antibacterial products, but the FDA ruled to remove triclosan from antibacterial soap in 2017; (11) **Triclocarban**, another antibacterial agent that can impact testosterone levels and cause PCOS, a hormonal imbalance in women, side effects of which include irregular menstrual cycles, hair loss, breakouts, weight gain, and fertility issues; (12) **Butylated Hydroxyanisole (BHA)**, a synthetic antioxidant that causes skin irritation and reactions and disrupts hormones[7]; (13) **Butylated Hydroxytoluene (BHT)**, an antioxidant and preservative that causes irritation

---

[7] Butylated Hydroxyanisole is found in California Proposition-65. *See* https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (Aug. 11, 2023).

and disrupts hormones (collectively "Target Clean Banned Beauty Ingredients").[8]  These

ingredients have known impacts on human health and the environment.

     5.     Target uses the following sign in its stores to explain the Target Clean symbol

and identify the Target Clean Banned Beauty Ingredients to consumers:



[9].

---

[8] *See* supra, fn. 1, https://www.nbcnews.com/select/shopping/target-clean-beauty-products-ncna1254814.
[9] This image was taken at the Richfield, Minnesota Target location on December 9, 2022.

This sign is misleading to consumers at minimum because it creates the presumptions that: (1) products marked "Target Clean" do not contain any of these ingredients even though some of the products do contain these exact ingredients; (2) products formulated without these Target Clean Banned Beauty Ingredients are in fact clean despite the presence of other equally or more harmful ingredients in the products, and; (3) the presence of these ingredients at <100 ppm is a safe amount for consumer exposure, even though exposure to some of these ingredients and other forever chemicals are dangerous at much smaller consistencies.

6.      Ostensibly, if a product does not contain the Target Banned Beauty Ingredients, Target marks that product as "Target Clean" and markets it to consumers as a clean product.  Many of the "Target Clean" marked products, however, contain other harmful or unwanted ingredients not on Target's list (i.e. ingredients other than those listed in Paragraph 4 above), including, but certainly not limited to other parabens or ingredients listed on California Proposition-65 (which identifies products that are known to cause cancer, birth defects, or other reproductive harm), the European Chemicals Agency's list of toxic chemicals, or list created by third party evaluators like the Environmental Working Group and the Good Face Project, and non-transparent ingredients like "fragrance," which often contain harmful and unwanted chemicals, or actually contain Target Clean Banned Beauty Ingredients.  Consumers have no way to know what is included in a product that does not transparently list all ingredients, such as products that identify "fragrance" as one of the ingredients.  Target does not require manufactures to disclose the components of

"fragrance" ingredients to Target customers to participate in the Target Clean label program.

7.    This has an undeniably harmful effect on consumers who use the "Target Clean" label to identify and ultimately purchase cleaner and safer beauty products.

8.    Additionally, the sign identifying the Target Clean Banned Beauty Ingredients does not always appear next products marked "Target Clean."  For example, below is an image of the Physicians Formula Mosaic Bronzer in Target:



10

---

[10] This photo was taken at the Richfield, Minnesota Target location on April 21, 2023.

This identifies this product as "Target Clean" without any additional information or disclaimers, and further, does not even direct consumers to where they may be able to access the additional information or disclaimers.

9.    The green hexagonal "Target Clean" symbol appears next to this Physicians Bronzer and represents the product as "clean" without any disclaimers.  Making "clean" claims, while burying or not prominently disclosing the scope of the "clean" claim (sometimes referred to as putting claims in the "fine print") is a paramount level of misrepresentation (later referred to as a form of greenwashing) because a consumer is not likely to examine marketing labels not directly found on a product or disclaimers in fine print.    Notably, this Physicians Mosaic Bronzer contains Propylparabens, an ingredient that is supposed to be excluded from "Target Clean" marked products, and a host of other harmful ingredients. In recent years, consumers have become increasingly concerned about using products that are safe for exposure to humans, animals, and the environment and clean.    As a result, consumers are demanding products that are made from natural ingredients and are environmentally sound, including products that do not harm the environment through the product's ingredients, manufacture, use, or disposal.    Indeed, consumers have poured billions of dollars into the "ecofriendly" and "natural" products market.    In fact, in a recent report, researchers found that Gen Z (people born roughly between 1996 and 2010) are more likely to spend money on companies and brands seen to be ethical.[11]

---

[11] Deena Robinson, "What is Greenwashing?", EARTH.ORG, Nov. 13, 2022, https://earth.org/what-is-greenwashing/ (Mar. 21, 2023).

10.     Another report, Nielson's Global Corporate Sustainability Report, found that 66% of consumers will spend more on a product if it comes from a sustainable brand, and that jumps to 73% among millennials.  Therefore, companies have a financial incentive to be more socially conscious, or at least appear to be.[12]

11.     This consumer movement toward environmentally sound products is generally called the "green" movement.  Companies, like Defendant, looking to profit off the growing environmental "green" movement, and gain a share of the business going to truly "green" products, without going green, deceptively represent their products as "green."   This is greenwashing, a term coined to describe this type of conduct.  "Greenwashing" is a term used to describe companies misleading consumers regarding the environmental practice of the company or the environmental benefits of a product or service.  In these greenwashing instances, the company is not making any notable efforts related to the environment, or at least not to the extent they claim to be.[13]

12.     Greenwashing is prevalent in cosmetics and beauty product brands, as consumers look for products and brands that are greener and cleaner for themselves and the environment.  To consumers, "clean" beauty means that consumers can use a product without risking their health and the ingredients list is transparent and only contains safe, non-toxic ingredients that are free from, *inter alia*, hormone disruptors and carcinogens.[14]

---

[12] *Id.*

[13] Carlyann Edwards, "What is Greenwashing?" BND, Feb. 21, 2023, https://www.businessnewsdaily.com/10946-greenwashing.html (Mar. 21, 2023).

[14] "What Does 'Clean Beauty' Mean in 2022?" GOOD FACE PROJECT, https://thegoodfaceproject.com/articles/what-is-clean-beauty (Mar. 21, 2023).

13.    Target has taken advantage of consumers' desire to find cleaner products by creating and over-using the "Target Clean" label on products that have not actually earned the clean label (i.e. the products actually contain some of the Target Clean Banned Beauty Ingredients), may not be "clean" for other reasons (i.e. contain other harmful ingredients that have been banned from cosmetics in other countries and are also known environmental and human toxins), and in many cases do not *themselves* purport to be clean products. Target creates the "clean" label and independently applies it to products. It does this to entice consumers to shop at Target, where Target has already identified purportedly "clean" products, over other competing stores that have not stamped products as clean.

14.    Defendant's marketing and labels for its "Target Clean" stamped products represent the products as "clean" and "formulated without ingredients [consumers] may not want." These representations have led, and continue to lead consumers to believe the "Target Clean" stamped products are "clean" products or are otherwise green products that will not harm the environment through their ingredients, manufacture, use, or disposal and will be safe and good for humans. Also, by making these representations on its packaging, Defendant represents the "Target Clean" products are safe and sound.

15.    Unfortunately for consumers, these representations by Defendant are false or misleading.

16.    Plaintiffs have identified several products in the beauty category that have the "Target Clean" label but are not actually "clean" and do contain unwanted or harmful ingredients. The products include: Almay Multi-Benefit Mascara, Covergirl Clean Fresh Pressed Powder, Covergirl TruBlend Matte Foundation, Maybelline Green Edition Balmy

Lip Blush, Formulated with Mango Oil, Maybelline Green Edition Mega Mouse Mascara, Physicians Formula Monoi Bronzer, Matte Bronzer, Physicians Formula Magic Mosaic Bronzer Light Bronzer, Physicians Formula Murumuru Butter Believe It! Blush, Physicians Formula Powder Palette Pressed Powder, Wet n' Wild Bare Focus Tint Hydrator, Wet n' Wild Color Icon Blush, Wet n' Wild Contouring Palette, and Wet n' Wild Photo Focus Loose Setting Powder (collectively referred to herein as the "Identified Products").

17.    This subset of Target Clean marked beauty products represents the large-scale problem with the Target Clean label—it does not identify actual, clean products for consumers and misguides consumers looking for clean products to bring into their homes, and apply directly to their or their loved ones' bodies, (in some cases every day) in sensitive areas like their skin, face, mouth, and eyes.  This list is not an exhaustive list of all Target Clean marked beauty products that contain unwanted or harmful ingredients.

18.    Plaintiffs, individually and on behalf of the Class and Subclasses of similarly situated individuals, bring this class action to end Defendant's deceptive practice with its Target Clean label and to recover damages caused by Defendant's deception.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between Plaintiffs, who, as alleged below, are citizens of Alabama, Arizona, California, Colorado, Florida, Illinois, Indiana,

Michigan, New Hampshire, New York, Oklahoma, and Washington, and Defendant is a citizen of Minnesota.

20.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct occurred within this District and Defendant is headquartered and has its principal place of business here.

<div align="center">

**PARTIES**

</div>

21.    **Plaintiff Pearlie Boyd** is and has been at all relevant times a resident of Pinson, Alabama.  She purchased the Covergirl TruBlend Matte Foundation in or around July 2021.  Ms. Boyd has purchased the TruBlend Foundation from Target, in-store, on more than one occasion.  She purchased the TruBlend Foundation from the Trussville, Alabama and Fultondale, Alabama locations. Ms. Boyd looks for clean and green labels when purchasing household and personal items and prefers to purchase "clean" marked products.  The Target Clean label on the TruBlend Foundation impacted Ms. Boyd's decision to purchase the product and she would not have purchased the product, or would have purchased the product under different terms, had she known the TruBlend Foundation contained some unwanted or harmful ingredients.

22.    **Plaintiff Alberto Camacho** is and has been at all relevant times a resident of Phoenix, Arizona.  He purchased the Physicians Formula Powder Palette Pressed Powder in or around May 2021 for his wife.  He purchased the Physicians Powder from Target, in-store, from the Phoenix, Arizona location.  Mr. Camacho tries to purchase clean beauty products for his wife.  The Target Clean label on the Physicians Powder impacted Mr. Camacho's decision to purchase the product and he would not have purchased the

<div align="center">12</div>

product, or would have purchased the product under different terms, had he known the Physicians Powder contained some unwanted or harmful ingredients.

23.    **Plaintiff Dieisha Hodges** is and has been at all relevant times a resident of Oakland, California.   She purchased the Almay Multi-Benefit Mascara in or around December 2022.  Ms. Hodges purchased the Almay Mascara from Target, in-store, from the Emeryville, California location.  She tries to purchase clean products and the Target Clean label on the Almay Mascara impacted Ms. Hodges' decision to purchase the product, and she would not have purchased the product, or would have purchased the product under different terms, had she known the Almay Mascara contained some unwanted or harmful ingredients.

24.    **Plaintiff Monic Serrano** is and has been at all relevant times a resident of North Hollywood, California.  She purchased the Covergirl Clean Fresh Pressed Powder product in or around January 2023.  Ms. Serrano purchased the Covergirl Fresh Powder from Target, in-store, from the Pacoima, California location.  Ms. Serrano tries to purchase clean products and the Target Clean label on the Covergirl Fresh Powder impacted Ms. Serrano's decision to purchase the product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the Covergirl Fresh Powder contained some unwanted or harmful ingredients.

25.    **Plaintiff Sienna Guerrero-Brown** is and has been at all relevant times a resident of Broomfield, Colorado.  She has purchased the Wet n' Wild Photo Focus Loose Setting Powder from Target, in-store.  She tries to purchase clean products and the "Target Clean" label on the Wet n' Wild Powder impacted Ms. Puckett's decision to purchase the

13

product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the wet n' Wild Powder contained unwanted or harmful ingredients.

26.    **Plaintiff Stephanie Puckett** is and has been at all relevant times a resident of Munith, Michigan.  She has purchased the Covergirl Clean Fresh Pressed Powder from Target, in-store.  She tries to purchase clean products and the Target Clean label on the Covergirl Fresh Powder impacted Ms. Puckett's decision to purchase the product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the Covergirl Fresh Powder contained unwanted or harmful ingredients.

27.    **Plaintiff Genna Unley** is and has been at all relevant times a resident of Wilmington, Illinois.  She purchased the Covergirl TruBlend Matte Foundation in or around March 2022.  Ms. Unley purchased the Covergirl Matte Foundation from Target, in-store, from the Joliet, Illinois location.  She tried to purchase clean products and the Target Clean label on the Covergirl Matte Foundation impacted Ms. Unley's decision to purchase the product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the Covergirl Matte Foundation contained unwanted or harmful ingredients.

28.    **Plaintiff Connie Wilson** is and has been at all relevant times a resident of South Lafyaette, Indiana.  She has purchased the Wet n' Wild Bare Focus Tinted Hydrator and the Physicians Formula Monoi Bronzer, Matte Bronzer.   Ms. Wilson purchased the Wet n' Wild and Physicians Formula products from Target, in-store.  She tries to purchase

clean products and the Target Clean label on the Wet n' Wild and Physicians Formula products impacted Ms. Wilson's decision to purchase the products. She would not have purchased the products, or would have purchased the products under different terms, had she known the Wet n' Wild and Physicians Formula products contained some unwanted or harmful ingredients.

29.    **Plaintiff Cami McEvers** is and has been at all relevant times a resident of Munith, Michigan. She has purchased the Covergirl Clean Fresh Pressed Powder and Covergirl TruBlend Matte Foundation. Ms. McEvers purchased the Covergirl products from Target, in-store. She tries to purchase clean products and the Target Clean label on the Covergirl products impacted Ms. McEvers' decision to purchase the products. She would not have purchased the products, or would have purchased the products under different terms, had she known the Covergirl products contained some unwanted or harmful ingredients.

30.    **Plaintiff Laurie Cahill** is and has been at all relevant times a resident of Laconia, New Hampshire. She has purchased the Maybelline Green Edition Balmy Lip Blush, Formulated with Mango Oil from Target, in-store in New Hampshire. She tries to purchase clean products and the Target Clean label on the Maybelline Lip Blush impacted Ms. Cahill's decision to purchase the product. She would not have purchased the product, or would have purchased the product under different terms, had she known the Maybelline product contained unwanted or harmful ingredients.

31.    **Plaintiff Harmony Deflorio** is and has been at all relevant times a resident of Ronknonkoma, New York. She purchased the Covergirl Fresh Powder from Target, in-

15

store, from the Bohemia, New York location.  She tries to purchase clean products for her home and her personal use and the Target Clean label on the Covergirl Fresh Powder impacted Ms. Deflorio's decision to purchase the product.  She would not have purchased, or would have purchased the product under different terms, had she known the Covergirl Fresh Powder contained some unwanted or harmful ingredients.

32.    **Plaintiff Joslyn Sanders** is and has been at all relevant times a resident of Cordell, Oklahoma.  She purchased Physicians Formula Murumuru Butter Believe IT! Blush from Target, in-store, from the Yukon, Oklahoma location.  She tries to purchase clean products and the Target Clean label on the Physicians Butter Blush impacted Ms. Sanders' decision to purchase the product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the Physicians Butter Blush contained some unwanted or harmful ingredients.

33.    **Plaintiff Marsha Solmssen** is and has been at all relevant times a resident of Seattle, Washington.  She has purchased the Physicians Formula Magic Mosaic Bronzer, Light Bronzer from Target, in-store in Washington.  She tries to purchase clean products and the Target Clean label on the Physicians Bronzer impacted Ms. Solmssen's decision to purchase the product.  She would not have purchased the product, or would have purchased the product under different terms, had she known the Physicians Bronzer contained unwanted or harmful ingredients.

34.    **Plaintiff Jessica Brodiski** is and has been at all relevant times a resident of Renton, Washington.  She has purchased the Physicians Formula Murumuru Butter Believe It! Blush; Physicians Formula Powder Palette Pressed Powder, Almay Multi-Benefit

Mascara, Covergirl Clean Fresh Pressed Powder, Maybelline Green Edition Balmy Lip Blush, Formulated with Mango Oil, Maybelline Green Edition Mega Mouse Mascara, Physicians Formula Magic Mosaic Bronzer Light Bronzer, Physicians Formula Murumuru Butter Believe It! Blush, Physicians Formula Powder Palette Pressed Powder, and Wet n' Wild Color Icon Blush from Target, both online and in-store. She tries to purchase clean products and the Target Clean label on the products she purchased impacted Ms. Solmssen's decision to purchase the products. She would not have purchased the products, or would have purchased the products under different terms, had she known they contained unwanted or harmful ingredients.

35.    **Plaintiffs:** A summary of the Plaintiffs is below.

| Plaintiff Name | Target Clean Product(s) Purchased | State of Purchase | In Target Store or Online | State Citizen |
|---|---|---|---|---|
| Pearlie Boyd | Covergirl TruBlend Matte Foundation | AL | In-Store | AL |
| Alberto Camacho | Physicians Formula Powder Palette Pressed Powder | AZ | In-Store | AZ |
| Dieisha Hodges | Almay Multi-Benefit Mascara | CA | In-Store | CA |
| Monic Serrano | Covergirl Clean Fresh Pressed Powder | CA | In-Store | CA |
| Sienna Guerrero-Brown | Wet n' Wild Photo Focus Loose Setting Powder | CO | In-Store | CO |
| Stephanie Puckett | Covergirl Clean Fresh Pressed Powder | FL | Target Pick-up Order | FL |
| Genna Unley | Covergirl TruBlend Matte Foundation | IL | In-Store | IL |

| Plaintiff Name | Target Clean Product(s) Purchased | State of Purchase | In Target Store or Online | State Citizen |
|---|---|---|---|---|
| Connie Wilson | Wet n' Wild Bare Focus Tinted Hydrator; and Physicians Formula Monoi Bronzer, Matte Bronzer | IN | In-Store | IN |
| Cami McEvers | Covergirl Clean Fresh Pressed Powder; and Covergirl TruBlend Matte Foundation | MI | In-Store | MI |
| Laurie Cahill | Maybelline Green Edition Balmy Lip Blush, Formulated with Mango Oil | NH | In-Store | NH |
| Harmony Deflorio | Covergirl Clean Fresh Pressed Powder | NY | In-Store | NY |
| Joslyn Sanders | Physicians Formula Murumuru Butter Believe It! Blush | OK | In-Store | OK |
| Marsha Solmssen | Physicians Formula Magic Mosaic Bronzer Light Bronzer | WA | In-Store | WA |
| Jessica Brodiski | Physicians Formula Murumuru Butter Believe It! Blush; Physicians Formula Powder Palette Pressed Powder; Almay Multi-Benefit Mascara, Covergirl Clean Fresh Pressed Powder; Maybelline Green Edition Balmy Lip Blush, Formulated with Mango Oil; Maybelline Green Edition Mega Mouse Mascara; Physicians Formula Magic Mosaic Bronzer Light Bronzer; Physicians Formula Murumuru Butter Believe It! Blush; Physicians Formula Powder Palette Pressed | WA | In-Store and Online | WA |

| Plaintiff Name | Target Clean Product(s) Purchased | State of Purchase | In Target Store or Online | State Citizen |
|---|---|---|---|---|
| | Powder; Wet n' Wild Color Icon Blush | | | |

36.     **Defendant** Target is a general merchandise retailer with stores in all 50 states and the District of Columbia, including 1,948 total store locations in the United States. Target is a citizen of Minnesota, and its headquarters is in Minneapolis, Minnesota, Hennepin County.

37.     According to Target, 75% of the U.S. population lives within 10 miles of a Target store and the company employs more than 400,000 people.

38.     Target's tagline is "Expect more.  Pay less."  The Target Corporation also owns Shipt and Roundel.  In 2021, Target had $106 billion in total revenue.[15]

39.     Target utilizes several "green" labels on its website, target.com and at its in-store locations, including Target Clean, Bio Based, Biodegradable Product, Cruelty Free, Dye Free, No Synthetic Fragrance, Non-GMO, and Non-Toxic, Organic, Formulated without Parabens, Formulated without Phthalates, Plant-Based, Formulated without Sulfates, Vegan, and Aluminum Free.  Each of these labels, with the exception of the Target Clean label, is applied to products that have an on-pack statement or some other certification related to the specific label.

---

[15] https://corporate.target.com/about

40.     The Target Clean label appears to be the only label Target applies to beauty products for which it is making its own, independent statement related to the beauty products "cleanness."[16]

## FACTUAL ALLEGATIONS

### A.     The Green Movement and Greenwashing

41.     In recent years, consumers have become significantly more aware and sensitive to their impact on the environment through the products they purchase and use. As a result, a movement has developed demanding consumer products that contain natural ingredients and are environmentally sound, *i.e.,* that create less harm to the environment through the product's ingredients, manufacture, use, or disposal.  The term "Green" is commonly used to describe these products and the environmental movement that led to them.

42.     In response to consumers' desire for safer, cleaner, and more natural products, many companies "greenwash" their products by deceptively claiming that their products are safer or cleaner than they are.  Rather than creating the safer, cleaner, and non-toxic products that consumers desire, many companies have chosen to "greenwash" their products through deceptive labeling, suggesting and outright stating that their products are safe, clean, or natural when, in fact, they contain ingredients that are harmful to humans, animals, and/or the environment, or are otherwise not clean products.

---

[16] https://www.target.com/c/beauty-wellness-icons/-/N-nq3bt.

20

43.     Greenwashing means "activities by a company or an organization that are intended to make people think that it is concerned about the environment, even if its real business practice actually harms the environment."  Oxford English Dictionary.

44.     Environmentalist Jay Westerveld coined the term "greenwashing" in 1986, in a critical essay inspired by the irony of the "save the towel" movement in hotels.  Mr. Westerveld observed enormous waste throughout the remainder of the hotel and the hotel's expansion efforts, and no other overt indicators of attempts to become more sustainable. The save the towel movement had little impact beyond saving hotels money in laundry costs.   The idea emerged in a period when most consumers received their news primarily from television, radio, and print media, so they couldn't fact-check the way they could today via the internet.

45.     Companies that have engaged in greenwashing on a wide scale have made headlines over the years.   In the mid-'80s, for example, oil company Chevron commissioned a series of expensive television and print ads to broadcast its environmental dedication.  But while the now-infamous "People Do" campaign ran, Chevron was actively violating the Clean Air Act and Clean Water Act, as well as spilling oil into wildlife refuges.

46.     Chevron was far from the only corporation making such deceptive claims, unfortunately.  In 1991, chemical company DuPont announced its double-hulled oil tankers with ads featuring marine animals prancing in chorus to Beethoven's "Ode to Joy."  It turned out the company was the largest corporate polluter in the U.S. that year.

47.     Unfortunately for consumers, false claims of environmental soundness have grown along with the demand for green products.  In a released study, the environmental

consulting group TerraChoice Environmental Marketing found that 98% of more than 2,000 products it surveyed in North America made false and misleading environmental claims by committing one or more of what it classified as the "Seven Sins of Greenwashing"[17]:

a.  The Sin of the Hidden Trade-off – committed by suggesting a product is "green" based on an unreasonably narrow set of attributes without attention to other important environmental issues;

b.  The Sin of No Proof – committed by an environmental claim that cannot be substantiated by easily accessible supporting information or by a reliable third-party certification;

c.  The Sin of Vagueness – committed by every claim that is so poorly defined or broad that its real meaning is likely to be misunderstood by the consumer;

d.  The Sin of Irrelevance – committed by making an environmental claim that may be truthful but is unimportant or unhelpful for consumers seeking environmentally preferable products;

e.  The Sin of Lesser of Two Evils – committed by claims that may be true within the product category but that risk distracting the consumer from the greater environmental impacts of the category as a whole;

---

[17] http://sinsofgreenwashing.org/.

f.  The Sin of Fibbing – committed by making environmental claims that are simply false; and

g.  The Sin of Worshipping False Labels – committed by a product that, through either words or images, gives the impression of third-party endorsement where no such endorsement actually exists or fake labels (such as Target using the green hexagonal symbol for its Target Clean label when green symbols are associated with recyclability, biodegradability, composability, sustainability, and a reduced environmental impact[18]).

48.  Recent data shows that many fashion brands and textile retailers, particularly, are guilty of greenwashing and exaggerating their sustainability credentials without disclosing supporting evidence.[19]

49.  To put it plainly, doing corporate good is "in" these days and corporations, like Defendant, will do whatever it takes, even in some cases participate in greenwashing or other forms of related deception to consumers, to appear environmentally conscious, safe, and clean.  Recognizing this problem, the United States Federal Trade Commission

---

[18] Paul Des Marais, "Decoding 20 Common Green Packaging Symbols," ZENPACK, Dec. 7, 2020, https://www.zenpack.us/blog/decoding-20-common-green-packaging-symbols/ (Mar. 21, 2023).
[19] Fashion Transparency Index 2022 Edition, FASHION REVOLUTION, https://issuu.com/fashionrevolution/docs/fti_2022 (Mar. 21, 2023).

("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[20]

**B.    FTC Regulation of Greenwashing and the Green Guides**

50.    Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce.  A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions.  *See* FTC Policy Statement on Deception, 103 FTC 174 (1983).

51.    In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence.  Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.  Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered considering the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.[21]

52.    According to the FTC, the following general principles apply to environmental marketing claims.[22]

---

[20] *See generally* 16 C.F.R. § 260—Guide for the User of Environmental Marketing Claims.
[21] Part 260—Guides for the Use of Environmental Marketing Claims, FTC, https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf, (Mar. 21, 2023).
[22] 16 C.F.R. § 260.3.

a. *Qualifications and Disclosures*: To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable. To make disclosures clear and prominent, marketers should use plain language and sufficiently large type, should place disclosures in close proximity to the qualified claim, and should avoid making inconsistent statements or using distracting elements that could undercut or contradict the disclosure.

b. *Distinction Between Benefits of Product, Package, and Service*: Unless it is clear from the context, an environmental marketing claim should specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service. In general, if the environmental attribute applies to all but minor, incidental components of a product or package, the marketer need not qualify the claim to identify that fact. However, there may be exceptions to this general principle. For example, if a marketer makes an unqualified recyclable claim, and the presence of the incidental component significantly limits the ability to recycle the product, the claim would be deceptive.

   i. Example: A plastic package containing a new shower curtain is labeled "recyclable" without further elaboration. Because the context of the claim does not make clear whether it refers to the plastic package or the shower curtain, the claim is deceptive if any part of either the package or the curtain, other than minor, incidental components, cannot be recycled.

c. *Overstatement of Environmental Attribute*: An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible.

   i. Example: A trash bag is labeled "recyclable" without qualification. Because trash bags ordinarily are not separated from other trash at the landfill or incinerator for recycling, they are highly unlikely to be used again for any purpose. Even if the bag is technically capable of being recycled, the claim is deceptive since it asserts an environmental benefit where no meaningful benefit exists.

d. *Comparative Claims*: Comparative environmental marketing claims should be clear to avoid consumer confusion about the comparison. Marketers should have substantiation for the comparison.

   i. Example: An advertiser notes that its glass bathroom tiles contain "20% more recycled content." Depending on the context, the claim could be a comparison either to the advertiser's immediately preceding product or to its competitors' products. The advertiser should have substantiation for both interpretations. Otherwise, the advertiser should make the basis for comparison clear, for example, by saying "20% more recycled content than our previous bathroom tiles."

e. *Certifications and Seals of Approval*: It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party. A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit (see § 260.4) if the certification or seal does not convey the basis for the certification or seal, either through the name or some other means.

26

      i.   Example: An advertisement for paint features a "GreenLogo" seal and the statement "GreenLogo for Environmental Excellence." This advertisement likely conveys that: (1) the GreenLogo seal is awarded by an independent, third-party certifier with appropriate expertise in evaluating the environmental attributes of paint; and (2) the product has far-reaching environmental benefits. If the paint manufacturer awarded the seal to its own product, and no independent, third-party certifier objectively evaluated the paint using independent standards, the claim would be deceptive.

f.   *Biodegradable Claims*: It is deceptive to misrepresent, directly or by implication, that a product or package is degradable, biodegradable, oxo-degradable, oxo-biodegradable, or photodegradable. A marketer making an unqualified degradable claim should have competent and reliable scientific evidence that the entire item will completely break down and return to nature within a reasonably short period of time after customary disposal.

      i.   Example: A marketer advertises its trash bags using an unqualified "degradable" claim. The marketer relies on soil burial tests to show that the product will decompose in the presence of water and oxygen. Consumers, however, place trash bags into the solid waste stream, which customarily terminates in incineration facilities or landfills where they will not degrade within one year. The claim is, therefore, deceptive.

g.   *Free-Of Claims*: It is deceptive to misrepresent, directly or by implication, that a product, package, or service is free of, or does not contain or use, a substance. A truthful claim that a product, package, or service is free of, or does not contain or use, a substance may nevertheless be deceptive if: (1) the product, package, or service contains or uses substances that pose the same or similar environmental risks as the

27

substance that is not present; or (2) the substance has not been associated with the product category. [23]

   i. Example: A package of t-shirts is labeled "Shirts made with a chlorine-free bleaching process." The shirts, however, are bleached with a process that releases a reduced, but still significant, amount of the same harmful byproducts associated with chlorine bleaching. The claim overstates the product's benefits because reasonable consumers likely would interpret it to mean that the product's manufacture does not cause any of the environmental risks posed by chlorine bleaching.

h. *Non-Toxic Claims*: It is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic. A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify their claims to avoid deception.

   i. Example: A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic." The advertisement likely conveys that the product does not pose any risk to humans or the environment, including household pets. If the cleaning product poses no risk to humans but is toxic to the environment, the claims would be deceptive.

i. *Ozone-Safe Claims*: It is deceptive to misrepresent, directly or by implication, that a product, package, or service is safe for, or friendly to, the ozone layer or the atmosphere.

---

[23] 16 C.F.R. § 260.9.

i.  An aerosol air freshener is labeled "ozone-friendly." Some of the product's ingredients are volatile organic compounds (VOCs) that may cause smog by contributing to ground-level ozone formation. The claim likely conveys that the product is safe for the atmosphere as a whole, and, therefore, is deceptive.

j.  *Recyclable Claims*:  It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.

i.  Example: A nationally marketed plastic yogurt container displays the Resin Identification Code (RIC) (which consists of a design of arrows in a triangular shape 6 containing a number in the center and an abbreviation identifying the component plastic resin) on the front label of the container, in close proximity to the product name and logo. This conspicuous use of the RIC constitutes a recyclable claim. Unless recycling facilities for this container are available to a substantial majority of consumers or communities, the manufacturer should qualify the claim to disclose the limited availability of recycling programs.

53.  The Green Guides also provide additional examples of marketing claims to "provide the Commission's views on how reasonable consumers likely interpret certain claims."[24]  The FTC provided the following relevant examples:[25]

- The brand name "Eco-friendly" likely conveys that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact.  Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive.

---

[24] 16 C.F.R. § 260.1(d).
[25] 16 C.F.R. § 260.1.

- A brand name like "Eco-safe" would be deceptive if, in the context of the product so named, it leads consumers to believe that the product has environmental benefits which cannot be substantiated by the manufacturer.  The claim would not be deceptive if "Eco-Safe" were followed by clear and prominent qualifying language limiting the safety representation to a particular product attribute for which it could be substantiated and provided that no other deceptive implications were created by the context.

- A product label contains an environmental seal, either in the form of a globe icon, or a globe icon with only the text "Earth Smart" around it. Either label is likely to convey to consumers that the product is environmentally superior to other products. If the manufacturer cannot substantiate this broad claim, the claim would be deceptive. The claims would not be deceptive if they were accompanied by clear and prominent qualifying language limiting the environmental superiority representation to the particular product attribute or attributes for which they could be substantiated, provided that no other deceptive implications were created by the context.

- A marketer states that its packaging is now "Greener than our previous packaging." The packaging weighs 15% less than previous packaging, but it is not recyclable, nor has it been improved in any other material respect. The claim is deceptive because reasonable consumers likely would interpret "Greener" in this context to mean that other significant environmental aspects of the packaging also are improved over previous packaging.

- A marketer advertises a cleaning product as 'essentially non-toxic' and 'practically non-toxic.' The advertisement likely conveys that the product does not pose any risk to humans or the environment, including household pets.  If the cleaning product poses no risks to humans but is toxic to the environment, the claims would be deceptive.

## C.    Consumers and Green Products

54.    Consumers are regularly choosing more environmentally friendly and cleaner products. In fact, some consumers are changing their buying behavior to reduce the

impact of their consumption habits over the environment, choosing an environment-friendly consumption behavior, often called green consumption.[26]

55.    Consumers and investors increasingly care about a business' positive impact and will make decisions according to brand perceptions.  In a 2019 CSR Survey conducted by Aflac, 77% of consumers felt motivated to make purchasing decisions from companies committed to making the world a better place and 73% of investors viewed these efforts as contributors to return on investment, and, in turn, often look favorably on companies with conscious social and environmental impact.

56.    In 2021, GreenPrint's Business of Sustainability Index, found that 64% of Gen X consumers would spend more on a product if it comes from a sustainable brand, and that figure jumps to 75% among millennials.

57.    Today, consumers across all generations—from Baby Boomers to Gen Z—are willing to spend more for "greener" products, and the percentages of consumers in those generations willing to pay more for sustainable products is growing.  Now, at least 90% of Gen X consumers said that they would be willing to spend an extra 10% or more for sustainable products.[27]

---

[26] "Greenwashing effect, attitudes, and beliefs in green consumption," EMERALD INSIGHT, Mar. 12, 2019, https://www.emerald.com/insight/content/doi/10.1108/RAUSP-08-2018-0070/full/html, (Mar. 21, 2023).

[27] Greg Petro, "Consumers Demand Sustainable Products and Shopping Formats," FORBES, Mar. 11, 2022,  https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/?sh=551188856a06, (Mar. 21, 2023).

58.    An international study of 20,000 customers by grocery brand giant Unilever identified one in three (33%) people were choosing to buy from brands they believe are doing environmental good.[28]

59.    A desire to help the environment is a big reason consumers purchase sustainable products and brands.  Almost 30% say they want to improve the environment, with 23% wishing to reduce production waste, 22% wishing to reduce their carbon footprint, and 17% concerned with animal welfare.[29]  Consumers care about the environment and are purchasing environmentally sound products to support those interests.

60.    Consumers are also concerned about safety and an inclination towards safer products is guiding consumer choices.  A recent survey found that "[w]hen asked to choose the top three factors they prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free from certain toxic chemicals (70%)."[30]

61.    Green labels and product marketing impact consumer buying decisions. Marketing and labels allow consumers to make comparisons among products and services in the category and decide their preference.[31]  Indeed, labels make is easier for consumers

---

[28] "Climate explained: are consumers willing to pay more for climate-friendly products?" THE CONVERSATION, Sept. 29, 2020, https://theconversation.com/climate-explained-are-consumers-willing-to-pay-more-for-climate-friendly-products-146757, (Mar. 21, 2023).
[29] *Id.*
[30] Made Safe, "What Shoppers Want: Safe & Healthy Products," https://www.madesafe.org/wp-content/uploads/2017/07/What-Shoppers-Want.pdf (Mar. 21, 2023).
[31] "Marketing & Sustainability," MAJOR SUSTAINABILITY, PENN STATE, https://majorsustainability.smeal.psu.edu/green-labelling/, (Mar. 21, 2023).

to identify green products when they are shopping, reducing consumers' purchase time. Consumers consider the information related to the environmental attributes of products that companies, like Defendant, put on their label and use that information to make a purchase decision.[32] Thus, labels and green marketing tactics, like those used by Defendant, impact consumer buying behavior.

62.    For these reasons, companies like Defendant have expanded their marketing efforts to attract consumers into purchasing cosmetics branded as safe, sustainable, or clean.  Indeed, "the clean beauty market is estimated to reach $22 billion by 2024," according to Statista Research. [33]

**D.    Cosmetic Labels**

63.    Cosmetic labels are one way that companies can greenwash their products.

64.    In the United States, there are three main entities responsible for developing and enforcing labeling requirements: Food and Drug Administration (FDA), United States Department of Agriculture (USDA) (related to "organic" claims), and Federal Trade

---

[32] "The Effect of Green Marketing Strategy on Purchasing Decisions: A Review of Previous Research," INTERNATIONAL JOURNAL OF SCIENTIFIC & TECHNOLOGY RESEARCH VOLUME 8, ISSUE 12, Dec. 2019, https://www.ijstr.org/final-print/dec2019/The-Effect-Of-Green-Marketing-Strategy-On-Purchasing-Decisions-A-Review-Of-Previous-Research.pdf, (Mar. 21, 2023).

[33] Kristin Larson, "Shopper Demand For Clean Beauty And Increased Transparency Continues," FORBES (Jun. 30, 2021), https://www.forbes.com/sites/kristinlarson/2021/06/30/shopper-demandfor-clean-beauty-and-increased-transparency-continues/?sh=75f3d8e05402 (Mar. 21, 2023).

Commission (FTC).[34]  Additionally, some states like California, have passed legislation that requires additional labeling on products sold within the state.[35]

65.    The cosmetics marketed in the United States, whether they are manufactured here or are imported from abroad, must also comply with the labeling requirements of the Federal Food, Drug and Cosmetic (FD&C) Act, the Fair Packaging and Labeling (FP&L) Act and the regulations published by the Food and Drug Administration under the Authority of these two laws. *See* 21 U.S.C. 321-392.

**FDA Label Requirements**

66.    FDA regulates cosmetic labeling under the authority of both the Federal Food, Drug, and Cosmetic Act (FD&C Act) and the Fair Packaging and Labeling Act (FPLA).  These laws and their related regulations are intended to protect consumers from health hazards and deceptive practices and to help consumers make informed decisions regarding product purchases.[36]

67.    The FD&C was enacted by Congress to protect consumers from unsafe or deceptively labeled or packaged products by prohibiting the movement in interstate commerce of adulterated or misbranded food, drug devices and cosmetics.

68.    Cosmetic labels for beauty and wellness products must have a declaration of cosmetic ingredients.  *See* FP&L Act [secs. 5(c) and 6(a); 15 U.S.C. 1454 and 1455] and

---

[34] "Cosmetic – Labeling," MICHIGAN STATE UNIVERSITY, April 5, 2021, https://www.canr.msu.edu/news/cosmetics-labeling, (Mar. 21, 2023).
[35] *Id.*
[36] "Cosmetic Labeling Regulations," U.S. FOOD & DRUG, Mar. 2, 2022, https://www.fda.gov/cosmetics/cosmetics-labeling/cosmetics-labeling-regulations#overview, (Mar. 21, 2023).

FD&C Act [sec. 701(e); 21 U.S.C. 371(e)]. The ingredients must also be declared in descending order of predominance. *Id.* In other words, manufacturers must list ingredients found in a product from largest to smallest quantity based on weight.

69.     There are some exceptions to this rule, including that: (1) ingredients present at a concentration not exceeding 1% may be listed in any order after the listing of the ingredients present at more than 1% in descending order of predominance, *See* 21 C.F.R. § 701.3(f)(3); (2) color additive of a concentration may be listed in any order after the listing of the ingredients which are not color additives, *See* 21 C.F.R. § 701.3(f)(3); (3) the name of an ingredient accepted by FDA in accordance with the procedure established in Section 720.8 as a trade secret need not be disclosed on the label. Instead of declaring the name of that ingredient, the phrase "and other ingredients" may be used, *See* 21 C.F.R. § 701.3(a).

70.     The FDA does not have the resources or authority under the law for pre-market approval of cosmetic labeling.[37] Thus, it is not permitted to label cosmetics as "FDA Approved" or any other label or advertisement that suggests that the FDA has approved a cosmetic product.

**FTC Advertising Investigations**

71.     The FTC is responsible for promoting and enforcing consumer protection laws, which includes regulation of advertising and marketing. The agency specifically requires advertisements to be truthful, not deceptive or unfair, and evidence-based.[38]

---

[37] *See* supra fn. 36, https://www.fda.gov/cosmetics/cosmetics-labeling/cosmetics-labeling-regulations#overview.

[38] "Advertising and Marketing," FTC, https://www.ftc.gov/business-guidance/advertising-marketing, (Mar. 21, 2023).

72.    The FTC recently investigated, and continues to review, companies for green, clean, or environmentally related claims including "100% natural" or "all natural" where products contained synthetic ingredients which were clearly listed in the product's ingredient declarations,[39] unsupported anti-aging claims[40], and "organic" claims (*See FTC v. Truly Organic*, No. 1:19-cv-23832 (S.D. Fla. Sept. 13, 2019)).

73.    In short, the FTC investigates claims, like those made by Target through its Target Clean label, where the claims are inherently misleading to consumers or false.

**E.    Poly-fluoroalkyl Substances ("PFAS") and Cosmetics**

74.    PFAS are a series of chemicals that, amid more recent studies, are linked to harmful side effects.  As a result, consumers looking for cleaner beauty products do not want these in the products they purchase.

75.    PFAS chemicals are a class of more than 4,700 man-made chemical compounds that have a characteristic per fluorinated carbon monitory that confers hydrophobic chemical properties and environmental persistence.  PFAS are known as "forever chemicals" because they do not easily break down in the human body or the environment, and thus, persist over long periods of time.  Their characteristic benefits— including persistence and hydrophobic properties—propelled their use in thousands of

---

[39] "Update on Recent FTC Enforcement Actions Against Cosmetic Companies," JDSUPRA, May 4, 2016, https://www.jdsupra.com/legalnews/update-on-recent-ftc-enforcement-26724/ (Mar. 21, 2023).
[40] *Id.*

products, including personal care products, fabrics, carpets, cookware, food packaging, and other commercial uses.[41]

76.    PFAS chemicals are unequivocally dangerous to humans.  Exposure to PFAS chemicals is associated with an elevated risk for certain cancers, liver and kidney failures, immunological problems, and reproductive and developmental harm.  Indeed, "[M]eta-analyses point to a high toxicity and potentially bioaccumulative properties of some metabolites of" PFAS chemicals."[42]  All PFAS contain carbon-fluorine bonds—one of the strongest in nature—making PFAS very persistent in the environment and in human bodies.[43]

77.    Humans can be exposed to PFAS in a variety of ways, including through ingestion, inhalation, and skin absorption.[44]   Indeed a recent New York Times article discussed the effect of PFAS exposure to pregnant women and babies, explaining the effects of PFAS on metabolism and immunity:[45]

> [s]cientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.

---

[41] Heather D. Whitehead, et al., "Fluorinated Compounds in North American Cosmetics," ENVIRON. SCI. & TECHNOL. Jun. 15, 2021, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf, (Mar. 21, 2023).

[42] Id.

[43] Jessian Choy, "My Menstrual Underwear has Toxic Chemicals in It," SIERRA, Jan. 7, 2020, https://www.sierraclub.org/sierra/ask-ms-green/my-menstrual-underwear-has-toxic-chemicals-it, (Mar. 21, 2023).

[44] Id.

[45] "These Everyday Toxins May be Hurting Pregnant Women and Their Babies," THE NEW YORK TIMES, https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html, (Mar. 21, 2023).

'And while we understandably focus on highly contaminated communities,' Dr. Lanphear said, 'we can predict based upon all the other evidence, that there's unlikely to be any safe level.'

78.     The Center for Disease Control's Agency for Toxic Substances and Disease Registry has recognized that exposure to high levels of PFAS may impact the immune system and reduce antibody responses to vaccines.[46]

79.     "The Madrid Statement," a scientific consensus regarding the persistence and potential for harm of PFAS substances issued by the Green Science Policy Institute and signed by more than 250 scientists from 38 countries, recommended the following actions in order to mitigate future harm: (1) discontinuing use of PFAS where not essential or safer alternatives exist; (2) labeling products containing PFAS; and (3) encouraging retailers and individual consumers to avoid products containing or manufactured using PFAS whenever possible.[47]

80.     The current Environmental Protection Agency's health advisory for PFAS limits PFAS for safe consumption to just 70 nanograms per liter.[48]   To put this in perspective, Target purports that the ingredients banned from Target Clean labeled products must be < 100 part per million, or the equivalent of 100,000,000 nanograms per liter.  Said

---

[46] "What are the health effects of PFAS?" AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY, https://www.atsdr.cdc.gov/pfas/health-effects/index.html, (Mar. 21, 2023).
[47] "The Madrid Statement," GREEN SCIENCE POLICY INSTITUTE, https://greensciencepolicy.org/our-work/science-policy/madrid-statement/, (Mar. 21, 2023).
[48] "High Levels of PFAS Found in Anti-Fogging Sprays and Cloths," DUKE UNIVERSITY, NICHOLAS SCHOOL OF THE ENVIRONMENT, Jan. 5, 2022, https://nicholas.duke.edu/news/high-levels-pfas-foundanti-fogging-sprays-and-cloths, (Mar. 21, 2023).

another way, Defendant uses its Target Clean Label to independently designate products as "clean" that may contain over *1.4 million times more* nanograms per liter of harmful PFAS chemicals than is recommended by the EPA. This is true despite the research being clear that PFAS can be harmful at a very, very low concentration.

81.    This is especially true when PFAS are used in a manner that makes them absorbable or inhalable by humans, such as through cosmetics.  Cosmetics are applied close to the eyes and mouth and are applied in many cases to be "long-lasting."  This may "increase exposure and hence risk due to enhanced absorption and ingestion."[49]  Below is a diagram showing the risk of exposure, absorption, and ingestion in cosmetic products applied to the face and eyes.



82.    Exposure to cosmetics comes in many forms: breathing in powder, for example, swallowing bits of lipstick, and most likely, absorbing cosmetic ingredients through the largest organ in your body – your skin.  Studies have found that ingredients

[49] *Id.*

like paraben, preservatives, triclosan, PFAS, and a large number of others are often found in the bodies of people of all ages. The enhancers that the industry uses often allows these (and many other nasty ingredients) to penetrate even further into the depths of the skin.[50]

83. That PFAS are harmful to the human body is beyond dispute. In a 2019 study, for example, the U.S. Department of Health and Human Services' National Toxicology Program found that PFAS have adverse effects on human organ systems, with the greatest impact seen in the liver and thyroid hormone.[51]

84. The Centers for Disease Control's Agency for Toxic Substances and Disease Registry has also recognized that exposure to levels of PFAS may impact the immune system and reduce antibody responses to vaccines.[52]

85. In total, this research demonstrates that the risk of severe health complications arising from exposure to PFAS is both credible and substantial.

86. Additionally, PFAS pose a risk to the environment, where once introduced, can quickly spread around the globe through multiple pathways.[53]

87. Many of the beauty products Target has marked "Target Clean, including those listed in this Complaint, contain PFAS.

---

[50] "Safer Cosmetics: Toxins & Non-Toxic Makeup Brands Investigation," MAMAVATION, Dec. 18, 2019, https://www.mamavation.com/beauty/safer-cosmetics-investigation-non-toxic-makeup.html, (Mar. 21, 2023).
[51] "PFAS Explained," ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/pfas/pfas-explained, (Mar. 21, 2023).
[52] *See* supra, fn. 46, https://www.atsdr.cdc.gov/pfas/health-effects/index.html
[53] "What are PFAS?" PFAS FREE, https://www.pfasfree.org.uk/about-pfas (Mar. 21, 2023).

**F.    Other Problematic Ingredients**

88.    Generally, and not exhaustively, there are three types of problematic ingredients, including endocrine disruptors, carcinogens, and irritants and allergens.

**a.    Endocrine Disruptors**

89.    Endocrine disruptors are chemical substances and compounds that may imitate the body's natural hormones, thus interfering with the body's normal, natural chemical signaling.  Those types of chemicals are linked to harm in very small amounts akin to a drop in an Olympic-sized pool.  And what makes manners worse is hormone-disrupting chemicals are not tested at low levels.  They test the chemicals at high levels and assume what will happen at low levels without ever doing the studies.  But genes switch on and off at different parts of the dose-response curve, so the effects are not possible to predict.  Therefore, arguing the levels are too low to harm are simply not backed by science.  In fact, the American Academy of Pediatrics has been lobbying Congress and federal agencies for years about hormone-disrupting chemicals and their impact on public health.[54]

90.    Common ingredients on cosmetic labels that are endocrine disruptors include Triclosan, Triclocarban, Toluene, Resorcinol, Petroleum Distillates, Butylated Hydroxyanisole (BHA), Boric Acid, Sodium Borate, Phthalates, Placenta Extract, Retinol (Vitamin A), Octinoxate, Siloxane (ingredients ending in siloxane or methicone) and Parabens.[55]

---

[54] *Id.*
[55] *See* supra, fn. 50, https://www.mamavation.com/beauty/safer-cosmetics-investigation-non-toxic-makeup.html.

b.    *Carcinogens*

91.    Carcinogens are compounds, substances, and chemicals that may lead to cancer.

92.    Sodium Laureth Sulfate (SLS), PEG Compounds, and chemicals ending in -eth are all potentially contaminated with 1,4-dioxane, which is a known carcinogen. Common ingredients on cosmetic labels that are carcinogens include Formaldehyde, coal tar ingredients Petroleum Distillates, -methly, -propy, -caprylic, such as propylene glycol), Talc, and Mineral Oil.[56]

93.    Formaldehyde (quaternium-15 and other formaldehyde-releasing preservatives) has been labeled as a potential carcinogen by the National Cancer Institute, which says its use and exposure to it has been linked to cancer formation in both animals and humans.  Formaldehyde also ranks among the top 10 most common contact allergens. It is commonly included on an ingredients label as DMDM hydantoin, BHUT (butylated hydroxytoluene), bronopol, diazolidinyl urea, sodium hydrozymethylglycinate, imidazolidinyl urea, methenamine, quarternium-15, Quaternium-18, & Quaternium-26.[57]

94.    Petroleum-based (-methyl, -propy, -caprylic, such as propylene glycol) and mineral oil products have been labeled as potential carcinogens and come from residue that builds up on the outside of oil rigs.  It is collected, distilled, and refined and used in many cosmetics such as lip-gloss.  While many call these products safe, the toxicity depends on

---

[56] *Id.*
[57] *Id.*

the refinement process, which is currently unregulated, and lower quality refined oil may be linked to breast cancer.[58]

95.    Polyethylene glycols, or PEGs, have been labeled as potential carcinogens and are petroleum-based compounds used to thicken & soften cosmetics.  They are very common in cream-based products.  The number next to PEG indicates how many units of ethylene glycol they comprise and the lower the number, the quicker it absorbs into your skin.  They are problematic because they are often contaminated with ethylene oxide and 1,4-dioxane.[59]

96.    Talc is a potential carcinogen and is found in loose powder makeup, blush, and eye shadow and has been linked to respiratory issues and cancers.  Recently, Johnson & Johnson was sued and ordered to pay $72 million to the family of a woman who died from ovarian cancer.  For this ruling, the jury found that J&J had failed to warn users of the cancer risk of using talc.  Additionally, the American Cancer Society, recommends, "Until more information is available, people concerned about using talcum powder may want to avoid or limit their use of consumer products that contain it."[60]

97.    Studies by the National Toxicology Panel demonstrated that even cosmetic-grade talc free of asbestos is a form of magnesium silicate that also can be toxic and carcinogenic.[61]

---

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] Talc, EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/, (Mar. 21, 2023).

43

98.    Titanium Dioxide is a potential carcinogen and is a key ingredient in many sunscreens, which are then added to mineral makeup, foundations, and other cosmetics. Inhalation – which is increasingly likely if the consumer is using it as powder or as a foundation – is possibly linked to cancer.[62]

99.    1,3-Butadiene lurks in many items, including foundation and is a potential carcinogen.  Studies by the Department of Health and Human Services (DHHS), IARC, and EPA have determined that 1,3-butadiene is a human carcinogen.  Studies have shown that people regularly exposed to 1,3-butadiene may have an increased risk of cancers of the stomach, blood, and lymphatic system.[63]

100.    Butylated hydroxytoluene (BHT) and butylated hydroxyanisole (BHA) are Toluene-based ingredients used as preservatives and are linked to cancer linked to a wide range of health concerns, including organ system toxicity, skin irritation, and more.  The National Toxicology Program classifies BHA as "reasonably anticipated to be a human carcinogen." BHA has been linked to reproductive and developmental toxicity and also been identified on California's Proposition 65 list as a possible carcinogen.[64]

c.    *Irritants and Allergens*

101.    Common irritants and allergens include Methylisothiazolinone (MI), methylchloroisothiazolinone (MCI), vitamin A derivatives, "fragrance," petroleum

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

distillates, mica, bismuth Oxychloride, Lanolin, Halogenated salicylanilides (di-, tri-, metabromsalan and tetrachlorosalicylanilide, bithionol, and formaldehyde.

102.    Fragrance and flavor ingredients can be listed simply as "Fragrance" or "Flavor."[65]   The phthalate commonly used in fragrance products is diethyl phthalate, or DEP. [66]  Unfortunately, cosmetic ingredients for fragrances are not transparent.

103.    The generic use of the word "fragrance" on a bottle likely means the company has decided to leave consumers in the dark about what makes up that "fragrance". This is because companies generally deem the compositions of fragrances as trade secret and proprietary, allowing them to lobby for exempting from having to disclose the actual ingredients. Target does not require manufacturers to identify what is in their "fragrance" ingredient on packaging or directly to consumers. Thus, consumers never know what is in the non-transparent "fragrance" ingredients.

104.    Legally, "fragrance" may contain over 3,000 chemicals, which do not have to be declared. None of those chemicals are required to be on the label because lobbying efforts have focused on protecting the formulation of a product and calling them "proprietary" even though modern technology can reverse engineer every ingredient inside the bottle to find out. Therefore, companies can easily steal each other's formulations by using a laboratory. Thus, a company refusing to be 100% transparent about their ingredients

---

[65] Fragrances in Cosmetics, U.S. FOOD & DRUG, Feb. 28, 2022,
https://www.fda.gov/cosmetics/cosmetic-ingredients/fragrances-cosmetics, (Mar. 21, 2023).
[66] *Id.*

is likely less about protecting their formulation and more about avoiding transparency.[67] "A product is only as clean as its worst ingredient."[68]

### G.  Target's Business Activities and Target Clean

105.    Target launched Target Clean in 2019. The Target Clean icon (a bright green hexagon icon depicted below) is attached to products in stores and online, at www.target.com, to let consumers know that product is "formulated without a group of commonly unwanted chemicals that can be found in products [consumers] use regularly."[69]



[70].

106.    Target has nearly 4,000 products that it has marked as "Target Clean" in the beauty and personal care departments, including from its own brand, Up & Up. According to Target, Target Clean makes "it easy to find and discover products that best fit your beauty and personal care needs."[71]

107.    Target first introduced the Target Clean symbol in the household essentials and baby departments. Target then expanded use of the symbol after customers provided

---

[67] *See* supra fn. 50, https://www.mamavation.com/beauty/safer-cosmetics-investigation-non-toxic-makeup.html.

[68] *Id.*

[69] https://corporate.target.com/article/2019/07/target-clean-beauty.

[70] https://corporate.target.com/article/2019/07/target-clean-beauty.

[71] *Id.*

positive feedback, including that the symbol made "their shopping trips easier." According to Target's then senior vice-president and general merchandise manager, Christina Hennington, with Target Clean, "[G]uests can easily shop for skin care, hair care, cosmetics, oral care items and more that are formulated without a group of commonly unwanted chemicals they may not want included in their daily beauty routines."[72] Another Target representative, Dawn Block, senior vice president, essentials and beauty, Target, stated: "Making informed choices should be simple for guests. This framework is designed to take the complications out of finding better-for-you product options. We're looking forward to working with our vendors on solutions that will benefit us all."[73]

## H.    "Target-Clean" Representations

108.   Target has made several representations about its purported goals with respect to chemicals in the products it sells. They include: (1) achieving transparency to all ingredients, including generics such as fragrance, in beauty, baby care, personal care and household cleaning formulated products by 2020; (2) chemical management throughout the supply chain by improving beauty, baby care, personal care and household cleaning product categories by formulating without phthalates, propylparaben, butyl-paraben, formaldehyde, formaldehyde donors, or NPEs by 2020; and (3) innovation including investing up to $5 million in green chemistry innovation by 2022 .[74]

---

[72] *Id.*

[73] https://corporate.target.com/article/2017/01/chemical-policy-and-goals

[74] https://corporate.target.com/article/2017/01/chemical-policy-and-goals

109.    Target Clean is just one part of a group of beauty and personal care "Wellness Icons" as dubbed by Target. Target created a "Wellness Icon Gallery," through which Target purports to make wellness "simple" for consumers (i.e., taking the research and analysis piece out of the equation for consumers). Below is an example of Target's Wellness Icon Glossy, depicting Target's wellness indicators and further depicting how Target displays the Target Clean icon.



clean
Want to know more about your products?
Look for the Target Clean symbol in store & online to find more than 4,000 products that are formulated without ingredients you may not want, at prices you'll love.
Clean Beauty
Explore skin care, makeup, hair care & more.
Screened ingredients below.†
LOVE beauty AND planet
VERSED
megababe
† Products are formulated without* select chemicals of concern in the following chemical groups: phthalates, propyl- & butyl-parabens, formaldehyde donors, musks, nonylphenol ethoxylates ethanolamines, glycol ethers, siloxanes, perfluorinated substances (PFAS) and more. Plus, cruelty free and/or not tested on animals.** *In formulated beauty and personal care products, formulated without is defined as < 100 ppm of finished product. **Cruelty free and/or not tested on animals is designated and validated by each brand.
clean
Look for the Target Clean symbol on beauty products to find those without phthalates, propyl-paraben & butylparaben, sodium laureth sulfate (SLES) & other ingredients you may not want.
[75]

## I. Harmful Chemicals Found in Some of Target's "Clean" Stamped Products

110. There is a lengthy list of harmful or potentially harmful ingredients found in cosmetics that "clean" conscious consumers would seek to avoid using. The list greatly exceeds the "unwanted" ingredients Target self-identifies for its Target Clean designations.

111. In fact, there are more than 1,300 chemicals banned for use in cosmetics in the European Union due to questions over their safety. In comparison, the United States

[75] Each of these images are on the Target website as of the date of this Complaint.

has only banned 11.[76]  Thus, being technically legal in the United States, for whatever reason, cannot be considered synonymous with being "clean".  It is the latter claim which Target specifically seeks to adopt through its "Target Clean" labeling program.

112.   Notable here, there is a difference to consumers between products that are actually "clean," and products that simply comply with the United States' loose laws on banned ingredients.

113.   The U.S. banned ingredient list includes: (1) Bithionol (causes photocontact sensitization), (2) Chlorofluorocarbon propellants (prohibited as part of aerosols), (3) Chloroform (causes cancer in animals and is harmful to human health too), (4) Halogenated salicylanilides (di-, tri-, metabromsalan and tetrachlorosalicylandilide) (cause serious skin disorders), (5) Hexachlorophene (toxic effect and ability to penetrate skin), (6) Mercury compounds (cause allergic reactions, skin irritation, or neurotoxic problems), (7) Methylene chloride (causes cancer in animals and harmful to human health), (8) Prohibited cattle materials (may cause "mad cow disease), (9) Sunscreens in cosmetics (may be treated as a drug, or restricted to provide explanation of the use of sunscreen in the product), (10) Vinyl chloride (causes cancer and other health problems in aerosol products), (11) Zirconium-containing complexes (causes toxic effect on lunges of animals and granulomas in human skin.  This is far less than the more than 1,300 chemicals banned or restricted in

---

[76] "How to Steer Clear of Toxic Makeup Ingredients," HEALTHLINE, https://www.healthline.com/health/toxic-makeup#to-avoid, (Mar. 21, 2023).

Europe. In fact, many Americans are unaware that they are absorbing untested and unsafe chemicals in their products.[77]

114.    Other well-known, cosmetic ingredients, which are accepted as harmful worldwide, include arsenic, butylated hydroxyanisole (BHA), butylated hydroxytoluene (BHT), dibutyl phthalate, diethanolamine (DEA) related ingredients, formaldehyde-releasing preservatives, heavy metals like lead, chromium, nickel, and cadmium, hydroquinone, parabens, parfum or fragrance, petrolatum, polyethylene glycols (PEG) compounds, siloxanes, sodium laureth sulfate, and triclosan.[78]

115.    PFAS are also a group of nearly 15,000 synthetic chemicals that may lead to adverse health outcomes, such as decreased fertility or increased high blood pressure in pregnant women, increased risk of some cancers, and interference with the body's nature hormones.[79]  The US Food and Drug Administration (FDA) reports that common PFAS used in cosmetics include: PTFE (polytetrafluoroethylene), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane.[80]

---

[77] Oliver Milman, *US cosmetics are full of chemicals banned by Europe—why?*, THE GUARDIAN, HTTPS://WWW.THEGUARDIAN.COM/US-NEWS/2019/MAY/22/CHEMICALS-IN-COSMETICS-US-RESTRICTED-EU (last visited Aug. 20, 2023).
[78] *See supra*, n. 76.
[79] Our current understanding of the Human Health and Environmental Risks of PFAS, U.S. ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Aug. 20, 2023).
[80] Should you be worried about forever chemicals in makeup?, REFINERY 29, https://www.refinery29.com/en-us/forever-chemicals-pfas-beauty-makeup-risks#:~:text=The%20US%20Food%20and%20Drug,dimethicone%2C%20perfluorodecalin%2C%20and%20perfluorohexane.

116.    Each of the below Target Clean beauty products contain harmful ingredients (i.e., linked to harmful side effects) and those ingredients are bolded and underlined. Some of these ingredients are ingredients Target has identified on its list of banned ingredients for personal care items like, but not limited to makeup, deodorant, or toothpaste and have been identified as such.[81]

**The Target Clean Products:**

117.    **Almay Multi-Benefit Mascara ("Almay Mascara"):**



[82]

---

[81] Target Clean Beaty and Personal Care,
https://target.scene7.com/is/content/Target/Slingshot/2023/01/video/TargetCleanBeauty-230112-1673518450572.pdf
[82] https://www.target.com/p/almay-multi-benefit-eye-waterproof-mascara-4-in-1-formula-0-24-fl-oz/-/A-76549796?preselect=17444430#lnk=sametab (Feb. 7, 2023).



Ingredients: Contains: Aqua ((Water), Myrica Pubescens Fruit Wax, ((Beeswax), Polyurethane-35, ((Copernicia Cerifera (Carnauba) Wax), Potassium Cetyl Phosphate, Acacia Senegal Gum, **Steareth-21**, Isosteareth-200 Linoleate, Cetyl Alcohol, Pvp, Dibutyl Adipate, Hydrolyzed Keratin, Panthenol, Alanine, Leucine, Lysine Hcl, Aloe Barbadensis Leaf Extract, Phytantriol, **Tocopheryl Acetate**, Hydrolyzed Wheat Protein/Pvp Crosspolymer, Nylon-6, Butylene Glycol, **Triethanolamine**, Hydroxyethylcellulose, Stearic Acid, Simethicone, Trisodium Edta, **Phenoxyethanol**, Caprylyl Glycol, **Methylparaben**, **Ethylparaben**. May Contain [+/-: **Black 2 (Ci 77266), Iron Oxides (Ci 77491, 77492, 77499)]**.[83]

---

[83] *Id.*



118.    The above image is a screen shot taken from Environmental Working Group's ("EWG's) Skin Deep Database. EWG compares ingredients on personal care product labels and websites to the information in nearly 60 toxicity and regulatory databases.[85] To the extent some of the products included herein do not have an EWG score, the product was either excluded from the database or the data within the database was

---

[84] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/products/873805-Almay_MultiBenefit_Mascara_501_Blackest_Black_2018_formulation/, (Mar. 21, 2023).
[85] Data Sources – toxicity, regulatory and study availability databases, EWG'S SKIN DEEP, https://www.ewg.org/skindeep/learn_more/about/ (last visited Aug. 20, 2023).

inconclusive.[86]  The above EWG Skin Deep (EWG) score of 5 indicates this "Target Clean"

product is a moderate hazard based upon the ingredients included in the product.

119.   The Almay Mascara contains the following unclean or harmful ingredients:

**Steareth-21** (composed of polyethylene glycol polymer and stearyl alcohol and has a

contamination concern linked to ethylene oxide and 1,4-Dioxane[87])[88], **Tocopheryl Acetate**

(includes a contamination concern with Hydroquinone[89]; evidence linking it to human skin

toxicant or allergens; and certain animal studies show tumor formation at higher doses)[90],

**Triethanolamine** (contamination concern with Nitrosamines; shown allergen and

respiratory toxicants with hormonal disruption tendencies;[91] and subject to various use

restrictions including concentration or manufacturing restrictions)[92], **Phenoxyethanol**

(restricted in cosmetics by use, concentration, or manufacturing; linked to high

---

[86] https://www.ewg.org/skindeep/learn_more/about/

[87] Listed on European Chemical Agency's Candidate List of Substances with very high concern. https://echa.europa.eu/candidate-list-table?p_p_id=disslists_WAR_disslistsportlet&p_p_lifecycle=1&p_p_state=normal&p_p_mode=view&_disslists_WAR_disslistsportlet_javax.portlet.action=searchDissLists (last visited Aug. 20, 2023).

[88] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/724159-STEARETH21/, (Mar. 21, 2023).

[89] Hydroquinone is listed as a Target Clean Banned Beauty Ingredient. *See also* https://www.safecosmetics.org/chemicals/hydroquinone/ (last visited Aug. 20, 2023).

[90] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706569-TOCOPHERYL_ACETATE/, (Mar. 21, 2023).

[91] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706639-TRIETHANOLAMINE/, (Mar. 21, 2023).

[92] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706639-TRIETHANOLAMINE/, (Mar. 21, 2023; *see also* Ethanolamine compounds (MEA, DEA, TEA and Others, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/ethanolamine-compounds/ (last visited Aug. 20, 2023).

concentrations of fluorine and PFAS)[93], [94], **Methylparaben** (evidence of human endocrine disruption; may interfere with gene expression and evidence of human toxicant or allergen; subject to use and concentration restrictions; can lead to UV-induced damage of skin cells and disruption of cell proliferation)[95], **Ethylparaben** (parabens mimic estrogen and can act as potential hormone (endocrine) system disruptors; has use and concentration restrictions and is linked to immune toxicants or allergens)[96], **Black 2 (Ci 77266) (**contamination concern with cadmium[97]; the Environment Canada Domestic List classified as high human health priority and expected to be toxic or harmful; possible mutagen)[98], **Iron Oxides (Ci 77491, 77492, 77499)** (classified by the National Library of Medicine HazMap as

---

[93] *See supra*, n. 41,
https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf .

[94] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS,
https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[95] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/703937-METHYLPARABEN/, (Mar. 21, 2023); *see also*
https://www.safecosmetics.org/chemicals/parabens/ (last visited Aug. 20, 2023).

[96] EWG'S SKIN DEEP,
https://www.ewg.org/skindeep/ingredients/702355-ETHYLPARABEN/ , (Mar. 21, 2023).

[97] Cadmium is listed on California's Proposition 65 as a chemical known to cause cancer or reproduction toxicity. *See* https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (last visited Aug. 20, 2023).

[98] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/725373-DC_BLACK_NO_2_CI_77266/, (Mar. 21, 2023); *see also* CI 77266 (Black 2), Good Face Project, https://thegoodfaceproject.com/ingredients/ci_77266_black_2 (last visited Aug. 20, 2023) (finding the safety concerns for CI 77266 "high").

persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[99], [100].

120.    Some of the ingredients in the Almay Mascara (including all of the chemicals identified in paragraph 119 of this Complaint) can be harmful to consumers and should not be included in a product marked "clean."  For example, Tocopheryl Acetate has a high risk of being contaminated with hydroquinone, an ingredient specifically identified as banned from Target Clean marked beauty products.  Additionally, many of the ingredients in the Almay Mascara, including those identified in paragraph 119 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, PFAS or links to PFAS, hormone disruption and toxicity to humans and the environment.

121.    Including ingredients that Target expressly states the Target Clean Identified Products do not contain, relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients, and including products with vague ingredients like fragrance without an analysis of that ingredient are all forms of greenwashing related to the Almay Mascara.

---

[99] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).
[100] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

122.    The Almay Mascara is available from Amazon.com and Almay, neither of which classify the Almay Mascara as "clean."[101]

123.    **Physicians Formula Monoi Bronzer, Matte Bronzer ("Monoi Bronzer"):**



**102**



Ingredients: **Talc**, **Mica**, Lauroyl Lysine, Zinc Stearate, **Fragrance/Parfum**, Triethylhexanoin, **Dimethicone**, Astrocaryum Murumuru Seed Butter, Astrocaryum Tucuma Seed Butter, Theobroma Grandiflorum Seed Butter, Potassium Sorbate, **Phenoxyethanol**, Caprylyl Glycol, **Tocopheryl Acetate**, Ethylhexylglycerin, Hexylene

---

[101] https://www.amazon.com/Almay-Multi-Benefit-Waterproof-Ophthalmologist-Hypoallergenic/dp/B01FIL4LYQ?source=ps-sl-shoppingads-lpcontext&ref_=fplfs&psc=1&smid=ATVPDKIKX0DER.
[102] https://www.physiciansformula.com/product/matte-monoi-butter-bronzer/

Glycol, Butyrospermum Parkii (Shea) Butter, Cocos Nucifera (Coconut) Oil, Gardenia Taitensis Flower Extract, **Iron Oxides** (**Ci 77491, Ci 77492, Ci 77499**), **Titanium Dioxide** (**Ci 77891**).[103]







## Physicians Formula Matte Monoi Bronzer, Matte Bronzer

**5**

Data Availability: **Limited**

INGREDIENT CONCERNS        LABEL INFORMATION        CERTIFICATIONS

### Ingredient concerns

See how this product scores for common concerns.

● LOW        Cancer

● HIGH        Allergies & Immunotoxicity

● LOW        Developmental and Reproductive Toxicity

● HIGH        Use Restrictions

[104]

---

[103] https://www.target.com/p/physicians-formula-murumuru-butter-matte-monoi-butter-bronzer-0-38oz/-/A-80165093?preselect=80021193#lnk=sametab (Feb. 6, 2023).

[104] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/products/975750-Physicians_Formula_Matte_Monoi_Bronzer_Matte_Bronzer/, (Mar. 21, 2023).

124.    The EWG score of 5 indicates a moderate hazard based upon the ingredients included in the product. The Monoi Bronzer contains the following unclean or harmful ingredients: **Talc** (known human carcinogen; contamination concern with asbestos[105]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to keep away from children's mouth or nose)[106], [107], **Fragrance** (associated with allergies, dermatitis, respiratory distress and potential effects on the reproductive system; undisclosed mixture of perfuming ingredients which often include phthalates and other endocrine disruptor compounds)[108], [109], **Dimethicone** (use, concentration, and manufacturing restricted;)[110], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[111], [112], **Tocopheryl Acetate** (includes a contamination concern

---

[105] Talc containing asbestiform fibers is on the California Proposition 65. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

[106] EWG's SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/, (Mar. 21, 2023).

[107] Substance Talc, EUROPEAN COMMISSION, https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Mar. 21, 2023).

[108] EWG's SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702512-FRAGRANCE/, (Mar. 21, 2023).

[109] Good Face Index Restricted Toxins List, GOOD FACE PROJECT, https://www.thegoodfaceproject.com/static/react/build/static/media/restricted_toxins_list.8a56c1ed.pdf, (Mar. 21, 2023).

[110] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702011DIMETHICONE/, (Mar. 21, 2023).

[111] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[112] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited

with Hydroquinone[113]; evidence linking it to human skin toxicant or allergens; and certain animal studies show tumor formation at higher doses)[114], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[115], [116], and **Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[117], [118].

---

Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute effects on infants' nervous systems).

[113] Hydroquinone is listed as a banned ingredient from Target Clean marked beauty products. *See also* https://www.safecosmetics.org/chemicals/hydroquinone/ (last visited Aug. 20, 2023).

[114] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706569-TOCOPHERYL_ACETATE/, (Mar. 21, 2023).

[115] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[116] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

[117] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/ , (Mar. 21, 2023); *see also* Titanium Dioxide, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/titanium-dioxide/ (last visited Aug. 20, 2023)

[118] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.

125.    The Monoi Bronzer also contains the following ingredient that is listed on Target's banned ingredient list for Target's beauty and personal care products[119], [120]: Mica. Mica is listed as the second ingredient in the Monoi Bronzer, indicating it has the second highest concentration in the Monoi Bronzer, after Talc.

126.    Some of the ingredients in the Monoi Bronzer (including all of the ingredients identified in paragraph 124 of this Complaint) can be harmful to consumers and should not be included in a product Target has marked "clean."  For example, Tocopheryl Acetate has a high risk of being contaminated with Hydroquinone, an ingredient specifically identified as banned from Target Clean marked beauty products. Many of the ingredients in the Monoi Bronzer, including those identified in paragraph 124 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, PFAS and links to PFAS, and toxicity to humans and the environment. Additionally, the ingredients within the

---

[119] Prior to June 2023, the list of banned Target Beauty and Personal Care Ingredients was 60 pages (5 pages were related to general products, ½ page was related to oral care, and the remaining pages were related to deodorant).  Target recognized the unwanted or harmful nature of each of the ingredients on the 60-page list, in its entirety.  Some of the chemicals identified herein were found in other sections of the banned ingredients list, like the deodorant section. The basis for the separation of the list is unclear and upon information and belief, chemicals applied to the skin via deodorant or makeup could be harmful. Indeed, according to Heather Patisaul, Ph.D. and associate professor of biology at North Carolina State University, products that are put on skin, like makeup or deodorant, can all potentially enter the bloodstream without being metabolized. *See https://time.com/4394051/deodorant-antiperspirant-toxic/.*
[120] Upon information and belief, between February 2023 and July 2023, Target updated and/or modified the list of banned Target Beauty and Personal Care Ingredients.

"fragrance" ingredient are not identified and it is unclear whether Target examined the ingredients in the Monoi Bronzer's fragrance.

127.    Including ingredients that Target expressly states the Target Clean Identified Products do not contain, relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients, and including products with vague ingredients like fragrance without an analysis of that ingredient are all forms of greenwashing related to the Monoi Bronzer.

128.    The Monoi Bronzer is available from Amazon and Physicians Formula, neither of which classify the Monoi Bronzer as "clean."

129.    **Wet n' Wild Photo Focus Loose Setting Powder ("Wild Powder"):**



121

---

[121] https://www.target.com/p/wet-n-wild-photo-focus-loose-setting-powder-0-64oz/-/A-79407919?preselect=76726996#lnk=sametab



Ingredients: Nylon-12, **Talc**, Zea Mays (Corn) Starch, Water/Eau, **Phenoxyethanol**, Caprylyl Glycol, Ethylhexylglycerin, Hexylene Glycol, O-Cymen-5-Ol, **Iron Oxides/Ci 77491, Ci 77492, Ci 77499**.[122]

---

[122] *Id.*



130.   The EWG score of 4 indicates a moderate hazard based upon the ingredients included in the product.

131.   The Wild Powder contains the following unclean or harmful ingredients: **Talc** (known human carcinogen; contamination concern with asbestos[124]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European

---

[123] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/products/957005-Wet_N_Wild_Photofocus_Loose_Setting_Powder_Translucent_520_B/, (Mar. 21, 2023).
[124] Talc containing asbestiform fibers is on the California Proposition 65. *See* https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (last visiting Aug. 20, 2023).

Commission issued warning to keep away from children's mouth or nose)[125][126],

**Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[127], [128], and **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[129], [130].

132.    Some of the ingredients in the Wild Powder (including all of the chemicals identified in paragraph 131 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target "clean."  Many of the ingredients in the Wild Powder, including those identified in paragraph 131 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, PFAS and links to PFAS and the risks associated with those forever chemicals, and toxicity to humans and the environment.

---

[125] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706427-TALC/.
[126] https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Mar. 21, 2023).
[127] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).
[128] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).
[129] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).
[130] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

133.   Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients and including products with vague ingredients like fragrance without an analysis of that ingredient are both forms of greenwashing by Target related to the Wild Powder.

134.   The Wild Powder is available from Amazon.com and Wet n' Wild, neither of which classify the Wild Powder as "clean."

135.   **Wet n' Wild Color Icon Blush ("Wild Blush"):**



131

---

131 https://www.target.com/p/wet-n-wild-color-icon-blush-0-21oz/-/A-79407924?preselect=76727005#lnk=sametab (Feb. 6, 2023).



**Ingredients**: <u>Talc</u>, Magnesium Myristate, <u>**Silica**</u>, <u>**Calcium Aluminum Borosilicate**</u>, Dimethicone, Caprylic/Capric Triglyceride, Lauroyl Lysine, Simmondsia Chinensis (Jojoba) Seed Oil, <u>**Synthetic Fluorphlogopite,**</u> Diethylhexyl Syringylidenemalonate, <u>**Trimethylsiloxysilicate**</u>, <u>**Phenoxyethanol**</u>, <u>**Chlorphenesin**</u>, Octyldodecanol, Butylene/Ethylene/Styrene Copolymer, Ethylene/Propylene/Styrene Copolymer, <u>**Tin Oxide,**</u> Microcrystalline Cellulose, Boron Nitride, <u>**Triethoxycaprylysilane**</u>, Water, Iron Oxides/<u>**Ci 77491**</u>, <u>**Ci 77492**</u>, <u>**Ci 77499**</u>, <u>**Mica**</u>, Red 30/Ci 73360, <u>**Titanium Dioxide/Ci 77891.**</u>[132]

---

[132] *Id.*



136.    The EWG score of 3 indicates a moderate hazard based upon the ingredients included in the product.

137.    The Wild Blush contains the following unclean or harmful ingredients: **Talc** (known human carcinogen; contamination concern with asbestos[134]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European

---

[133] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/products/1019249-Wet_N_Wild_Color_Icon_Blush_Pinch_Me_Pink_1114174/, (Mar. 21, 2023).
[134] Talc containing asbestiform fibers is on the California Proposition 65. *See* https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (last visiting Aug. 20, 2023).

Commission issued warning to keep away from children's mouth or nose)[135][136], **Silica** (linked to levels of Fluorine and PFAS)[137], **Dimethicone** (use, concentration, and manufacturing restricted;)[138], **Trimethylsiloxysilicate** (linked to moderate levels of Fluorine and PFAS)[139], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[140], [141], **Tin Oxide** (some evidence it is a mutagen; nano-scale ingredients suspected to absorb into skin)[142], **Chlorphenesin** (synthetic preservative; use, concentration and manufacturing restrictions and prohibited in some cosmetics in Japan)[143], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also

---

[135] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/, (Mar. 21, 2023).

[136] European Commission, https://ec.europa.eu/growth/toolsdatabases/cosing/index.cfm?fuseaction=search.details_v2&id=28310.

[137] *See* supra, fn. 41, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf, (Mar. 21, 2023).

[138] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702011-DIMETHICONE/, (Mar. 21, 2023).

[139] *See* supra, fn. 41, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf, (Mar. 21, 2023).

[140] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[141] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[142] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706558-TIN_OXIDE/, (Mar. 21, 2023).

[143] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/701327-CHLORPHENESIN/, (Mar. 21, 2023).

possess a strong affinity to PFAS compounds)[144], [145], and **Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[146], [147].

138.   Wild Blush also contains the following ingredients that are listed on Target's banned ingredient list for Target's beauty and personal care products[148]: Calcium Aluminum Borosilicate (5th listed ingredient out of 26), Synthetic Fluorphlogonite (10th listed ingredient out of 26), Tiethoxycaprylysilane (21st listed ingredient out of 26), and Mica (24th listed ingredient out of 26). The earlier on the ingredient list, the higher concentration of the ingredient in the product.

139.   Some of the ingredients in the Wild Blush (including all of the chemicals identified in paragraph 137 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Many of the ingredients in the Wild Blush, including those identified in paragraph 137 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including

---

[144] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).
[145] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).
[146] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/, (Mar. 21, 2023).
[147] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.
[148] *See supra* n. 120 & 121.

known carcinogens, links to Fluorine and PFAs, and toxicity to humans and the environment.

140.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading and a form of greenwashing by Target related to the Wild Blush.

141.    The Wild Blush is available from other retailers like Amazon.com and Wet n' Wild, neither of which classify the Wild Blush as "clean."

142.    **Wet N' Wild Bare Focus Tinted Hydrator ("Wild Hydrator"):**



149

---

149 https://www.target.com/p/wet-n-wild-bare-focus-tinted-hydrator-0-91-fl-oz/-/A-80121338?preselect=80028892#lnk=sametab (Feb. 6, 2023).



Ingredients:    Water/Eau,    **Cyclopentasiloxane,**    Butylene    Glycol,    Glycerin, **Disteardimonium Hectorite,** **Cetyl Peg/Ppg-10/1 Dimethicone,** **Lauryl Peg-10 Tris(Trimethylsiloxy)Silylethyl Dimethicone,** **Phenoxyethanol,** Magnesium Sulfate, **Triethoxycaprylysilane,**    Ethylhexylglycerin,    **Dimethicone/Vinyl    Dimethicone Crosspolymer,** **Squalane,** Sodium Hyaluronate, Hydrolyzed Hyaluronic Acid, [+/- (May Contain): **Titanium Dioxide/Ci 77891,** **Iron Oxides/Ci 77491, Ci 77492, Ci 77499**].[150]

143.    The Wild Hydrator contains the following unclean or harmful ingredients:

**Cyclopentasiloxane** (associated with environmental toxicity; suspected to impact fertility and is banned in Europe)[151][152], **Disteardimonium Hectorite** (linked to high fluorine levels posing risks associated with PFAS)[153], **Cetyl PEG/PPG-10/1 Dimethicone** (may be contaminated with 1,4-dioxane[154]; Lauryl PEG-10 Tris (Trimethylsiloxy) **Silylethyl**

---

[150] *Id.*

[151] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/701741-CYCLOPENTASILOXANE/, (Mar. 21, 2023).

[152] "Personal care product chemicals banned in Europe but still found in U.S.," EWG, https://www.ewg.org/news-insights/news/2022/10/personal-care-product-chemicals-banned-europe-still-found-us, (Mar. 21, 2023).

[153] *See supra,* fn. 41, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf.

[154] Listed on European Chemical Agency's Candidate List of Substances with very high concern. https://echa.europa.eu/candidate-list-table?p_p_id=disslists_WAR_disslistsportlet&p_p_lifecycle=1&p_p_state=normal&p_p_

**Dimethicone** (contamination concern with Ethylene oxide and 1,4-dioxane[155])[156], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions including in EU; increased respiratory concerns when found in powders)[157], [158], **Dimethicone/Vinyl Dimethicone Crosspolymer** (linked to fluorine levels that may be associated with PFAS and respective side effects)[159], **Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[160], [161], **Iron Oxides** (classified by the National Library of Medicine

---

mode=view&_disslists_WAR_disslistsportlet_javax.portlet.action=searchDissLists (last visited Aug. 20, 2023).

[155] Listed on European Chemical Agency's Candidate List of Substances with very high concern. https://echa.europa.eu/candidate-list-table?p_id=disslists_WAR_disslistsportlet&p_p_lifecycle=1&p_p_state=normal&p_p_mode=view&_disslists_WAR_disslistsportlet_javax.portlet.action=searchDissLists (last visited Aug. 20, 2023).

[156] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/862592-LAURYL_PEG10_TRISSILYLETHYL_DIMETHICONE_TRIMETHYLSILOXY/, (Mar. 21, 2023).

[157] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[158] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[159] *See supra*, fn. 41, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf.

[160] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/, (Mar. 21, 2023).

[161] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.

HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[162], [163].

144.    The Wild Hydrator also contains the following ingredient that is listed on Target's banned ingredient list for Target's beauty and personal care products [164]: Triethoxycaprylysilane (10th ingredient out of 18).  Again, the earlier on the ingredient list, the higher concentration of the ingredient in the product.

145.    Some of the ingredients in the Wild Hydrator (including all of the chemicals identified in paragraph 143 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Many of the ingredients in the Wild Hydrator, including those identified in paragraph 143 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, and toxicity to humans and the environment.

146.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading and a form of greenwashing by Target related to the Wild Hydrator.

---

[162] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).
[163] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).
[164] *See supra* n. 120 &121.

147.    The Wild Hydrator is available from other retailers such as Amazon and Wet

n' Wild, neither of which classify the Wild Hydrator as "clean."

148.    **Wet N' Wild Megaglo Contouring Palette ("Wild Palette"):**



165



Ingredients: **Talc**, Nylon-12, Boron Nitride, **Aluminum Starch Octenylsuccinate**, Ethyl Macadamiate, **Dimethicone**, Magnesium Myristate, **Synthetic Fluorphlogopite**, **Phenoxyethanol**, **Trimethylsiloxysilicate**, Lauroyl Lysine, Caprylyl Glycol, Polybutene, Hexylene Glycol, Ethylhexylglycerin, Water/Eau, Tocopherol, 0-Cymen-5-Ol, **Triethoxycaprylysilane**, **Aluminum Hydroxide**, [+/- (May Contain/Peut Contenir): **Ultramarines/Cl 77007**, **Titanium Dioxide/Cl 77891**, **Red 7 Lake/Ci 15850**, **Mica**, **Iron Oxides/Cl 77491,    Cl 77492, Ci 774991**. [166]

149.    The Wild Palette contains the following unclean or harmful ingredients: **Talc** (known human carcinogen; contamination concern with asbestos[167]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to keep away from children's mouth or nose)[168][169],

---

[166] *Id.*

[167] Talc containing asbestiform fibers is on the California Proposition 65. *See* *https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

[168] EWG's SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706427-TALC/.

[169] Talc, European Commission, https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Mar. 21, 2023).

**Dimethicone** (use, concentration, and manufacturing restricted;)[170], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[171], [172], **Trimethylsiloxysilicate** (linked to moderate levels of Fluorine and PFAS)[173], **Titanium Dioxide** (linked to moderate levels of Fluorine)[174], [175], **Red 7 Lake** (concentration worse in powders; not approved by FDA for use around eyes; some contamination risks), **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[176], [177].

150.    The Wild Palette also contains the following ingredients that are listed on Target's banned ingredient list for Target's beauty and personal care products[178]: Aluminum

---

[170] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/702011-DIMETHICONE/, (Mar. 21, 2023).

[171] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[172] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[173] *See* supra, fn. 41, https://pubs.acs.org/doi/suppl/10.1021/acs.estlett.1c00240/suppl_file/ez1c00240_si_001.pdf.

[174] *Id.*

[175] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.

[176] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[177] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

[178] *See supra* n. 120 & 121.

Starch Octenylsuccinate (4th ingredient out of 25), Synthetic Fluorphlogonite (8th ingredient out of 25), Triethoxycaprylysilane (19th ingredient out of 25), and Aluminum Hydroxide (20th ingredient out of 25).  The earlier on the ingredient list, the higher concentration of the ingredient in the product.

151.    Some of the ingredients in the Wild Palette (including all of the chemicals identified in paragraph 149 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Many of the ingredients in the Wild Palette, including those identified in paragraph 149 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, risks of contamination with Fluorine and other PFAS, and toxicity to humans and the environment.

152.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading and a form of greenwashing by Target related to the Wild Palette.

153.    The Wild Palette is available from other retailers such as Amazon and Wet n' Wild, neither of which classify the Wild Palette as "clean."

154.    **Covergirl Clean Fresh Pressed Powder ("Covergirl Powder"):**



179



---

[179] https://www.target.com/p/covergirl-clean-fresh-pressed-powder-0-35oz/-/A-79685640?preselect=79506592#lnk=sametab (Feb. 7, 2023).

Ingredients: **Mica**, **Kaolin**, Zinc Stearate, Avena Sativa (Oat) Kernel Flour, Octyldodecyl Stearoyl Stearate, Tapioca Starch, Isopropyl Palmitate, Calcium Silicate, **Dimethicone**, Aqua/Water/Eau, 1,2-Hexanediol, Caprylyl Glycol, **Phenoxyethanol**, Sorbitan Sesquioleate, Aloe Barbadensis Leaf Juice.

Allergens & Warnings: [May contain +/-: **Iron oxides (CI 77491, CI 77492, 0177499), Titanium Dioxide (CI 77891)]**[180]

155.    The Covergirl Powder contains the following unclean or harmful ingredients:

**Dimethicone** (use, concentration, and manufacturing restricted;)[181] and **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[182], [183], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[184], [185], and **Titanium Dioxide** (may be toxic or

---

[180] https://www.target.com/p/covergirl-clean-fresh-pressed-powder-0-35oz/-/A-79685640?preselect=79506592#lnk=sametab (Feb. 7, 2023).

[181] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702011-DIMETHICONE/, (Mar. 21, 2023).

[182] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[183] See Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[184] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[185] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

harmful; possible human carcinogen and creates higher risk when used in powders, on California Proposition-65 list)[186] , [187].

156.    The Covergirl Powder also contains the following ingredients, which are listed on Target's banned ingredient list for Target's beauty and personal care products[188]: Mica (1st ingredient out of 16) and Kaolin (2nd ingredient out of 16).

157.    Some of the ingredients in the Covergirl Powder (including all of the ingredients identified in paragraph 155 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Many of the ingredients in the Covergirl Powder, including those identified in paragraph 155 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, and toxicity to humans and the environment.

158.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading to consumers and a form of greenwashing by Target related to the Covergirl Powder.

159.    The Covergirl Powder is available from other retailers such as Amazon and Covergirl, neither of which classify the Covergirl Powder as "clean."

---

[186] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/, (Mar. 21, 2023).
[187] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.
[188] *See supra* n. 120 & 121.

160.    **Physicians Formula Murumuru Butter Believe its Blush ("Physicians Blush"):**



189

189 https://www.physiciansformula.com/product/butter-believe-it-blush/ (Feb. 7, 2023).

Ingredients: __Talc__, Zinc Stearate, **Synthetic Fluorphlogopite**, Isostearyl Neopentanoate, Octyldodecyl Stearoyl Stearate, **Fragrance/Parfum,** Astrocaryum Murumuru Seed Butter, Polybutene, **Phenoxyethanol** Triethylhexanoin, Caprylyl Glycol, Ethylhexylglycerin, Hexylene Glycol, Astrocaryum Tucuma Seed Butter, Theobroma Grandiflorum Seed

Butter, **Tin Oxide,** Tocopherol, Lecithin, Ascorbyl Palmitate, Glyceryl Stearate, **Glyceryl Oleate**, Citric Acid, Citral May Contain/Peut Contenir: Carmine (C1 75470), **Iron Oxides (Ci 77491, C1 77499, C1 77499)**, **Mica**, **Red 7 Lake (Ci 15850)**, **Red 30 Lake (Ci 73360)**, **Titanium Dioxide (Ci 77891).**[190]

161.    The Physician Blush contains the following unclean or harmful ingredients that consumers may be concerned about: **Talc** (possible human carcinogen; contamination concern with asbestos[191]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to keep away from children's mouth or nose)[192][193], **Fragrance** (associated with allergies, dermatitis, respiratory distress and potential effects on the reproductive system; undisclosed mixture of perfuming ingredients which often include phthalates and other endocrine disruptor compounds)[194][195], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[196], [197], **Tin Oxide**

---

[190] https://www.target.com/p/physicians-formula-murumuru-butter-butter-believe-it-blush-pink-sands-0-19oz/-/A-83345927#lnk=sametab (Feb. 6, 2023).

[191] Talc containing asbestiform fibers is on the California Proposition 65. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

[192] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/, (Mar. 21, 2023).

[193] Talc, European Commission, https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Mar. 21, 2023).

[194] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702512-FRAGRANCE/, (Mar. 21, 2023).

[195] *See* supra, fn. 109, https://www.thegoodfaceproject.com/static/react/build/static/media/restricted_toxins_list.8a56c1ed.pdf, (Mar. 21, 2023).

[196] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Mar. 21, 2023).

[197] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited

(some evidence it is a mutagen; nano-scale ingredients suspected to absorb into skin)[198],

**Iron Oxides** (classified by the National Library of Medicine HazMap as persistent,

bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS

compounds)[199], [200], **Red 7 Lake** (concentration worse in powders; not approved by FDA

for use around eyes; some contamination risks), **Red 30 Lake** (precipitated with metal salts

such as aluminum, calcium, barium, or others; use, concentration, and manufacturing

restrictions)[201], and **Titanium Dioxide** (may be toxic or harmful; possible human

carcinogen and creates higher risk when used in powders; on California Proposition-65

list)[202], [203].

162.    The Physicians Blush also contains the following ingredients that are listed

on the Target Clean Banned Ingredients for beauty and personal care products[204]: Synthetic

---

Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic
reactions and acute affects on infants' nervous systems).
[198] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706558-TIN_OXIDE/,
(Mar. 21, 2023).
[199] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/,
(Mar. 21, 2023).
[200] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE,
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20mi
nerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug.
20, 2023).
[201] EWG'S SKIN DEEP, HTTPS://WWW.EWG.ORG/SKINDEEP/INGREDIENTS/701802-
DC_RED_NO_30_CI_73360_LAKE/
[202] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706561-
TITANIUM_DIOXIDE/, (Mar. 21, 2023).
[203] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-
65//p65chemicalslist.pdf.
[204] *See supra* n. 120 & 121.

Fluorphlogonite (3rd listed ingredient out of 28), Glyceryl Oleate (20th listed ingredient out of 28), and Mica (25th listed ingredient out of 28).

163.    Some of the ingredients in the Physicians Blush (including all of the chemicals identified in paragraph 161 of this Complaint) can be harmful to consumers and should not be included in a product marked "clean."  Many of the ingredients in the Physicians Blush, including those identified in paragraph 161 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to PFAS, and toxicity to humans and the environment.

164.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients and including products with vague ingredients like fragrance without an analysis of that ingredient are both misleading to consumers and forms of greenwashing by Target related to the Physicians Blush.

165.    The Physicians Blush is available from other retailers such as Amazon and Physicians Formula, neither of which classify the Physicians Blush as "clean."

86

166.    **Physicians Formula Magic Mosaic Bronzer Light Bronzer ("Physicians**

**Mosaic Bronzer"):**



205



Ingredients:  **Talc**, **Mica**, **Dimethicone**, **Aluminum Starch Octenylsuccinate**, Octyldodecyl Stearoyl Stearate, **Cyclopentasiloxane**, Bis-Diglyceryl Polyacyladipate-2, **Methylparaben**, Dehydroacetic Acid, **Propylparaben**, **Sorbic Acid**, **Tocopheryl Acetate, Iron Oxides (Ci 77491, Ci 77492, Ci 77499), Titanium Dioxide (Ci 77891),** Ultramarines (Ci 77007), **Yellow 5 Lake (Ci 19140).**[206]

---

[206] https://www.target.com/p/physicians-formula-magic-mosaic-bronzer-light-bronzer-0-3oz/-/A-12356890#lnk=sametab (Feb. 6, 2023).





167.    The EWG score of 5 indicates a moderate hazard based upon the ingredients included in the product.  The Physicians Mosaic Bronzer contains the following unclean or potentially harmful ingredients: **Talc** (known human carcinogen; contamination concern

---

[207] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/products/923266-Physicians_Formula_Magic_Mosaic_Pressed_Powder_Light_BronzerBronzer_2020_formulation/, (Mar. 21, 2023).

with asbestos[208]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to keep away from children's mouth or nose)[209], [210], **Dimethicone** (use, concentration, and manufacturing restricted;)[211], **Cyclopentasiloxane** (associated with environmental toxicity; suspected to impact fertility and is banned in Europe)[212], [213], **Methylparaben** (evidence of human endocrine disruption; may interfere with gene expression and evidence of human toxicant or allergen; subject to use and concentration restrictions; can lead to UV-induced damage of skin cells and disruption of cell proliferation)[214], **Tocopheryl Acetate** (known human toxicant and allergen)[215], Iron Oxides (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong

---

[208] Talc containing asbestiform fibers is on the California Proposition-65 List. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

[209] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/.

[210] https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Mar. 21, 2023).

[211] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702011-DIMETHICONE/, (Mar. 21, 2023).

[212] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/701741-CYCLOPENTASILOXANE/, (Mar. 21, 2023).

[213] EWG'S SKIN DEEP, https://www.ewg.org/news-insights/news/2022/10/personal-care-product-chemicals-banned-europe-still-found-us, (Mar. 21, 2023).

[214] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/703937-METHYLPARABEN/, (Mar. 21, 2023); *see also* https://www.safecosmetics.org/chemicals/parabens/ (last visited Aug. 20, 2023).

[215] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706569-TOCOPHERYL_ACETATE/, (Mar. 21, 2023).

affinity to PFAS compounds)[216], [217], and **Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[218], [219], and **Yellow 5 Lake** (precipitated with metal salts such as aluminum, calcium, barium, or others; contamination concerns; human toxicant and allergen)[220].

168.    The Physicians Mosaic Bronzer also contains the following ingredients that are listed on Target's banned ingredient list for Target's beauty and personal care products [221]: Mica (2nd listed ingredient out of 16), Aluminum Starch Octenylsuccinate (4th listed ingredient out of 16), Propylparaben (10th listed ingredient out of 15) (human endocrine disruptor and possible reproductive toxin)[222], and Sorbic Acid (11th listed ingredient out of 15).

169.    Some of the ingredients in the Physicians Mosaic Bronzer (including all of the chemicals identified in paragraph 167 of this Complaint) can be harmful to consumers

---

[216] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[217] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

[218] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/, (Mar. 21, 2023).

[219] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.

[220] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702443-FDC_YELLOW_NO_5_CI_19140_LAKE/, (Mar. 21, 2023).

[221] See supra n. 120 & 121.

[222] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/705335-PROPYLPARABEN/, (Mar. 21, 2023).

and should not be included in a product marked "clean."  For example, Tocopheryl Acetate has a high risk of being contaminated with Hydroquinone, an ingredient specifically identified as banned from Target Clean marked beauty products.  Additionally, many of the ingredients in the Physicians Mosaic Bronzer, including those identified in paragraph 167 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, hormone disruption and toxicity to humans and the environment.

170.    According to Physicians Formula, as of August 17, 2023, below are the possible ingredient lists for the Physicians Formula Mosaic Bronzer:

## Ingredients

NOTE: Due to high demand for this product, we have multiple suppliers and the ingredient listings may be slightly different. Please call our Consumer Relations Department at 1-800-227-0333 with any concerns or questions on ingredients.INGREDIENT LISTING #1: INGREDIENTS: TALC, SYNTHETIC WAX, ISOPROPYL LANOLATE, ALUMINUM STARCH OCTENYLSUCCINATE, CETYL ACETATE, MICA, NYLON-12, LAUROYL LYSINE, CYCLOPENTASILOXANE, OCTYLDODECYL STEAROYL STEARATE, ACETYLATED LANOLIN ALCOHOL, BHT, METHYLPARABEN, PROPYLPARABEN, MAY CONTAIN: IRON OXIDES, ULTRAMARINES, MANGANESE VIOLET, CARMINE, TITANIUM DIOXIDE, RED 7 LAKE, YELLOW 5 LAKE, BLUE 1 LAKE. INGREDIENT LISTING #2: INGREDIENTS: TALC, ISOSTEARYL NEOPENTANOATE, POLYBUTENE, BUTYL STEARATE, BHT, PHENOXYETHANOL, METHYLPARABEN, PROPYLPARABEN, ETHYLPARABEN, BUTYLPARABEN, ISOBUTYLPARABEN, MAY CONTAIN: MICA, IRON OXIDES, TITANIUM DIOXIDE, RED 6, RED 7 LAKE, YELLOW 6 LAKE, ULTRAMARINES, CHROMIUM OXIDE GREENS, CHROMIUM HYDROXIDE GREEN, MANGANESE VIOLET, FERRIC FERROCYANIDE, CARMINE, YELLOW 5 LAKE, BLUE 1 LAKE, BISMUTH OXYCHLORIDE. INGREDIENT LISTING #3: TALC, MICA, DIMETHICONE, ALUMINUM STARCH OCTENYLSUCCINATE, OCTYLDODECYL STEAROYL STEARATE, CYCLOPENTASILOXANE, BIS-DIGLYCERYL , OLYACYLADIPATE – 2, TOCOPHERYL ACETATE, DEHYDROACETIC ACID, SORBIC ACID, METHYLPARABEN, PROPYLPARABEN, MAY CONTAIN: IRON OXIDES, TITANIUM DIOXIDE, YELLOW 5 LAKE, ULTRAMARINES.

[223] There are three different ingredient lists created by Physician's Formula and Propylparaben is listed as an ingredient in all three.

---

[223] https://www.physiciansformula.com/product/magic-mosaicr-multi-colored-custom-pressed-powder-light-bronzer-bronzer/.

171.    On June 6, 2023, Plaintiffs sent Target a letter and attached a draft of this Complaint, which included allegations related to Physicians Mosaic Bronzer containing Propylparabens. This was based upon Target's application of the Target Clean Label and following ingredient list:

**Ingredients:**

Talc, Mica, Dimethicone, Aluminum Starch Octenylsuccinate, Octyldodecyl Stearoyl Stearate, Cyclopentasiloxane, Bis-Diglyceryl Polyacyladipate-2, Methylparaben, Dehydroacetic Acid, Propylparaben, Sorbic Acid, Tocopheryl Acetate, Iron Oxides (Ci 77491, Ci 77492, Ci 77499), Titanium Dioxide (Ci 77891), Ultramarines (Ci 77007), Yellow 5 Lake (Ci 19140).

[224].

172.    Target removed the Target Clean Label from this product on its website after receiving Plaintiff's June 6, 2023 letter.

173.    Including ingredients that Target expressly states the Target Clean Identified Products do not contain and relying on a narrow subset of ingredients to make a "clean" claim, failing to notify, or intentionally refusing to notify consumers that the Target Clean products may contain different ingredients at Target than they do at other stores, and ignoring other harmful or potentially harmful ingredients are all misleading to consumers and forms of greenwashing by Target related to the Physicians Mosaic Bronzer.

174.    The Physicians Mosaic Bronzer is available from other retailers such as Amazon and Physicians Formula, neither of which classify the Physicians Mosaic Bronzer as "clean."

---

[224] https://www.target.com/p/physicians-formula-magic-mosaic-bronzer-light-bronzer-0-3oz/-/A-12356890#lnk=sametab (last visited August 17, 2023).

175.    **Physicians Formula Powder Palette Pressed Powder ("Physicians Powder"):**



♡    225

---



Ingredients: **<u>Talc</u>**, **<u>Mica</u>**, Magnesium Stearate, Octyldodecyl Stearoyl Stearate, Lauroyl Lysine, Ethylhexyl Palmitate, **Phenoxyethanol**, Caprylyl Glycol, Hexylene Glycol, **<u>Iron Oxides (Ci 77491, Ci 77492, Ci 77499), Titanium Dioxide (Ci 77891),</u>** Ultramarines (Ci 77007).[226]

176. The Physicians Powder contains the following unclean or harmful ingredients: **Talc** (possible human carcinogen; contamination concern with asbestos[227]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to keep away from children's mouth or nose)[228], [229], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions;

---

[226] https://www.target.com/p/physicians-formula-powder-palette-pressed-powder-translucent-br-1640/-/A-12356376#lnk=sametab (Feb. 6, 2023).

[227] Talc containing asbestiform fibers is on the California Proposition 65. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

[228] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/.

[229] https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Feb. 6, 2023).

increased respiratory concerns when found in powders)[230], [231], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[232], [233], and **Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[234], [235].

177.   The Physicians Powder also contains the following ingredient that is listed on Target's banned ingredient list for Target's beauty and personal care products[236]:  Mica (2nd listed ingredient out of 12).

178.   Some of the ingredients in the Physicians Powder (including all of the chemicals identified in paragraph 176 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean.".  Many of the ingredients in the Physicians Powder, including those identified in paragraph 176 of this Complaint,

---

[230] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/704811-PHENOXYETHANOL/, (Feb. 6, 2023).
[231] *See* Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).
[232] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).
[233] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).
[234] EWG'S SKIN DEEP,  https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/, (Feb. 6, 2023).
[235] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.
[236] *See supra* n. 120 & 121.

have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, PFAS and links to PFAS, and toxicity to humans and the environment.

179.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful is misleading to consumers and a form of greenwashing by Target related to the Physicians Powder.

180.    The Physicians Powder is available from other retailers such as Amazon and Physicians Formula, neither of which classify the Physicians Powder as "clean."

181.    **Covergirl TruBlend Matte Made Foundation ("Covergirl Foundation"):**





Ingredients: Aqua/Water/Eau, **Cyclopentasiloxane**, **Talc**, Propylene Glycol, **Dimethicone, Peg/Ppg-18/18 Dimethicone**, **Aluminum Starch Octenylsuccinate**, Sodium Chloride, Pvp, **Phenoxyethanol**, Synthetic Beeswax, Trihydroxystearin, Methicone, 1,2-Hexanediol, Caprylyl Glycol, **Sodium Benzoate**, **Silica**, Acrylonitrile/Methyl Methacrylate/Vinylidene Chloride Copolymer, Synthetic Wax, Polyglyceryl-4 Isostearate, **Cetyl Peg/Ppg-10/1 Dimethicone**, Hexyl Laurate, **Ethylene Brassylate**, Polyethylene, **Aluminum Hydroxide**, Stearic Acid, Isopropyl Titanium Triisostearate, [May Contain +/- : **Titanium Dioxide (Ci 77891), Iron Oxides (Ci 77491, Ci 77492, Ci 77499)]**[237]

182.    The Covergirl Foundation contains the following unclean or harmful ingredients: **Cyclopentasiloxane** (associated with environmental toxicity; suspected to impact fertility and is banned in Europe)[238][239], **Talc** (possible human carcinogen; contamination concern with asbestos[240]; expected to be toxic and harmful to humans; use, concentration, and manufacturing restrictions; European Commission issued warning to

---

[237] https://www.target.com/p/covergirl-trublend-matte-made-foundation-1-01-fl-oz/-/A-53442729?preselect=53346507#lnk=sametab (Feb. 6, 2023).
[238] EWG's SKIN DEEP, https://www.ewg.org/skindeep/ingredients/701741-CYCLOPENTASILOXANE/, (Feb. 6, 2023).
[239] EWG's SKIN DEEP, https://www.ewg.org/news-insights/news/2022/10/personal-care-product-chemicals-banned-europe-still-found-us, (Feb. 6, 2023).
[240] Talc containing asbestiform fibers is on the California Proposition 65. *See* *https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visiting Aug. 20, 2023).

keep away from children's mouth or nose)[241][242], **Dimethicone** (use, concentration, and manufacturing restricted;)[243], **Peg/Ppg-18/18 Dimethicone** (contamination risks)[244], **Sodium Benzoate** (fragrance ingredient; restricted use, concentration, and manufacturing in cosmetics)[245], **Phenoxyethanol** (irritant; use, concentration and manufacturing restrictions; increased respiratory concerns when found in powders)[246], [247], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[248], [249], and

---

[241] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706427-TALC/, (Feb. 6, 2023).

[242] https://ec.europa.eu/growth/tools-databases/cosing/index.cfm?fuseaction=search.details_v2&id=28310, (Feb. 6, 2023).

[243] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702011-DIMETHICONE/.

[244] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/704703-PEG_PPG18_18_DIMETHICONE/.

[245] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/705989-SODIUM_BENZOATE/.

[246] EWG'S SKIN DEEP, HTTPS://WWW.EWG.ORG/SKINDEEP/INGREDIENTS/704811-PHENOXYETHANOL/

[247] See Phenoxyethanol, CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/chemicals/phenoxyethanol/#:~:text=Phenoxyethanol%20is%20used%20as%20a,acutely%20affect%20nervous%20system%20function (last visited Aug. 20, 2023) (linking exposure to phenoxyethanol to severe, life-threating allergic reactions and acute affects on infants' nervous systems).

[248] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[249] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

**Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; list on California Proposition-65)[250], [251].

183.    Covergirl Foundation also contains the following ingredients that are listed on Target's banned ingredient list for Target's beauty and personal care products[252]: Aluminum Starch Octenylsuccinate (7th listed ingredient out of 29), Silica (17th listed ingredient out of 29), and Aluminum Hydroxide (25th listed ingredient out of 29).

184.    Some of the ingredients in the Covergirl Foundation (including all of the chemicals identified in paragraph 182 of this Complaint) can be harmful to consumers and should not be included in a product marked "clean."  Many of the ingredients in the Covergirl Foundation, including those identified in paragraph 182 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, and toxicity to humans and the environment.

185.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading to consumers and a form of greenwashing by Target related to the Covergirl Foundation.

186.    Covergirl Foundation is available from other retailers such as Amazon and Covergirl, neither of which classify the Covergirl Foundation as "clean."

---

[250] EWG's Skin Deep,  https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/
[251] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.
[252] *See supra* n. 120 & 121.

187.    **Maybelline Green Edition Balmy Lip Blush, Formulated with Mango Oil ("Maybelline Lip Blush):**



253.

254

Ingredients:    Canola    Oil,    Squalane,    Pentaerythrityl    Tetraisostearate,    Bis-Behenyl/Isostearyl/Phytosteryl Dimer Dilinoleyl Dimer Dilinoleate, Helianthus Annuus Seed Cera / Sunflower Seed Wax, Caprylic/Capric Triglyceride, Candelilla Cera / Candelilla Wax / Cire De Candelilla**, Alumina**, Tocopherol, Glycine Soja Oil / Soybean Oil, **Linalool, Limonene**, Helianthus Annuus Seed Oil / Sunflower Seed Oil, Mangifera Indica Seed Oil / Mango Seed Oil, Aluminum Hydroxide, **Benzyl Alcohol**, **Citral**, **Silica**, **Benzyl Salicylate**, Citric Acid, **Parfum / Fragrance**, [+/- May Contain / Peut Contenir Ci 77491, Ci 77492, Ci 77499 / **Iron Oxides**, **Mica**, **Ci 15850 / Red 7, Ci 45380 / Red 22 Lake, Ci 45410 / Red 28 Lake, Ci 77891 / Titanium Dioxide, Ci 15985 / Yellow 6 Lake,**

[253] https://www.target.com/p/maybelline-green-edition-balmy-lip-blush-formulated-with-mango-oil-0-06oz/-/A-85441165?preselect=83369676#lnk=sametab.
[254] *Id.*

Ci 19140 / Yellow 5 Lake, Ci 42090 / Blue 1 Lake] Fil T282584/1



[255].

188.    The Maybelline Lip Blush contains the following unclean or harmful ingredients: **Alumina** (suspected to be an environmental toxin; moderate to high toxicity concerns according to Environment Canada Domestic Substance List)[256], **Linalool** (fragrance ingredient; restricted in cosmetics)[257], **Limonene** (known irritant; restricted for cosmetics)[258], **Benzyl Alcohol** (this product contains higher risk when included in products used around the mouth due to risk of absorption; associated with immunotoxicity or allergies according to National Library of Medicine HazMap; classified as expected to be

[255] https://www.ewg.org/skindeep/products/1018093-Maybelline_Green_Edition_Balmy_Lip_Blush_002_Bonfire/.
[256] https://www.ewg.org/skindeep/ingredients/700309-ALUMINA/.
[257] https://www.ewg.org/skindeep/ingredients/703568-LINALOOL/.
[258] https://www.ewg.org/skindeep/ingredients/702113-LIMONENE/.

harmful to the nervous system by the Environment Canada Domestic Substance List)[259], **Citral** (use restrictions in cosmetics; evidence supporting both a known and possible human toxicant; known irritant)[260], **Benzyl Salicylate** (subject to use restrictions; evidence of known human immune system toxicant or allergen; associated with endocrine disruption; and suspected to be an environmental toxin according to Environment Canada Domestic Substance List)[261], **Parfum/Fragrance** (associated with allergies, dermatitis, respiratory distress and potential effects on the reproductive system; undisclosed mixture of perfuming ingredients which often include phthalates and other endocrine disruptor compounds)[262][263], **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[264], [265], **Ci 15850 / Red 7** (concentration worse in powders; not approved by

---

[259] https://www.ewg.org/skindeep/ingredients/700697-BENZYL_ALCOHOL/; *see also* Benzyl alcohol, GOVERNMENT OF CANADA, https://www.canada.ca/en/health-canada/services/chemicals-product-safety/benzyl-alcohol.html (last visited Aug. 20, 2023).

[260] https://www.ewg.org/skindeep/ingredients/701383-CITRAL/; *see also* Citral Substance Infocard, EUROPEAN CHEMICALS AGENCY, https://echa.europa.eu/substance-information/-/substanceinfo/100.023.994 (last visited Aug. 20, 2023).

[261] https://www.ewg.org/skindeep/ingredients/700701-BENZYL_SALICYLATE/.

[262] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702512-FRAGRANCE/, (Mar. 21, 2023).

[263] *See* supra, fn. 109, https://www.thegoodfaceproject.com/static/react/build/static/media/restricted_toxins_list.8a56c1ed.pdf, (Mar. 21, 2023).

[264] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[265] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

FDA for use around eyes; some contamination risks)**, Ci 45380 / Red 22 Lake, Ci 45410 / Red 28 Lake, Ci 77891 / Titanium Dioxide** (may be toxic or harmful; possible human carcinogen and creates higher risk when used in powders; on California Proposition-65 list)[266], [267]**, Ci 15985 / Yellow 6 Lake** (contamination concern with cadmium[268]; use restrictions; possibly toxic to reproductive development)[269]**, Ci 19140 / Yellow 5 Lake** (precipitated with metal salts such as aluminum, calcium, barium, or others; contamination concerns; human toxicant and allergen)[270]**, Ci 42090 / Blue 1 Lake] Fil T282584/1** (contamination concern with Aniline and Cadmium[271]; banned and found unsafe for use in cosmetics in other countries; moderate link to cancer; possible neurotoxicity and endocrine disruption)[272].

---

[266] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706561-TITANIUM_DIOXIDE/

[267] California Proposition-65, https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf.

[268] Cadmium is listed on California's Proposition 65 as a chemical known to cause cancer or reproduction toxicity. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visited Aug. 20, 2023).

[269] https://www.ewg.org/skindeep/ingredients/702445-FDC_YELLOW_NO_6_CI_15985_LAKE/.

[270] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702443-FDC_YELLOW_NO_5_CI_19140_LAKE/, (Mar. 21, 2023).

[271] Cadmium is listed on California's Proposition 65 as a chemical known to cause cancer or reproduction toxicity. *See https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf* (last visited Aug. 20, 2023).

[272] https://www.ewg.org/skindeep/ingredients/702409-CI_42090_FDC_BLUE_NO_1_OR_DC_BLUE_NO_4_ALUMINUM_LAKE/.

189.    Maybelline Lip Blush also contains the following ingredients that are listed on Target's banned ingredient list for Target's beauty and personal care products[273]:  Silica and Mica.

190.    Some of the ingredients in the Maybelline Lip Blush (including all of the chemicals identified in paragraph 188 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Many of the ingredients in the Maybelline Lip Blush, including those identified in paragraph 188 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, and toxicity to humans and the environment.

191.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading to consumers and a form of greenwashing by Target related to the Maybelline Lip Blush.

---

[273] *See supra* n. 120 & 121.

192.    **Maybelline Green Edition Mega Mouse Mascara ("Maybelline Green Mascara"):**



Ingredients: G684946 1 – Ingredients: Aqua / Water / Eau, Behenyl Behenate, Glyceryl Stearate, Cetearyl Alcohol, Propanediol, Pullulan, Stearic Acid, Glycerin, Alcohol Denat., Palmitic Acid, **Sodium Hydroxide**, Sodium Dehydroacetate, Caprylyl Glycol, Myristic Acid, Cocos Nucifera Oil / Coconut Oil, Butyrospermum Parkii Butter / Shea Butter, Citric Acid [+/- May Contain: **Ci 77491, Ci 77492, Ci 77499 / Iron Oxides**].

---



276

193.    The Maybelline Green Mascara contains the following unclean or harmful ingredients: **Sodium Hydroxide** (classified as an expected toxin or harmful by Environment Canada Domestic Substance List as related to organ system toxicity)[277] and **Iron Oxides** (classified by the National Library of Medicine HazMap as persistent, bioaccumulative in wildlife and humans; also possess a strong affinity to PFAS compounds)[278], [279].

---

[276] https://www.ewg.org/skindeep/products/984167-maybelline-new-york-green-edition-mega-mousse-mascara-brownish-black-003/.

[277] https://www.ewg.org/skindeep/ingredients/706075-SODIUM_HYDROXIDE/.

[278] EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/706410-CI_77499/, (Mar. 21, 2023).

[279] The Challenges of PFAS Remediation, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5954436/#:~:text=Iron%20oxide%20minerals%20have%20been,but%20more%20research%20is%20needed (last visited Aug. 20, 2023).

194.    Some of the ingredients in the Maybelline Green Mascara (including all of the chemicals identified in paragraph 193 of this Complaint) can be harmful to consumers and should not be included in a product marked by Target as "clean."  Ingredients in the Maybelline Green Mascara, including those identified in paragraph 193 of this Complaint, have harmful effects similar to or more harmful than the Target Clean Banned Beauty Ingredients, including known carcinogens, links to Fluorine and PFAS, and toxicity to humans and the environment.

195.    Relying on a narrow subset of ingredients to make a "clean" claim and ignoring other harmful or potentially harmful ingredients is misleading to consumers and a form of greenwashing by Target related to the Maybelline Green Mascara.

196.    By labeling each of the Identified Products as "clean" and free from "unwanted" ingredients Target is misleading consumers as to the "clean"-ness of the Target Clean Identified Products and greenwashing Target consumers.

## CLASS ALLEGATIONS

197.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similar situated, as representatives of the following Nationwide Class and, in the alternative, State Subclasses:

**Nationwide Class:**

> All citizens of the United States who purchased one of the Target Clean Identified Products from Target within the United States.

**Alabama Subclass**

> All citizens of Alabama who purchased one of the Target Clean Identified Products from Target.

**Arizona Subclass**

> All citizens of Arizona who purchased one of the Target Clean Identified Products from Target.

**California Subclass**

> All citizens of California who purchased one of the Target Clean Identified Products from Target.

**Colorado Subclass**

> All citizens of Colorado who purchased one of the Target Clean Identified Products from Target.

**Florida Subclass**

> All citizens of Florida who purchased one of the Target Clean Identified Products from Target.

**Illinois Subclass**

> All citizens of Illinois who purchased one of the Target Clean Identified Products from Target.

**Indiana Subclass**

> All citizens of Indiana who purchased one of the Target Clean Identified Products from Target.

**Michigan Subclass**

> All citizens of Michigan who purchased one of the Target Clean Identified Products from Target.

**New Hampshire Subclass**

> All citizens of New Hampshire who purchased one of the Target Clean Identified Products from Target.

**New York Subclass**

> All citizens of New York who purchased one of the Target Clean Identified Products from Target.

**Oklahoma Subclass**

> All citizens of Oklahoma who purchased one of the Target Clean Identified Products from Target.

**Washington Subclass**

> All citizens of Washington who purchased one of the Target Clean Identified Products from Target in Washington.

198.   Excluded from the Class are Defendant; its officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest in, is a parent or subsidiary of, or which is otherwise controlled by Defendant; and Defendant's affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees.   Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

199.   Plaintiffs reserve the right to modify and/or amend the Class or State Subclasses definitions, including but not limited to creating additional subclasses, as necessary.

200.   **Numerosity.**   The members of the Class are so numerous that joinder of all members of the Class is impracticable.   Plaintiffs are informed and believe that the proposed Class includes millions of people.   The precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendant's records.

201.    **Commonality and Predominance.**  This action involves common questions of law and fact to the Plaintiffs and Class members, which predominate over any questions only affecting individual Class members.  These common legal and factual questions include, without limitation:

a.   Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Target Clean Identified Products;

b.   Whether Defendant's conduct of advertising and selling the Target Clean Identified Products as clean when they are not constitutes an unfair method of competition, or unfair or deceptive act or practice in violation of various consumer protection laws and the warranties related to the products;

c.   Whether Defendant used deceptive representations and omissions in connection with the sale of the Target Clean Identified Products in violation of various consumer protection laws and the warranties related to the products;

d.   Whether Defendant represented the Target Clean Identified Products have characteristics or quantities that they do not have in violation of various consumer protection laws and the warranties related to the products;

e.   Whether Defendant advertised the Target Clean Identified Products with the intent not to sell them as advertised in violation of various consumer protection laws and the warranties related to the products;

f.  Whether Defendant's labeling and advertising of the Target Clean Identified Products was untrue or misleading in violation of various consumer protection laws and the warranties related to the products;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of various consumer protection laws and the warranties related to the products;

h.  Whether Plaintiffs and the Class paid more money for the Target Clean Products, or purchased more, than they would have had Defendant not engaged in the misrepresentations and omissions described herein;

i.  Whether Defendant's conduct constitutes breach of express warranty;

j.  Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and

k.  Whether Defendant was unjustly enriched by its unlawful conduct.

202.  **Typicality.**  Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiffs on behalf of themselves and the Class. Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.  Plaintiffs' and the Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

203.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class and have retained counsel experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

204.    **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

<div align="center">

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(on behalf of the Nationwide Class)**

</div>

205.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

206.    By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' labeling and categorization, and through its marketing and advertising, as described herein. The Target Clean label constitutes an express warranty and became part of the basis of the bargain between Plaintiffs and the members of the Nationwide Class and Defendant.

207.    Defendant purports, through the Target Clean label, to create express warranties that the Identified Products are, among other things, free from unwanted and harmful chemicals, and clean.

208.    Despite Defendant's express warranties about the nature of the Products, the Identified Products do contain unwanted or harmful chemicals, and are not wholly clean. The Identified Products are, therefore, not what Defendant represented them to be.

209.    Accordingly, Defendant breached express warranties about the Identified Products and their qualities because the Products do not conform to Defendant's affirmations and promises that Products are clean and free from harmful or unwanted chemicals.

210.    As a direct and proximate result of Defendant's breach of express warrant, Plaintiffs and members of the Nationwide Class were harmed in the amount of the purchase price they paid for the Products and are entitled to those damages, and other damages to be proven at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (on behalf of the Nationwide Class)

211.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

212.    Defendant routinely engages in the labeling, advertising, and marketing of the Target Clean Products with the Target Clean label.

213.    Plaintiffs purchased the Identified Products for the ordinary purposes of the Products, and also because the Identified Products were marked by Target as "clean" products free from unwanted or harmful ingredients.

214.    By representing that the Identified Products were "clean" and free from unwanted or harmful ingredients, Defendant impliedly warranted to consumers that the Products were merchantable, such that they were of the same grade, quality, and value as other similar goods sold under the "clean" label.

215.    The Identified Products were not, however, clean and free from unwanted or harmful ingredients. Thus, the Identified Products were not of the grade, quality or value of that for which the Products were labeled, advertised, or marketed.

216.    As a direct and proximate result of Defendant's breach of this implied warranty, Plaintiffs and the Nationwide Class members were injured because they paid money for the Identified Products that would not pass without objections to the "clean"-ness in the trade or industry.

<div align="center">

**COUNT III**
**FRAUD**
**(on behalf of the Nationwide Class)**

</div>

217.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein. Plaintiffs bring this claim individually and on behalf of the Nationwide Class for intentional misrepresentation and fraud under the common law.

218.    Defendant made false and misleading "clean" and ingredient-based claims with its Target Clean label, marketing and advertising. Target also represented via its clean label program that consumers could rely upon Target to determine which beauty products were clean, and which were not---taking the research and analysis piece of the buying experience out of the equation for Target customers.

219.    The misrepresentations and omissions made by Defendant are material because Plaintiffs and the Class members rely on the representations made about their beauty products, especially products which are to be applied to sensitive areas of consumers' bodies such as directly to their skin and around their mouths and eyes. Consumers make health and wellness decisions based upon the labels, marketing, and advertisements applied to beauty products like makeup.

220.    The misrepresentations and omissions Defendant made, upon which Plaintiffs and the Class members reasonably and justifiably relied, are intended to induce and actually induce Plaintiffs and the Class members to purchase the Identified Products.

221.    Plaintiffs and the Class members did not, and could not have known that the Identified Products, despite bearing the Target Clean label, included unclean, unwanted, or harmful ingredients. Plaintiffs and the Class members would not have purchased Identified Products or would have purchased the Identified Products under different terms, had they known the true facts.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (on behalf of the Nationwide Class)

222.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

223.    Defendant represented to Plaintiffs and the Class members that Target Clean Identified Products were formulated without ingredients they may not want, specifically without chemicals "of concern" if the following categories: phthalates, propyl- & butyl-parabens, formaldehyde donors, musk, nonylphenol ethoxylates ethanolamines, glycol ethers, siloxanes, perfluorinated substances (PFAS) and more.

224.    At the time Defendant made these representations, it knew or should have known that these representations were false or otherwise made without knowledge of their truth or veracity.

225.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Target Clean Identified Products.

226.    The negligent misrepresentations and omissions Defendant made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiffs and the Class members to purchase the Target Clean Identified Products.

227.    The Plaintiffs and the Class members would not have purchased the Target Clean Beauty Products or would have purchased the Identified Products under different terms, if the true facts had been known.

228.    The negligent actions of Defendant caused harm to Plaintiffs and the Class members who are entitled to damages and other legal and equitable relief as a result.

**<u>COUNT V</u>**
**<u>UNJUST ENRICHMENT</u>**
**<u>(on behalf of the Nationwide Class)</u>**

229.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

230.    By purchasing the Identified Products, Plaintiffs and members of the Nationwide Class conferred a benefit on Defendant in the form of the purchase price of the Products.

231.    Defendant had knowledge of such benefit.

232.    Defendant appreciated the benefit because, were the consumers not to purchase the Identified Products, Defendant would not generate revenue from the sales of the Identified Products.

233.    Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

234.    Plaintiffs and the Nationwide Class members seek return of all monies Defendant acquired from its unlawful conduct.

235.    Therefore, Plaintiffs pray for relief as set forth below.

**COUNT VI**
**MINNESOTA CONSUMER FRAUD ACT,**
**Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.***
**(on behalf of the Nationwide Class)**

236.    Plaintiffs repeat and reallege the allegations against the Minnesota Defendant stated above as if fully set forth herein.

237.    Target, Plaintiffs, and members of the Nationwide Class are each a "person" as defined by Minn. Stat. § 325F.68(3).

238.    Target's goods, services, commodities, and intangibles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

239.    Target engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

240.    Target engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), including labeling the Products as "clean" and free

from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

241.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

242.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

243.    Target intended to mislead Plaintiffs and the Class and induce them to rely on its misrepresentations and omissions.

244.    Target's fraudulent, misleading, and deceptive practices affected the public interest, including the many class members affected by Target's use of the "Target Clean" label.

245.    Plaintiffs and Nationwide Class members seek all monetary and non-monetary relief allowed by law, including damages; injunctive or other equitable relief; and attorneys' fees, disbursements, and costs.

**COUNT VII**
**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**Minn. Stat. §§ 325D.43, *et seq.***
**(on behalf of the Nationwide Class)**

246.    Plaintiffs repeat and reallege the allegations against the Minnesota Defendant stated above as if fully set forth herein.

247.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Target violated Minn. Stat. § 325D.44, including the following provisions:

a.    Representing that its goods and services had characteristics, uses, and benefits that they did not have;

b.    Representing that goods and services are of a particular standard or quality when they are of another;

c.    Advertising goods and services with intent not to sell them as advertised; and

d.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

248.    Target's deceptive practices include labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Identified

Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

249.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

250.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products. Accordingly, the injuries Defendant caused outweigh any possible benefit, if any exists, from the Target Clean marketing program.

251.    Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

252.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

253.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and the Nationwide Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

254.    Target's representations and omissions were material because they were likely to deceive reasonable consumers.

255.    Target intended to mislead Plaintiffs and the Nationwide Class Members and induce them to rely on its misrepresentations and omissions.

256.    Target acted intentionally, knowingly, and maliciously to violate Minnesota's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and the Nationwide Class Members rights.

257.    Plaintiffs and the Nationwide Class members have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs and the Class paid an unwarranted premium for these Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiffs and the Class paid for Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted" or "harmful." Plaintiffs and the Class would not have purchased the Products, would have paid substantially less for the Products, or purchased the Products under different terms if they had known that the Products' advertising and labeling were deceptive.

258.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiffs and Nationwide Class members have suffered and will continue to suffer injury and damages.

259.    Plaintiffs and Nationwide Class members seek all relief allowed by law, including injunctive relief and attorneys' fees and costs.

**COUNT VIII**
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT,**
**Ala. Code §§ 8-19-1, *et seq.***
**(on behalf of the Alabama Subclass)**

260.   The Alabama Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Alabama Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

261.   Target is a "person" as defined by Ala. Code § 8-19-3(5).

262.   Plaintiff and Alabama Subclass Members are "consumers" as defined by Ala. Code § 8-19-3(2).

263.   Target advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

264.   Target engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, including:

a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

b.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

c. Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce, including acts and practices that would violate Section 5(a)(1) of the FTC Act, as interpreted by the FTC and federal courts.

265. Target's deceptive acts and practices include labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

266. Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

267. Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products. Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

268.    Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

269.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

270.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Alabama Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

271.    Target's representations and omissions were material because they were likely to deceive reasonable consumers.

272.    Target intended to mislead Plaintiff and Alabama Subclass members and induce them to rely on its misrepresentations and omissions.

273.    Target acted intentionally, knowingly, and maliciously to violate Alabama's Trade Practices Act, and recklessly disregarded Plaintiff and the Alabama Subclass members' rights. Target's representations and omissions were material because they were likely to deceive reasonable consumers about the ingredients and quality of the ingredients in the Identified Products.

274.    Target's deceptive acts and practices caused substantial injury to Plaintiff and Alabama Subclass Members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

275.    Plaintiff and the Alabama Subclass members have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Alabama Class paid an unwarranted premium for these Identified Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the Class paid for Identified Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted" or "harmful." Plaintiff and the Alabama Subclass would not have purchased the Identified Products, would have paid substantially less for the Products, or purchased the Products under different terms, if they had known that the Identified Products' advertising and labeling were deceptive.

276.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Alabama Subclass members have suffered and will continue to suffer injury and damages. Plaintiff and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including, pursuant to § 8-19-10(1) the greater of (a) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

**COUNT IX**
**VIOLATION OF ARIZONA CONSUMER FRAUD ACT,**
**A.R.S. §§ 44-1521, *et seq.***
**(on behalf the Arizona Subclass)**

277.    The Arizona Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Arizona Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

278.    Target is a "person" as defined by A.R.S. § 44-1521(6).

279.    Target advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

280.    Target engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

281.    Target's unfair and deceptive acts and practices included labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

282.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to

humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

283.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

284.    Target intended to mislead Plaintiff and Arizona Subclass members and induce them to rely on its misrepresentations and omissions.

285.    Target acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiff and Arizona Subclass Members' rights.

286.    As a direct and proximate result of Target's representations and classification of certain Products and unfair and deceptive acts and practices, Plaintiff and Arizona Subclass Members have suffered and will continue to suffer damages.

287.    Plaintiff and Arizona Subclass Members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT X
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (on behalf of the California Subclass)

288.    The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

289.    Target is a "person" as defined by Cal. Bus. & Prof. Code §17201.

290.    Target violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.

**Unlawful Prong**

291.    Target has engaged in "unlawful" business practices by violating California Civil Code Section 1750, *et seq.* and California Business and Professions Code Section 17500, *et seq.*

292.    Defendant's labeling, advertising, and marketing of the Products, as alleged in herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

**Fraudulent Prong**

293.    Defendant's labeling, marketing, and advertising of the Products as "clean" or free from "harmful" or "unwanted" ingredients, when they contain ingredients that are

harmful to humans, animals, and/or the environments is likely to deceive consumers.

294.    Defendant's labeling, marketing, and advertising of the Products is false, misleading, deceptive, and unreasonable. Defendant also had reasonably available alternatives, such as not classifying the Products as "clean."

**Unfair Prong**

295.    Defendant's action of labeling the Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair because consumers do not receive products commensurate with the consumers' reasonable expectations.

296.    Defendant's action of labeling the Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers is unfair because consumers end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected to receive.

297.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

298.    Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct.

299.    There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Defendant could have refrained from labeling the Identified Products as "clean," as the majority of the Products' own manufacturers do not apply a "clean" or otherwise green label to the Products.

300.    All of the conduct alleged herein continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions every day.

301.    Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the California Subclass paid for Identified Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted."  Plaintiff and the Class would not have purchased the Identified Products or would have paid substantially less for the Products or purchased the Products under different terms if they had known that the Products' advertising and labeling were deceptive.

302.    Target's representations and omissions were material because they were likely to deceive reasonable consumers about the nature and quality of the Products.

303.    As a direct and proximate result of Target's unlawful, and fraudulent acts and practices, which are also unfair to consumers, Plaintiff and California Subclass members were injured and suffered damages.

304. Target acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and California Subclass Members' rights.

305. Plaintiff and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Target's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT XI
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,
### Cal. Civ. Code §§ 1750, *et seq.*
### (on behalf of the California Subclass)

306. The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

307. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

308. Target is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

309. Plaintiff and the California Subclass members are "consumers" as defined by California Civil Code §§ 1761(d) and 1770.

310. The Products are "goods," as defined by the CLAR in California Civil Code § 1761(a).

311. Plaintiff and the California Subclass members' purchase of the Identified Products are "transactions," as defined by the CLRA in California Civil Code § 1761(e).

312. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

313. Target's acts and practices were intended to and did result in the sales of products and services to Plaintiff and the California Subclass Members in violation of Civil Code § 1770, including:

a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade when they were not;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

314. Target's representations and omissions were material because they were likely to deceive reasonable consumers. Indeed, Defendant violated Section 1770(a)(5) by

representing the Products have "characteristics,… uses [or] benefits … which [they] do not have" in that the Products are falsely and generically labeled and advertised as being, among other things, free from harmful chemicals and "clean".  Defendant knew that consumers will often pay more for products that are clean or have these kinds of attributes and have unfairly profited from their false and misleading claims.

315.   Similarly, Defendant violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade … if they are of another" by falsely and deceptively labeling and advertising the Products as, among other things, free from harmful chemicals and "clean".

316.   In addition, Defendant violated Section 1770(1)(9) by advertising the Products with the intent not to sell them as advertised" in that the Products are falsely labeled and advertised as, among other things, free from harmful chemicals and "clean".

317.   Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and did deceive consumers, and Defendant knew or should have known that its representations and omission were untrue or misleading.

318.   Plaintiff and the California Subclass members could not have reasonably avoided such injury.  Plaintiff and the California Subclass members were unaware of the existence of the facts Defendant suppressed and failed to disclose (or overstated); and Plaintiff and the California Subclass members would not have purchased the Identified Products and/or would have purchased the Products on different terms had they known the truth.

319.    As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiff and California Subclass Members have suffered and will continue to suffer injury and damages.

320.    Given that Defendant's conduct violated Section 1770(a), Plaintiff and the members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes but is not limited to the purchase price of the Products.

321.    Moreover, Defendant's conduct was malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of Identified Products, at rate higher than the Products are sold by competitors, like Walmart.

322.    On June 6, 2023, pursuant to California Civil Code Section 1782(a), Plaintiff, individually and on behalf of those similarly situated, notified Defendant of the alleged violations of the CLRA.  As such, Plaintiff is seeking compensatory, monetary, and damages, in addition to equitable and injunctive relief.

323.    Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

324.    Plaintiff further requests this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code Section 1780(a)(2).

**COUNT XII**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONAL CODE**
**Cal. Civ. Code §§ 17500, *et seq.***
**(on behalf of the California Subclass)**

325.    The California Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

326.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising[.]"

327.    Defendant violated § 17500 when it represented, through its false and misleading advertising and other express representations, that the Target Clean Beauty Products possessed clean characteristics and value that they did not actually have.

328.    Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Identified Products. Defendant's uniform, material representations and omissions regarding the Products were likely to deceive and did deceive consumers.  Defendant. knew or should have known that its uniform representations, as alleged herein, were untrue or misleading. Plaintiff and the California Subclass purchased the Target Clean Identified Products in reliance on the representations made by Defendant, as alleged herein.

329.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Identified Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business

enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

330.    The above acts of Defendant, in disseminating materially misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

331.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

332.    Defendant continues to engage in the unlawful, unfair, and deceptive practices in violation of § 17500.

333.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an order of this Court enjoying such future wrongful conduct on the part of Defendant and requiring Defendant to disclose the true nature of its misrepresentations.

### COUNT XIII
### VIOLATION OF COLORADO CONSUMER PROTECTION ACT,
### Colo. Rev. Stat. §§ 6-1-101, *et seq.*
### (on behalf of the Colorado Subclass)

334.    The Colorado Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Colorado Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

335.    Target is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

336.    Target engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

337.    Plaintiff and Colorado Subclass Members, as well as the general public, are actual or potential consumers of the products and services offered by Target or successors in interest to actual consumers.

338.    Target engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

339.    Defendant's action of labeling the Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

340.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

341.    Target's representations and omissions were material because they were likely to deceive reasonable consumers.

342.    Target intended to mislead Plaintiff and Colorado Subclass Members and induce them to rely on its misrepresentations and omissions.

343.    Target acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff and Subclass Members' rights.

344.    As a direct and proximate result of Target's deceptive trade practices, Colorado Subclass Members suffered injuries and damages.

345.    Target's deceptive trade practices significantly impact the public, because many members of the public are actual or potential consumers of Target's products and Target's "Clean" representations impacted millions of Americans, which include members of the Colorado Subclass.

346.    Plaintiff and Colorado Subclass Members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT XIV**
**VIOLATION OF FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**("FDUTPA"),**
**Fla. Stat. §§ 501.201, *et seq.***
**(on behalf of Florida Subclass)**

347.    The Florida Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

348.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq. ("FDUTPA") protects "the consuming public… from those who engage in unfair methods or competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

349.    Plaintiff and Florida Subclass Members are "consumers" as defined by Fla. Stat. § 501.203.

350.    Defendant at all relevant times was engaged in trade or commerce as defined by Fla. Stat. §501.203. Target advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

351.    Pursuant to the FDUTPA declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

352.    Defendant engaged in unfair and deceptive acts, in violation of the FDUTPA, as described herein by, *inter alia*, marketing, advertising, and representing the Products were free from unwanted or harmful chemicals and clean.

353.    At all times relevant to this action, Defendant was aware that the Identified Products included some harmful or unwanted chemicals that consumers would be concerned about, but still stamped the Identified Products with the Target Clean label, which created confusion to consumers.

354.    Target's representations and omissions were material because they were likely to deceive reasonable consumers. In fact, Defendant's representations and omissions did deceive consumers. These practices offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

355.    As a direct and proximate result of Target's unconscionable, unfair, and deceptive acts and practices, Plaintiff and Florida Subclass Members have suffered and will continue to suffer injury. Plaintiff and Florida Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT XV
## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### 815 Ill. Comp. Stat. §§ 505, *et seq.*
### (on behalf of the Illinois Subclass)

356.    The Illinois Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

357.    Target is a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

358.    Plaintiff and Illinois Subclass Members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

359.    Target's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

360.    Target's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include representing that the Identified Products had the sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities, that the Identified Products do not have and omitting, suppressing, or concealing the material fact that the Identified Products contain some ingredients that are widely recognized as "unwanted" or otherwise "harmful" and even some ingredients which Defendant expressly represented were not in any Target Clean Beauty Products.

361.    Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Identified Products.  Defendant's uniform, material representations and omissions regarding the Products were likely to deceive and did deceive consumers.  Defendant knew or should have known that its uniform representations, as alleged herein, were untrue or misleading.  Plaintiff and the Illinois Subclass purchased the Identified Products in reliance on the representations made by Defendant, as alleged herein.

362.    Plaintiff and members of the Illinois Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Identified Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business

enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

363.    The above acts of Defendant, in disseminating materially misleading and deceptive representations and statements throughout Illinois to consumers, including Plaintiff and members of the Illinois Subclass, were and are likely to deceive reasonable consumers in violation of § 505.

364.    Defendant intended to mislead Plaintiff and Illinois Subclass Members and induce them to rely on its misrepresentations and omissions.

365.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of § 505.

366.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

367.    Defendant acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff and Illinois Subclass Members' rights.

368.    Defendant continues to engage in the unlawful, unfair, and deceptive practices in violation of § 505.

369.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 505, Plaintiff and members of the Illinois Subclass are entitled to an order of this Court

enjoining such future wrongful conduct on the part of Defendant and requiring Defendant to disclose the true nature of its misrepresentations.

370.    Plaintiff and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, damages, injunctive relief, and reasonable attorneys' fees and costs.

<div align="center">

**COUNT XVI**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**815 Ill. Comp. Stat. §§ 510/2, *et seq.***
**(on behalf of the Illinois Subclass)**

</div>

371.    The Illinois Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

372.    Target is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

373.    Target engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

a.    Representing that goods or services have characteristics that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c.    Advertising goods or services with intent not to sell them as advertised; and

d.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

374.    Defendant's action of labeling the Target Clean Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair because consumers do not receive products commensurate with the consumers' reasonable expectations.

375.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers is unfair because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected to receive.

376.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

377.    Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

378.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

379.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

380.    As a direct and proximate result of Target's unfair, unlawful, and deceptive trade practices, Plaintiff and Illinois Subclass members have suffered and will continue to suffer injury and damages.

381.    Plaintiff and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

<div align="center">

**COUNT XVII**
**VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT,**
**Ind. Code §§ 24-5-0.5-1, *et seq.***
**(on behalf of the Indiana Subclass)**

</div>

382.    The Indiana Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Indiana Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

383.    Target is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

384.    Target is a "supplier" as defined by § 24-5-0.5-2(a)(1), because it regularly engages in or solicits "consumer transactions," within the meaning of § 24-5-0.5-2(a)(3)(A).

385.    Target engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

<div align="center">146</div>

386.   Target's representations and omissions include both implicit and explicit representations including representing the Identified Products as free from unwanted or harmful ingredients and "clean," and omitting that the Identified Products contain certain chemicals that may be harmful to human health, animals, or the environment.

387.   Target's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

388.   The injury to consumers from Target's conduct was and is substantial because it was non-trivial and non-speculative and involved a monetary injury.

389.   Consumers could not have reasonably avoided injury because Target's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making.  By withholding important information from consumers about the standards of the Identified Products, Target created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

390.   Target's acts and practices were "abusive" for numerous reasons, including:

    a. Because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction.

    b. Because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction related to the Products.

c. Because Target took unreasonable advantage of consumers' reasonable reliance that it was acting in their interests to identify and market "green" products. Consumers' reliance was reasonable for the reasons discussed below.

391. Target also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

a. Misrepresenting that the subject of a consumer transaction has performance, characteristics, or benefits it does not have which the supplier knows or should reasonably know it does not have;

b. Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not; and

c. Target intended to mislead Plaintiff and Indiana Subclass Members and induce them to rely on its misrepresentations and omissions.

392. Target's representations and omissions were material because they were likely to deceive reasonable consumers.

393. Target had a duty to disclose the above-described facts due to the circumstances of this case and the generally accepted professional standards. This duty arose due to the representations and relationship between Target and Plaintiff and the Indiana Subclass as described herein and the unilateral actions Target took to identify and market certain Products as Green

148

394.   Target acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiff and Indiana Subclass Members' rights. Target's actions were not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

395.   Despite receiving notice, Target has not cured its unfair, abusive, and deceptive acts and practices, or its violations of Indiana Deceptive Consumer Sales Act were incurable.

396.   Target's conduct includes incurable deceptive acts that Target engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

397.   As a direct and proximate result of Target's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff and Indiana Subclass Members have suffered and will continue to suffer injury and damages.

398.   Target's violations present a continuing risk to Plaintiff and Indiana Subclass Members as well as to the general public.

399.   Plaintiff and Indiana Subclass Members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and damages.

**COUNT XVIII**
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT,**
**Mich. Comp. Laws Ann. §§ 445.903, *et seq.***
**(on behalf of the Michigan Subclass)**

400.    The Michigan Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Michigan Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

401.    Target and Michigan Subclass Members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

402.    Target advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

403.    Target engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

      a.    Representing that its goods and services have characteristics, uses, and benefits that they do not have;

      b.    Representing that its goods and services are of a particular standard or quality if they are of another;

      c.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

    d.   Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

    e.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter.

404.   Target's unfair, unconscionable, and deceptive practices include representing the Identified Products as free from unwanted or harmful ingredients and "clean" while it knew they were not and omitting that the Identified Products contain certain chemicals that may be harmful to human health, animals, or the environment.

405.   Target's representations and omissions were material because they were likely to deceive reasonable consumers.

406.   Target intended to mislead Plaintiff and Michigan Subclass Members and induce them to rely on its misrepresentations and omissions.

407.   Target acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff and Michigan Subclass Members' rights.

408.   As a direct and proximate result of Target's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff and Indiana Subclass Members have suffered and will continue to suffer injury and damages.

409.   Target's violations present a continuing risk to Plaintiff and Indiana Subclass Members as well as to the general public.

410.    Plaintiff and Michigan Subclass Members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

### COUNT XIX
### VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT,
### N.H.R.S.A. §§ 358-A, *et seq.*
### (on behalf of the New Hampshire Subclass)

411.    The New Hampshire Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New Hampshire Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

412.    Target is a "person" under the New Hampshire Consumer Protection.

413.    Target advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H.R.S.A. § 358-A:1.

414.    Target engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H.R.S.A. § 358-A:2, including:

        a.   Representing that its goods or services have approval, characteristics, uses, or benefits that they do not have;

        b.   Representing that its goods or services are of a particular standard or quality if they are of another; and

        c.   Advertising its goods or services with intent not to sell them as advertised.

415.    Target's unfair, unconscionable, and deceptive practices include representing the Products as free from unwanted or harmful ingredients and "clean" while it knew they were not and omitting that the Identified Products contain certain chemicals that may be harmful to human health, animals, or the environment.

416.    Target misleadingly labeled and marketed the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

417.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

418.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

419.    Target's representations and omissions were material because they were likely to deceive reasonable consumers.

420.    Target acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiff and New Hampshire Subclass Members' rights.

421.    As a direct and proximate result of Target's unfair and deceptive acts and practices, Plaintiff and New Hampshire Subclass members have suffered and will continue to suffer injury and damages.

422.    Plaintiff and New Hampshire Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, damages, equitable relief (including injunctive relief), restitution, civil penalties, and attorneys' fees and costs.

<div align="center">

**COUNT XX**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW,**
**N.Y. Gen. Bus. Law §§ 349, *et seq***
**(on behalf of the New York Subclass)**

</div>

423.    The New York Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

424.    Target engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, included representing the Identified Products as free from unwanted or harmful ingredients and "clean" while it knew they were not, and omitting that the Identified Products contain certain chemicals that may be harmful to human health, animals, or the environment.

425.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some

<div align="center">

154

</div>

cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers and is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

426.    Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Products of lesser standards than what they reasonably expected and bargained to receive.

427.    Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean labeling program.

428.    Target acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiff and New York Subclass Members' rights.

429.    As a direct and proximate result of Target's deceptive and unlawful acts and practices, Plaintiff and New York Subclass Members have suffered and will continue to suffer injury and damages.

430.    Target's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the many New Yorkers.

431.    The above deceptive and unlawful practices and acts by Target caused substantial injury to Plaintiff and New York Subclass Members that they could not reasonably avoid.

432.    Plaintiff and the New York Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Identified Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the New York Subclass paid for Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted" or "harmful." Plaintiff and the New York Subclass would not have purchased the Identified Products, would have paid substantially less for the Identified Products, or purchased the Identified Products under different terms if they had known that the Identified Products' advertising and labeling were deceptive.

433.    Plaintiff and New York Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT XXI
## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT,
### Okla. Stat. Tit. 15, §§ 751, *et seq.*
### (on behalf of the Oklahoma Subclass)

434.    The Oklahoma Plaintiff(s) identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Oklahoma Subclass, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

156

435.   Target is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

436.   Target's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

437.   Target, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following:

a.   Making false or misleading representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions;

b.   Representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another;

c.   Advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised;

d.   Committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13); and

e.   Committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14).

438.   Target's unlawful practices include representing the Identified Products as free from unwanted or harmful ingredients and "clean" while it knew they were not and

omitting that the Identified Products contain certain chemicals that may be harmful to human health, animals, or the environment.

439.    Target's representations and omissions were material because they were likely to deceive reasonable consumers.

440.    Target intended to mislead Plaintiff and Oklahoma Subclass Members and induce them to rely on its misrepresentations and omissions.

441.    The above unlawful practices and acts by Target were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiff and Oklahoma Subclass members.

442.    Target acted intentionally, knowingly, and maliciously to violate Oklahoma's Consumer Protection Act, and recklessly disregarded Plaintiff and Oklahoma Subclass Members' rights. Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

443.    As a direct and proximate result of Target's unlawful practices, Plaintiff and Oklahoma Subclass Members have suffered and will continue to suffer injury and damages.

444.    Plaintiff and the Oklahoma Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Identified Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the Subclass paid for Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted" or "harmful." Plaintiff

and the Class would not have purchased the Identified Products, would have paid substantially less for the Identified Products, or purchased the Identified Products under different terms if they had known that the Products' advertising and labeling were deceptive.

445.    Plaintiff and Oklahoma Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

**COUNT XXII**
**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT,**
**Wash. Rev. Code §§ 19.86.020,** *et seq.*
**(on behalf of the Washington Subclass)**

446.    The Washington Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Washington subclass, repeats and realleges the allegations contained above as if fully set forth herein.

447.    Defendant is a "person," as defined by Wash. Rev. Code § 19.86.010(1).

448.    Defendant advertised, offered, or sold the Identified Products or services in Washington to Washington consumers and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code § 19.86.010(2).

449.    Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation Wash. Rev. Code § 19.86.010(2) including labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are

not in the Products) that are harmful to humans, animals and the environment causes injuries to consumers is unfair and deceptive because consumers do not receive products commensurate with the consumers' reasonable expectations.

450.   Defendant's action of labeling the Identified Products as "clean" and free from "unwanted" or "harmful" chemicals when they contain other ingredients (or in some cases the exact ingredients Defendant says are not in the Products) that are harmful to humans, animals, and the environment causes injuries to consumers and is unfair and deceptive because consumers end up overpaying for the Identified Products and receiving Identified Products of lesser standards than what they reasonably expected and bargained to receive.

451.   Consumers cannot avoid any of these injuries caused by Defendant's deceptive labeling and advertising of the Identified Products.  Accordingly, the injuries Defendant caused outweigh any possibly benefit, if any exists, from the Target Clean marketing program.

452.   Defendant's Target Clean label is false, misleading, and unreasonable, and constitutes unfair and deceptive conduct. Defendant knew or should have known of its unfair and deceptive conduct.

453.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

454.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to

Plaintiff and Washington Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition, if any exist.

455.    Plaintiff and the Washington Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Identified Products, or otherwise bargained for a product they did not receive. Specifically, Plaintiff and the Class paid for Identified Products that contained ingredients harmful to humans, animals, and/or the environment or were otherwise contained ingredients widely recognized as "unwanted" or "harmful." Plaintiff and the Class would not have purchased the Identified Products, would have paid substantially less for the Identified Products, or purchased the Identified Products under different terms if they had known that the Identified Products' advertising and labeling were deceptive.

456.    As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Washington Subclass Members have suffered and will continue to suffer injury and damages.

457.    Plaintiff and the Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor as follows:

a. Certification the Class and Subclasses pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and an order that notice be provided to all Class Members;

b. Designation of Plaintiffs as representatives of the Class and the undersigned counsel, Zimmerman Reed LLP and the Johnson Firm, as Class Counsel;

c. An award of damages in an amount to be determined at trial or by this Court;

d. An order for injunctive relief, enjoining Defendant from engaging in the wrongful and unlawful acts described herein;

e. An award of statutory interest and penalties;

f. An award of costs and attorneys' fees; and

g. Such other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

Dated: August 29, 2023

*/s/ Brian C. Gudmundson*
Brian C. Gudmundson, MN Bar No. 336695
Rachel K. Tack, MN Bar No. 399529
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
rachel.tack@zimmreed.com

Christopher D. Jennings
Tyler B. Ewigleben
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com