# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Pearlie Boyd, Alberto Camacho, Dieisha Hodges, Monic Serrano, Sienna Guerrero-Brown, Stephanie Puckett, Genna Unley, Connie Wilson, Cami McEvers, Laurie Cahill, Harmony Deflorio, Joslyn Sanders, Marsha Solmssen, and Jessica Brodiski individually and on behalf of all others similarly situated, | No. 23-CV-02668 (KMM/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Target Corp., | |
| Defendant. | |

This is a consumer-fraud action brought against Defendant Target Corp. ("Target"), a national retailer headquartered in Minnesota, by a group of 14 named plaintiffs on behalf of a putative nationwide class. Collectively, the Court will hereafter refer to all plaintiffs, either named or unnamed potential class members, as "Plaintiffs." Plaintiffs allege that Target has deliberately misled consumers by labeling certain products in its stores as being "Target Clean," when such products are in fact "unclean." ECF 1 (Complaint ("Compl.")) ¶ 1. Before the Court are two motions: Target's Motion to Dismiss (ECF 24) and Motion to Strike (ECF 18). For the reasons that follow, both motions are **DENIED**. Although the Court acknowledges that some of Target's arguments present a close call, the Court concludes that, at this stage and in light of the detailed allegations in the Complaint, dismissal is not appropriate.

1

## I.    Background

According to Plaintiffs, Target launched a program called Target Clean in 2019. Compl. ¶ 105. Target allegedly used Target Clean labeling to designate certain beauty products[1] (hereafter referred to as the "Target Clean Beauty Products") that it sells in its stores. *See id.* ¶ 3–4. Plaintiffs maintain that Target uses the Target Clean label to "help shoppers distinguish products that Target has identified and marketed as 'clean' products." *Id.* ¶ 3. According to Plaintiffs, Target represents that the labeled products are "clean" because they are "free from 'commonly unwanted' chemicals or ingredients" and "'formulated without ingredients [consumers] may not want.'" *Id.* ¶¶ 2, 14. Plaintiffs allege that the labeling is made independently of manufacturer claims, and that at least some Target Clean products are not labeled or marked with a similar claim or description by the manufacturer. *Id.*

Plaintiffs allege that Target designates the Target Clean Beauty Products primarily through labels and in-store signage. Plaintiffs allege that Target uses a bright green hexagon within which is Target's typical "bullseye" logo and the word "clean." *Id.* ¶ 5. The Target Clean label is sometimes affixed to individual shelf labels associated with particular products (for example, alongside a price label). *See, e.g.*, *id.* ¶ 8. Target also uses the label on larger display signs that offer a short explanation of the Target Clean program including a brief explanation of Target's criteria for designating a product as being Target Clean. *Id.*

---

[1] Target is also alleged to have used Target Clean labeling in association with oral care and deodorant products. *See Compl.* at 62 n.119. Plaintiffs allege that Target applies different criteria to the labeling of non-beauty products. *Id.*

¶ 5. Target also maintains a website containing more detailed information about the Target Clean program. *Id*. at 2 n.1.

Target has identified 13 ingredients as being "banned" from Target Clean Beauty Products. *Id.* ¶ 4. These ingredients are: propylparaben and butylparaben, phthalates, formaldehyde, formaldehyde donors, nonylphenol ethoxylates, oxybenzone, sodium laureth sulfates, retinyl palmitate, hydroquinone, triclosan, triclocarban, butylated hydroxyanisole, butylated hydroxytoluene. *Id*. The Complaint includes details about the purported harmfulness of each of these ingredients to human health. Plaintiffs' general allegation is that all these ingredients have "known impacts on human health and the environment" and that this is why Target represents that Target Clean Beauty Products do not contain them. *Id*. The Court will hereafter refer to these ingredients collectively as the "banned ingredients."

According to Plaintiffs, Target designed and describes the Target Clean program as a shopping assistant for health-conscious consumers. For example, Plaintiffs allege that one Target merchandise executive characterized the labeling program as allowing customers to "easily shop for [products] that are formulated without a group of commonly unwanted chemicals they may not want included in their daily beauty routines." *Id*. ¶ 107. Another executive described the program as "tak[ing] the complications out of finding better-for-you product options." *Id*. ¶ 108. In essence, Plaintiffs allege that the Target Clean program offers a curated shopping list that "tak[es] the research and analysis piece out of the equation" and conveys to the consumer that Target has done that work for them. *Id*. ¶ 109. But, in reality, Plaintiffs allege that the Target Clean program is nothing more than a

corporate "greenwashing" scheme that uses Target's goodwill and reputation to dishonestly piggyback on a growing consumer demand for "safer, cleaner, and more natural products." *Id*. ¶ 42; *see also, e.g.*, *id.* ¶¶ 11, 13 ("Target has taken advantage of consumers' desire to find cleaner products by creating and over-using the 'Target Clean' label on products that have not actually earned the clean label . . . .").

Specifically, Plaintiffs allege several ways that the Target Clean program misleads consumers. For example, that Target claims labeled products do not contain any of the banned ingredients, but in fact some products do contain those ingredients. *Id*. ¶ 5. Plaintiffs allege that at least one product, the Physicians Formula Magic Mosaic Bronzer, contains propylparabens. *Id*. ¶ 168. In another example, Plaintiffs claim that although Target purports to maintain informational signage about Target Clean in its stores, the Target Clean label is sometimes attached to products without any accompanying explanation or "fine print." *Id*. ¶ 9. Plaintiffs allege that this practice creates a "paramount level of misrepresentation . . . . because a consumer is not likely to examine marketing labels not directly found on a product or disclaimers in fine print." *Id*. Other alleged

misrepresentations[2] are more nuanced. Perhaps the central allegation of the Complaint is that the Target Clean program is deceptive because it represents that a product that does not contain any of the banned ingredients can be perceived as "clean," or free of unwanted and harmful substances. Plaintiffs allege that this is untrue because Target Clean products contain ingredients that are equally or more harmful to humans than the banned ingredients. *Id*. ¶ 5; *see, e.g.*, *id.* ¶ 195 ("Relying on a narrow subset of ingredients to make a 'clean' claim and ignoring other harmful or potentially harmful ingredients is misleading to consumers[.]").

Plaintiffs brought their Complaint in this Court on August 29, 2023. They cite numerous causes of action, both statutory and at common law. Counts I and II involve allegations of common law breach of warranty, express and implied. *Id*. ¶¶ 205–16. Count III claims common law fraud. *Id.* ¶¶ 217–20. Count IV claims negligent misrepresentation. *Id.* ¶¶ 222–28. Count V claims unjust enrichment. *Id*. ¶¶ 229–35. Counts VI and VII allege

---

2 Plaintiffs also allege that Target represents that the Target Clean Beauty Products do not contain banned ingredients above a certain threshold, thereby implying the safety of concentrations below that threshold. Compl. ¶ 5. But Plaintiffs say that this representation is false because the threshold designated by Target for at least some of the ingredients is not, in fact, safe. *Id*. However, this allegation is not meaningfully substantiated in the Complaint nor directly addressed in Plaintiffs' opposition briefing to the pending motion. For example, Plaintiffs do not offer additional allegations or argument to support their contention that the banned ingredients are unsafe even below the threshold identified by Target, do not explain whether they believe there is a safe level for any of the banned ingredients, and do not state whether they believe any of the Target Clean beauty products actually contain the banned ingredients at concentrations below the threshold identified by Target but at levels nevertheless alleged to be harmful. To the extent that Plaintiffs intended to allege a discrete misrepresentation in Target's statement, the Court would dismiss without prejudice. If Plaintiffs do intend to pursue this "unsafe thresholds" theory of liability in this case, it will require more substantive pleading.

violations of the Minnesota Consumer Fraud Act ("MCFA") and the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), respectively. *Id*. ¶¶ 236–59. Each of the foregoing is alleged on behalf of a putative nationwide class. Counts VIII–XXII allege violations of numerous states' consumer fraud and protection statutes. *Id*. ¶¶ 260–457 (alleging violations of Alabama, Arizona, California, Colorado, Florida, Illinois, Indiana, Michigan, New Hampshire, New York, Oklahoma, and Washington consumer fraud and protection statutes). Each of these counts is brought on behalf of a putative state subclass.

Each of the named plaintiffs purchased one or more of a group of 14 "identified" Target Clean Beauty Products that Plaintiffs allege "are not actually 'clean' and do contain unwanted or harmful ingredients." *See id*. ¶ 16. Each named plaintiff is a resident of one of the 12 states for which the Complaint alleges a putative statewide class. *See id*. ¶ 35. Generally, each named plaintiff alleges that they "tr[y] to purchase clean products" and that the claims of the Target Clean program "impacted" their buying choices. *See, e.g.*, *id*. ¶ 34 (allegations of named plaintiff Jessica Brodiski). Furthermore, each named plaintiff alleges they would not have purchased the identified Target Clean beauty product or would have purchased the product "under different terms," had they known the product contained "unwanted or harmful ingredients." *Id*. The nationwide claims are brought on behalf of a putative class comprising "all citizens of the United States" who purchased an identified Target Clean Beauty Product, and the statewide class claims are brought on behalf of putative classes comprising "all citizens" of each identified state who purchased a Target Clean Beauty Product. *Id*. ¶ 197.

Rather than answer the Complaint, Target filed the two pending motions. In its motion to dismiss, Target seeks the dismissal of the entire complaint, mostly for failure to state a claim under Rule 12(b)(6). Because many of Plaintiffs' statutory consumer fraud claims share elements and pleading requirements and are essentially interchangeable at this stage in the litigation, Target makes consolidated legal arguments applicable to all of them. *See* ECF 26 (Def.'s Mem. in Supp. of Mot. to Dismiss) at 11. These arguments also apply to Plaintiffs' common law claims of fraud and negligent misrepresentation. Effectively, if the Court agrees with Target's arguments on the insufficiency of Plaintiffs' fraud pleadings, then Counts III–XXII would all be dismissed for the same or similar reasons. Target also makes claim-specific arguments for dismissal of Plaintiffs' breach of warranty and unjust enrichment claims (*id*. at 32–34), as well as legally discrete arguments for dismissal of Plaintiffs' Alabama, Arizona, California, and Washington statutory claims (*id*. at 28–32). Separately, in its motion to strike, Target asks this Court to strike Plaintiffs' class allegations, as well as any request for injunctive relief, from the Complaint. *See generally*, ECF 20 (Def.'s Mem. in Supp. of Mot. to Strike).

## II.     Legal Standards

### A.     Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of detailed factual allegations in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see also Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).

### B.      Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, this is an "extreme measure [such that] motions under Rule 12(f) are viewed with disfavor in the Eighth Circuit and are infrequently granted." *E.E.O.C. v. Prod. Fabricators, Inc.*, 873 F. Supp. 2d 1093, 1097 (D. Minn. 2012) (citing *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000); *see also Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) ("[S]triking a party's pleading is an extreme and disfavored measure.") (cleaned up). "[D]espite this, it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis," *Donelson*, 999 F.3d at 1092, and therefore "[j]udges enjoy liberal discretion to strike pleadings under Rule 12(f)," *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). When contemplating a motion to strike a pleading based on legal deficiency, courts have compared the legal standard to that of a motion to dismiss, in that the pleading "must be accepted as true and the Court must find that [it] is legally insufficient" to state a claim.

*Product Fabricators*, 873 F. Supp. 2d at 1097 (citing *United States v. NHC Health Care Corp.*, No. 00-3128-CV-S-4-ECF, 2000 WL 33146581, at *1 (W.D. Mo. Dec. 29, 2000)).

## III.   Discussion

### A.      Motion to Dismiss

Target makes broad thematic legal arguments that are directed to the sufficiency of all of Plaintiffs' fraud-based claims, followed by discrete arguments against specific fraud claims and Plaintiffs' other claims. The Court will address the former arguments first, before turning to Target's specific reasons for dismissing other claims in the Complaint.

#### 1.      Fraud Claims

Target argues that Plaintiff's fraud-based allegations fail under both Rule 9(b) and Rule 12(b) of the Federal Rules of Civil Procedure.

***Rule 9(b) Dismissal***: Target first seeks the dismissal of Plaintiffs' fraud-based allegations due to a purported failure to plead with specificity. ECF 26 at 12–14. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must therefore set forth "the who, what, when, where, and how" of an alleged fraudulent act. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 666 (8th Cir. 2012). "Rule 9(b) pleading requirements apply to all claims premised on fraud, including claims of false advertising, deceptive trade practices, unlawful trade practices, and consumer fraud." *Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1091–92 (D. Minn. 2018) (quotations omitted). The main purpose of Rule 9(b) is to create notice. *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (describing the purpose as to "facilitate a defendant's ability to respond and to

9

prepare a defense to charges of fraud"). Therefore, the level of particularity required varies along with the facts of each case. *BJC Health Sys.*, 478 F.3d at 917. There is no dispute that the heightened pleading requirements apply to almost all of the claims in the Complaint.

Here, Target asserts a total pleading failure under Rule 9(b), but offers substantive argument around Plaintiffs' purported failure to allege the "what," "when," and "how" prongs. *See* ECF 26 at 12–14. Given the lack of development of arguments around the "who" and "where" prongs, the Court assumes these have been properly pleaded. As for "what" and "how," Target's arguments are somewhat blended, and to a great degree are subsumed by Target's more fulsome Rule 12 challenge that the Complaint fails to state an actionable misrepresentation that can sustain a consumer fraud case, so they are explored below. The Court finds that Plaintiffs have pleaded actionable misrepresentations, and similarly concludes that Target is adequately on notice about "what" Plaintiffs believe is fraudulent about the Target Clean program and "how" Plaintiffs believe the program's representations are fraudulent or misleading to consumers.

Whether Plaintiffs have adequately pleaded a "when" requires separate analysis. Target argues they have not, noting that "Plaintiffs fail to even allege the dates of their purchases." *Id* at 13. This argument has some merit. For example, in the portion of the Complaint describing some of the underlying purchases that led to this litigation, Plaintiffs allege only a month and year for certain individuals, while providing no information at all for others. *See Compl.* ¶¶ 21–34. A summary chart of the named plaintiffs and each of their alleged purchases includes information about what was

10

purchased and where, but no information at all about when the items were purchased. *Id*. ¶ 35. Simply put, there is some vagueness around the dates of the alleged purchases that underpin this litigation.

But the Court will not dismiss the fraud claims at this stage because of a lack of specificity in purchase dates. First, Target cites no authority for the proposition that the "when" prong is unsatisfied in a consumer fraud case by allegations of purchases that include only a month and year without a specific date. While the Court can certainly envision a scenario in which specific-date allegations are key to providing notice, this is not such a case. For one, the Court is unpersuaded that individual purchase dates are the relevant "when" in this matter, at all. Plaintiffs do not allege discrete acts of deceit or fraud where Target's purported misrepresentations were unique to individual purchases on different dates. Instead, Plaintiffs allege that Target Clean has induced sales through misleading claims throughout the program's entire existence. The fact that this allegation is broad does not mean that it fails to provide notice to Target as to "when" the fraud allegedly occurred. Moreover, as alleged in the Complaint, the period in which Target made its misrepresentations is not particularly long. According to the Complaint, the Target Clean program was launched in 2019 and continues to this day. This provides a "when" window of no more than four years at the time of the filing of the Complaint. In short, the Court concludes that the allegations in the Complaint reasonably provide notice to Target about when Plaintiffs believe the fraudulent conduct has occurred. To the extent that specific sales dates become important to one or more of Target's defense theories (*see, e.g.*, the Court's discussion of statutes of limitation defenses, *supra*) or to specific

11

factual questions, they can be ascertained through fact discovery.

**_Rule 12(b) Dismissal_**: The same fraud-based claims subject to Target's Rule 9(b) arguments are also subject to a more robust challenge under Rule 12(b)(6). In short, Target asserts that the Complaint fails to state a claim for fraud because it fails to plausibly allege that a reasonable consumer could be deceived by the Target Clean program or any of its representations. *See, e.g.*, ECF 26 at 14 ("[T]o survive a motion to dismiss, Plaintiffs must allege that Target Clean is a sufficiently specific claim that caused consumers to reasonably believe that Target Clean qualified products . . . did not contain a multitude of other unidentified chemicals. Plaintiffs cannot do so."). Plaintiffs agree that their state consumer protection law claims and common law fraud and negligent misrepresentation claims require that Target's representations would deceive a "reasonable consumer." ECF 33 at 26–27 (collecting cases applying a reasonable consumer test to different causes of action in the Complaint). Here, the Court will assume for the purposes of deciding the pending motion that all of Plaintiffs fraud-based claims involve a necessary element that Target's representations could mislead a reasonable consumer. The Court will also assume that this proof requirement interacts substantially the same with the pleading requirements for each of Plaintiffs' fraud claims. Essentially, to survive this motion to dismiss, the Court must determine whether Plaintiffs have pleaded facts from which the Court can infer that a reasonable consumer could have been misled by the Target Clean program and its representations.

To be clear, this "reasonable consumer" test is in immediate tension with the early stage of this litigation. In a variety of contexts, courts have observed that a judge's role in

assessing whether a representation or statement is misleading or deceptive implies a factual inquiry that is often inappropriate for purely legal resolution. *See, e.g.*, *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002) ("Generally, the issue of whether a public statement is misleading is a mixed question of law and fact for the jury."); *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) ("Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss.") (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (cleaned up); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020) ("How reasonable consumers actually understand defendants' . . . labels is a question of fact that cannot be resolved on the pleadings" even if it is sometimes amenable to resolution on summary judgment); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (observing that "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact"); *Richardson v. Edgewell Pers. Care, LLC*, No. 23-128, 2023 WL 7130940, at *2 (2d Cir. Oct. 30, 2023) ("What a reasonable consumer's interpretation [of an allegedly deceptive claim] might be is a matter of fact which is not appropriate for decision on a motion to dismiss.") (cleaned up); *Olson v. Major League Baseball*, 29 F.4th 59, 84 (2d Cir. 2022) ("The determination of whether certain [business] conduct is unfair or deceptive is a question of fact."); *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019) (whether a representation made in the course of debt collection is deceptive "generally is a question of fact"); *Naylor Med. Sales & Rentals, Inc. v. Invacare Continuing Care, Inc.*, 517 F. App'x 443, 454 (6th Cir. 2013) ("Whether a particular act is unfair or deceptive [to a consumer] is a question of fact[.]");

*In re Miracle Tuesday, LLC*, 695 F.3d 1339, 1343 (Fed. Cir. 2012) ("Whether a [trade]mark is primarily geographically deceptively misdescriptive [to consumers] is a question of fact."). Thus, it is the exception, and not the rule, that allegations of consumer deception are amenable to legal disposition on the pleadings alone. And here, the Court concludes that too many factual issues require development before any determination can be rendered as to whether a reasonable consumer could be deceived as alleged in the Complaint.

Take, for example, the allegation that at least one Target Clean Beauty Product literally contains an ingredient on the banned ingredients list. Aside from emphasizing the limited nature of this allegation (*see* ECF 26 at 8 ("only one product")), Target quibbles about whether the bronzer in question does or did, in fact, contain propylparabens as alleged (*id.* at 8 n.5 (maintaining that "the Physicians Mosaic Bronzer, sold today and during the relevant time period time of Plaintiffs' purchases, does not include propylparaben.")). But this is a motion to dismiss, where the Court must take all allegations in the Complaint as true and where only threadbare recitals and speculation are susceptible to dismissal. Here, Plaintiffs' multiple paragraphs of allegations about the bronzer product (Compl. ¶ 166–74) are certainly more than speculative accusations. What Target seeks to resolve through its motion is a dispute about the likelihood that the bronzer purchased by *these* Plaintiffs would have listed propylparabens on its ingredient label (*see* ECF 26 at 8 n.5 ("The physical product that [Plaintiffs] purchased should have the correct packaging and labeling listing the ingredients. Propylparaben is not listed on the Physicians Mosaic Bronzer ingredient list.")). Whether Target is correct about what the ingredient label would have shown (and whether the omission of propylparaben from that ingredient label would

necessarily disprove Plaintiffs' allegations that the product contains propylparaben) are clearly matters of factual dispute, not amenable for resolution on a motion to dismiss. Target may prevail on this argument, but they cannot do so at this stage.

Target makes more substantial arguments about the sufficiency of the pleadings of other alleged misrepresentations. For example, Target pushes back on the suggestion that consumers who encounter the Target Clean logo without the fine print would be misled, asserting that the "Target Clean icon alerts consumers to the fact that Target attaches a specific definition to its branded term" (ECF 26 at 23 n.12), and that "reasonable consumers *would* view Target's posted definitions" to better inform themselves about what the program does and does not claim (*id*. at 17). To the extent that a consumer did not understand that Target attaches or provides its own definition to the Target Clean term, Target also argues that "clean" lacks any "accepted meaning [and] is too subjective and vague and wholly dependent on an individual's interpretation, and lacks an empirical benchmark to provide any indicia of measurability to create a basis for a lawsuit . . . based on reasonable consumer confusion." *Id*. at 23.

But here, too, the Court disagrees that it can appropriately decide on the pleadings whether a reasonable consumer would be misled by the broad representation that a given product is "Target Clean." In short, both parties stake out polarized positions of the meaning of "Target Clean" that somewhat strain credulity and that would necessarily be refined through factual development. One of the clearer distillations in the Complaint of Plaintiffs' theory in this case is that "[t]o consumers, 'clean' beauty means that consumers can use a product without risking their health and the ingredients list is transparent and

only contains safe, non-toxic ingredients[.]." Compl. ¶ 12. This is unmistakably broad framing. The Complaint features other definitions that similarly create something of a moving target, for example by blending environmental concerns into allegations that otherwise predominantly focus on personal health. *See id.* ¶ 14 (alleging that the "Target Clean" label denotes to consumers products that "will not harm the environment through their ingredients, manufacture, use, or disposal and will be safe and good for humans"). But Target, for its own part, insists that Target Clean can *only* be understood as a kind of proprietary representation, embodying only its own exact terms and conditions and communicating nothing more. *See, e.g.*, ECF 26 at 16 ("Target Clean, as is evident from the name, is a Target-specific program defined by Target to qualify products it sells."). Target concedes nothing else of substance about what a consumer might reasonably expect "clean" to convey. The ensuing impasse over meaning will not be resolved in favor of Target at this stage in the litigation for several reasons.

First, Target's own case law suggests that "clean" is being used in cosmetics sales widely, and has at least some kind of consistent meaning apart from whatever proprietary meaning Target wishes to assign to it. *See Finster v. Sephora USA Inc.*, No. 6:22-cv-1187, 2024 WL 1142014, at *1–2 (N.D.N.Y. Mar. 15, 2024) (dismissing a more threadbare complaint with claims of consumer deception in a "Clean at Sephora" retail labeling scheme). Second, Target's dependence on an idealized scenario of clear explanation and disclosure about its own definition of Target Clean ignores Plaintiffs' second-order assertions about the Target Clean program—namely, that the program's definitions about itself are confusing and inconsistent. *See, e.g.*, Compl. at 62 n.119 (alleging that "[p]rior to

16

June 2023, the list of banned Target Beauty and Personal Care Ingredients was 60 pages (5 pages were related to general products, 1/2 page was related to oral care, and the remaining pages were related to deodorant)," but that the "basis for the separation of the list [was] unclear"); *id.* at 62 n.120 (alleging that "between February 2023 and July 2023, Target updated and/or modified the list of banned Target Beauty and Personal Care Ingredients"). And third, Target's position requires far too much assumption about what a Target Clean consumer would have reasonably encountered or been told about this program at the time of their purchases.

This third piece gets to the heart of something unique about the allegations in the Complaint. Many of the cases cited by Target dismissing consumer fraud actions can be fairly characterized as "product cases," meaning that a plaintiff has sued the manufacturer of a product for the representations made about (and often literally on) that product. In this relatively closed universe—featuring a directly proprietary representation about a product, typically capable of being immediately verified or at least scrutinized by the consumer—it makes more sense for a court to render early legal conclusions about who the reasonable consumer is and what they have perceived. But the situation presented in this case is much murkier because this is not a typical products case. This is a case about a well-known national retailer alleged to have independently curated a selection of products and then presented those products to the consumer as being "Target Clean" through at least several variations of representations. The central allegation presented is that the Target Clean program itself is inherently deceptive, not merely any one claim about any one product. In other words, by representing Target Clean as a neutral tool to help consumers, Target is

alleged to have used an imprimatur of authority, *as a retailer*, to point health-conscious consumers toward purchasing certain products.

Allegations of this nature are simply not present in the authority Target's cites. Take, for example, the cases dealing with other relatively cursory representations on products that it analogizes to "Target Clean." In *Chin v. General Mills, Inc.*, the court dismissed allegations of deception in "100% natural"[3] product labeling because it determined that Plaintiffs had failed to adequately plead that they (or a reasonable consumer) would have believed that to be a representation that the product did not contain processed ingredients. No. 12-cv-2150 (MJD/TNL), 2013 WL 2420455, at *9 (D. Minn. June 3, 2013). In *Song v. Champion Petfoods USA, Inc.*, the court concluded that it was "implausible that a reasonable consumer would interpret [the] innocuous, two-word" claim that dog food was "biologically appropriate" as conveying that the food would contain only "fresh ingredients, [would] not contain any amount of heavy metals or BPA, and is processed in such a way as to eliminate any risk that it could be contaminated with pentobarbital." No. 18-cv-3205 (PJS/KMM), 2020 WL 7624861, at *5 (D. Minn. Dec. 22, 2020).

In total isolation, statements that a product is "100% natural," "biologically appropriate," or "clean" appear similar. But the similarity between Plaintiffs' allegations about Target Clean and the allegations in *Chin* and *Song* is superficial. As Target is quick

---

[3] Indeed, the *Chin* case can be best understood in context of the line of cases it belongs to: those dealing with the specific claim that a given product is "all natural" or "100% natural." *See id.* at *5 (collecting numerous cases involving allegations over those exact claims). The representation in this case, that a cosmetic product is "clean," has not been subjected to the same repetitive legal analysis that could support disposition on Target's arguments alone.

to point out, the representation is "Target Clean," not merely "clean." And what the representations in *Chin* and *Song* lack is the substantial factual overlay imparted by that combination. Plaintiffs' allegations about the broader Target marketing landscape for the Target Clean program, the statements of Target executives about the purpose of the program,[4] and its unique curative presentation, are what entitle their pleadings to the inference that "Target Clean" creates a more expansive representation in the eyes of the reasonable consumer than "100% natural" or "biologically appropriate." Because while all of these positive representations about products communicate to the consumer that someone would like to sell them something, only Target's representation that a product is "Target Clean" suggests that Target has done some work on their behalf.

The independent curation also effectively removes another key basis on which consumer deception cases are dismissed under Rule 12: that a reasonable consumer understands the concept of commercial puffery and knows they must verify the claims made about products. This *caveat emptor* logic does not squarely apply here. It is one thing to assume that a consumer expects a shampoo manufacturer to promote its own products by any means necessary, and therefore require that consumer, as a matter of law, to verify package labeling for abject dishonesty before claiming to have been deceived. *See Devane v. L'Oreal USA, Inc.*, No. 19 Civ. 4362 (GBD), 2020 WL 5518484, at *4–5 (S.D.N.Y. Sept. 14, 2020) (dismissing "keratin" shampoo lawsuit where "a simple reading of the

---

[4] Target insists that it is unreasonable to impart any "meaning or otherwise rely on more generalized statements from years past from news articles and press releases" (ECF 26 at 16), but it cites no authority for why this Court would simply ignore these aspects of the Complaint that put meat on the bones of Plaintiffs' allegations.

ingredients list would have made it clear that the Products do not contain keratin"). But it is another thing to assume what a consumer reasonably expects when Target positions itself *between* the manufacturer's label and the consumer, promoting certain products on its shelves over others as embodying certain standards. Here, the typical sales motivations are altered, and indeed, at this stage the Court can imagine that a consumer might reasonably assume that Target had independently made an assessment that some of its products are *cleaner* than others in a way that is meaningful to its customers. What follows from such an assumption (*e.g.*, whether a reasonable consumer would feel that Target had relieved them of the need to verify claims or whether the reasonable consumer would view Target's independent representations as being no more trustworthy than those of the shampoo maker) remains opaque to the Court. But assuming as true Plaintiffs' well-pleaded allegation that Target Clean products are *not* actually "cleaner" than others, that opacity forecloses a quick dismissal on the merits of Plaintiffs' fraud-based claims.

This brings the Court to Target's contention that the Target Clean program cannot mislead a reasonable consumer by failing to either disclose the presence of ingredients in Target Clean Beauty Products that are not "banned ingredients" but that are allegedly just as harmful for similar reasons, or by excluding such ingredients from the program. This allegation in the Complaint implies that the consumer has seen or otherwise understood at least some part of Target's representation that the Target Clean Beauty Products do not contain certain ingredients. *See* Compl. ¶ 5 (depicting in-store signage listing the banned ingredients). Plaintiffs implicitly suggest that a reasonable consumer would understand the representation as identifying banned ingredients by kind rather than with literal specificity.

20

For example, the Plaintiffs imply that a reasonable consumer would understand that propylparaben is a banned ingredient because it is a harmful endocrine disruptor, and not merely that propylparaben is a banned ingredient. Plaintiffs' allegation is that a consumer would therefore reasonably expect that Target Clean products do not contain other, unspecified harmful endocrine disruptors. Target's view about this allegation, which is central to much of the Complaint, is that the list of banned ingredients speaks for itself and cannot impart any representation other than its own, plain terms. In other words, no reasonable consumer could be misled by the representation that Target Clean Beauty Products do not contain certain specified harmful ingredients, even if Plaintiffs are correct that the products *do* contain other similarly harmful ingredients. *See, e.g.*, ECF 26 at 18 ("[I]t is not reasonable to ignore Target's definition of Target Clean, which includes a list of the Omitted Beauty Chemicals, and assume it also incorporates an unspecified list of thousands of other chemicals."). This is Target's strongest argument, and it may ultimately prevail, but it also fails on this motion to dismiss.

Again, the authority that Target relies upon is distinguishable. Target cites a number of cases in which consumers allege highly specific expectations, sometimes bordering on non-sequiturs, arising from representations about products. For example, in *In re Gen. Mills Glyphosate Litigation*, the court concluded that it was "not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products." No. 16-cv-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017). In *Stuve v. The Kraft Heinz Co.*, the court dismissed consumer fraud claims, concluding that alleged statements on a box of Kraft macaroni and

cheese that its contents had "The Taste You Love" with "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Dyes" could not mislead a reasonable consumer into believing the product was "healthy, wholesome, nutritious, and free from artificial substances, including harmful synthetic toxins." No. 21-cv-1845, 2023 WL 184235, at *2 (N.D. Ill. Jan. 12, 2023). In *Song*, as discussed above, the Court concluded that no reasonable consumer would conclude that a dogfood labeled "biologically appropriate" would contain only "fresh ingredients." 2020 WL 7624861, at *5. And in *Finster*, the Court dismissed consumer fraud allegations that "le[ft] the Court guessing" how a reasonable consumer could believe that a cosmetic marketed as being "formulated without parabens, sulfates SLS and SLES, phthalates, mineral oil, formaldehyde, and more" would "contain no synthetic or harmful ingredients whatsoever." 2024 WL 1142014, at *1–2.

Each of these cases involves a plaintiff pointing to a representation and then alleging an expectation that is facially unrelated to that representation, either by degree or entirely. Such an unrelated expectation is simpler to dismiss as unreasonable. But here, while Plaintiffs in this case certainly articulate a belief that Target Clean labeling creates a broader universe of expectations than the program's own fine print suggests, the difference between the representations and expectations alleged in the Complaint is not one of apples and oranges. Furthermore, as discussed above, Target is alleged to have made statements about the Target Clean program that arguably encourage broader expectations than Target is willing to concede can arise out of the fine print. Indeed, there is a fairly straight line between the alleged representation that Target Clean products are "formulated without a

group of commonly unwanted chemicals" (Compl. ¶ 105) or "formulated without ingredients they may not want" (*id*. ¶ 14) and Plaintiffs' assertion that a reasonable consumer broadly expects Target Clean products to "be safe and good for humans" (*id*.). Put differently, while the reasonableness of Plaintiffs' expectations remains up for strenuous debate, it is a debate that cannot be resolved through the procedural mechanism of a motion to dismiss for failure to state a claim.

Finally, the reasonableness of Plaintiffs' position about the deceptiveness of the banned-ingredient representation is buttressed by their reliance on extrinsic authority in the Complaint. *See* Compl. ¶¶ 50–53 (referencing the Federal Trade Commission's "Guides for the Use of Environmental Marketing Claims"). According to Plaintiffs, the FTC provides guidance on whether certain commercial practices are deceptive to consumers, and in its "Green Guides" states that "a truthful claim that a product, package, or service is free of, or does not contain or use, a substance may nevertheless be deceptive if: [] the product, package, or service contains or uses substances that pose the same or similar environmental risks as the substance that is not present[.]" *Id*. ¶ 52(g) (citing 16 C.F.R. § 260.9). Target dismisses Plaintiffs' reliance on the FTC guidance as "trying to link 'clean' claims for beauty products to the FTC's guidance regarding environmental sustainability claims." ECF 26 at 23–24; *see id*. at 4 (arguing that the Green Guides are about sustainability and "have nothing to do with cosmetics"). The Court agrees that the Complaint does occasionally muddy the waters by mixing concerns about the environmental and health impacts of certain ingredients, but Plaintiffs' use of the Green Guides is not one of those instances. Here, Plaintiffs point to the Green Guides to support

the contention that a consumer is reasonably deceived in an environmental marketing scenario that is very comparable to that alleged in cosmetics marketing here. Plaintiffs' citation to the Green Guides is not to evidence of Target's wrongdoing, nor is it even really evidence that a reasonable consumer *would* interpret the banned-ingredient representation in the way Plaintiffs allege. Instead, at this stage, the Plaintiffs' citation to the Green Guides supports merely the inference that a reasonable consumer could likely be deceived by tactics employed by cosmetics retailers similar to tactics that the FTC has deemed potentially deceptive in the environmental space.

*Conclusion*: The contours of this litigation will certainly narrow through the course of discovery, as theories adapt to the facts that are developed and the evidence that accrues. But in seeking to dismiss the lion's share of Plaintiff's case on the pleadings alone, Target asks too much. Given the breadth of Target's arguments, to grant its motion would amount to this Court declaring, as a matter of law, that the Target Clean program alleged in the Complaint is incapable of deceiving a reasonable consumer. Doing so would require this Court to invert the presumptions that govern at the pleading stage by resolving considerable factual ambiguity and complexity in Target's favor. This the Court cannot do. Target's motion to dismiss Plaintiffs' fraud claims under Rule 12(b)(6) is denied.

## 2.      Intent, Reliance, and Causation

Target also alleges that Plaintiffs' Complaint fails to allege both intent and reliance and causation as required by Rule 9(b) for their fraud-based claims. These arguments also amount to a Rule 12(b)(6) challenge to the sufficiency of Plaintiffs' fraud allegations, but

24

the Court will briefly address them separately as they represent discrete pleading requirements.

*Intent*: Plaintiffs' fraud claims carry an intent requirement. For example, the MCFA prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, *with the intent* that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1 (emphasis added). At the pleading stage, "intent can be alleged generally, [but] the allegations cannot be conclusory or based on speculation." *Bhatia*, 323 F. Supp. 3d at 1095. Where a plaintiff fails to articulate an "intent to induce," their fraud claims may be dismissed. *Id.*

Target argues that while Plaintiffs repeatedly allege "intentional" actions in developing and promoting the Target Clean program, they have failed to allege how Target intended to deceive consumers under the Target Clean label. ECF 26 at 25–26. Instead, Target asserts that its "actions demonstrate an intent to inform consumers about the Target Clean program" by providing information about the program in its stores, on its website, and by disclosing the program's banned ingredients. *Id.* at 25. Target also suggests that Plaintiffs have failed to allege that Target "knew customers were being misled by its labeling claims" (*id.* at 26).

The Court disagrees. Target's arguments again amount to a request to accept the facts according to Target, instead of according to the pleadings. Instead, the Court must look to the facts stated in the Complaint, which thoroughly alleges that Target conceived of the Target Clean program to tap into growing consumer demand for "clean" cosmetics

25

and health products. *See, e.g.*, Compl. ¶¶ 2, 9, 11, 13, 42, 106–07, 321. In pursuit of that demand, Plaintiffs allege that Target has intentionally made Target Clean overinclusive by "relying on a narrow subset of ingredients to make a 'clean' claim and ignoring other harmful or potentially harmful ingredients." *See, e.g.*, *Id.* ¶ 121; *see also id.* ¶¶ 5–6, 14–15, 265. Plaintiffs also make factual claims about the way the Target Clean labeling is presented (for example, by alleging that it is used in isolation and without the disclosures identified by Target) and allege that this is a deliberate effort to attach an imprimatur of authority while discouraging the likelihood that a consumer would scrutinize its claims. *Id.* ¶ 9.

Taken together, these allegations do enough to support the inference that Target intended to induce sales through the false representation that certain products on its shelves were "clean." This general intent is enough at the pleading stage. To the extent that Target means to suggest that Plaintiffs have failed to allege details such as Target's intention to craft an underinclusive banned ingredients list by omitting specific ingredients that Target knew to be harmful, judging the sufficiency of the complaint by such a standard is far too onerous on a Rule 12(b)(6) analysis and depends on facts not yet within Plaintiffs' reach. The Court cautions that proving this theory of deliberate misrepresentation will be considerably more difficult than alleging it, but that is a question for another day.

***Reliance and Causation:*** Target next argues that Plaintiffs have failed to "plead reliance because they never disclose what Target Clean advertisement each Plaintiff viewed and how it misled them." ECF 26 at 26. Plaintiffs argue that they are not required to demonstrate proof of individual reliance on the misrepresentations alleged in their

Complaint. ECF 33 at 51 (arguing that "a plaintiff alleging injury based on the purchase of a mass-market product can establish standing by pleading facts showing a defendant's violative, systemic practices regarding the product" and need not demonstrate that individual plaintiffs individually relied upon the alleged misrepresentations) (citing *John v. Whole Foods Mkt. Group, Inc.*, 858 F.3d 732, 734, 737–38 (2d Cir. 2017)).

Resolving any argument about whether the nature of Plaintiffs' allegations obviate the need to prove individual reliance will wait. "On a motion to dismiss, general allegations of reliance and damages are enough" to sustain a fraud claim. *Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 740 (D. Minn. 2016) (citing *Franklin High Yield Tax– Free Income Fund v. Cty. of Martin, Minn.*, 152 F.3d 736, 740–41 (8th Cir. 1998)). Here, Plaintiffs allege that the Target Clean logo is applied to individual products, to shelves, on the Target website, and on display signage in stores. *See, e.g.*, Compl. ¶¶ 5, 9. They allege that the "clean" claims are significant to consumers, generally, and that consumers had increased awareness of general principles underlying those claims. *See, e.g., id.* ¶¶ 9, 41– 42. Finally, each of the named plaintiffs offers general allegations that they "tr[y] to purchase clean products" and that the presence of the Target Clean label on one of the Target Clean Beauty Products "impacted [their] decision" to purchase the product. *Id*. ¶¶ 21–34. Furthermore, the named plaintiffs claim that their purchases caused them to be damaged because each one "would not have purchased the product, or would have purchased the product under different terms" had they not been deceived by the Target Clean representation. *Id*. These allegations do enough at the pleading stage to support the

inference that Plaintiffs relied upon a Target Clean representation when purchasing a Target Clean beauty product and that this reliance caused them to be harmed.

### 3. State Pleadings

Target also seeks the dismissal of several of Plaintiffs' state-law consumer fraud claims on various grounds. The Court will take these in turn.

***Washington Consumer Protection Act ("CPA") claim:*** A plaintiff must prove five elements to prevail on a private claim under Washington's CPA: "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 74 (2007). Target argues that Plaintiffs' Washington CPA claim fails because it does not plead facts regarding causation between an alleged deception and damage to one or more plaintiffs, a requirement that Target analogizes to the reliance standard. *See* ECF 26 at 29 ("Although the [Washington CPA] does not require that plaintiffs plead actual reliance, it does require causation between the alleged deceptive act and damages.").

As discussed previously, the Court is satisfied that the Complaint alleges general reliance sufficient to sustain its fraud claims at this stage in the litigation. To the extent that Target asserts a particular pleading failure around reliance, as to the Washington plaintiffs' allegations under the Washington statute, or to the extent that Target suggests the Washington statute requires more at the pleading stage, the Court disagrees. The Complaint alleges that Marsha Solmssen and Jessica Brodiski are residents of Washington who

28

purchased one or more Target Clean products and whose purchasing decision was influenced by the Target Clean program. *See* Compl. ¶¶ 33, 34 (alleging that both Washington plaintiffs' purchase decisions were "impacted" by the Target Clean label associated with the products they purchased). Like other named plaintiffs in this case, the Washington plaintiffs further allege that they would not have purchased (or would have paid less) for Target Clean products if not for the alleged misrepresentations made by the Target Clean program. Compl. ¶¶ 33, 34, 455.

Target's arguments for dismissal of the Washington CPA claims revolve around the allegation that both Ms. Solmssen and Ms. Brodiski purchased the Physicians Bronzer product containing propylparabens. In essence, Target argues that neither Ms. Solmssen or Ms. Brodiski particularly allege that they "actually read and relied upon Target's explanation that the Target Clean products lack propylparabens" and so the alleged presence of propylparabens in the bronzer product cannot, by itself, establish causation between any misrepresentation and harm. *See* ECF 26 at 29. This argument fails for at least two reasons. First, Ms. Brodiski alleges the purchase of more than the bronzer product, which means that only the allegations of Ms. Solmssen could be dismissed under Target's theory. Second, this argument prematurely requires Plaintiffs to prove the complicated relationship between their purchasing decisions, awareness of Target's alleged misrepresentations, and the alleged harm done to them. Again, an animating allegation of the Complaint is that Target curated a product list that signaled to consumers, in the broadest sense, that Target Clean-labeled products do not contain ingredients harmful to human health. The follow-on allegation is that some of the thus-labeled products do, in

fact, contain ingredients harmful to human health. This allegation certainly implicates alternative theories of reliance—in one, the plaintiffs relied upon fixed and specific understandings about the meaning of Target Clean due to studious examination of its claims, which turned out to be false; in another, the plaintiffs relied upon the Target Clean label but were induced by an appeal to consumer convenience to avoid any serious scrutiny of its claims, which turned out to be false. Plaintiffs' theories of liability may necessarily narrow or become more refined through the course of this litigation, or they be unproveable. Whether this impacts the specific claims of the Washington plaintiffs will be determined. For now, however, the allegations of Ms. Solmssen and Ms. Brodiski, assumed to be true at the pleading stage, are sufficient for the Court to infer that each relied upon an alleged misrepresentation as well as a causal link between an alleged misrepresentation and alleged harm.

*California law claims:* Plaintiffs allege the violation of three California statutes: the California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §§ 17200, et seq; the California Consumer Legal Remedies Act ("CCLA"), Cal. Civ. Code §§ 1750, et seq.; and the California False Advertising Law, Cal. Bus, & Prof. Code § 17500 ("CFAL"). *See* Compl. ¶¶ 288–333. Target's arguments for dismissing Plaintiffs' CCLA and CFAL claims reply upon the same theory for dismissal of all of Plaintiffs' fraud-based claims. *See* ECF 26 at 30 (explaining that the CCLA and CFAL claims fail because no reasonable consumer would be misled by Target Clean's claims and because the fraud claims do not comply with the requirements of Rule 9(b)). These arguments are rejected for the reasons stated previously, and the CCLA and CFAL claims may therefore proceed.

Target does offer specific arguments for dismissal of the CUCL claim, which require separate consideration. "The [C]UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 973 P.2d 527 (Cal. 1999)). The act prohibits unfair competition, defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* (quoting Cal. Bus. & Prof. Code § 17200). Thus, the act creates three prongs—unlawful, unfair, and fraudulent acts—and "[e]ach prong . . . is a separate and distinct theory of liability." *Id.* (citing *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)).

Here, Plaintiffs assert violations of all three prongs, *see* Compl. ¶¶ 291–305, and Target argues for dismissal of each. Target's argument that Plaintiffs have failed to plead a "fraudulent" act is tied to Target's broader arguments on the fraud allegations in the Complaint, which the Court has rejected. Target likewise argues that the "unlawful" prong is unmet because it relies entirely on alleged violations of the CCLA and CFAL. Because the Court has declined to dismiss those claims, the alleged violation of those acts can properly buttress Plaintiffs' CUCL claim. Finally, Target argues that the "unfair" prong fails because its allegations are entirely coextensive with the conduct alleged to violate the other two prongs. ECF 26 at 31 ("[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if

the claims under the other two prongs of the UCL do not survive.") (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017). Again, however, this argument is predicated on the belief that Plaintiffs' CUCL claim has already failed under the "unlawful" prong, which it has not. Accordingly, Plaintiffs may proceed to the proof stage on their CUCL claims, under all three prongs of the CUCL.

*Alabama and Arizona claims*: Plaintiffs assert violations of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.) and the Arizona Consumer Fraud Act (A.R.S. §§ 44-1521, et seq.). Compl. ¶¶ 260–287. Target seeks the dismissal of these claims on the specific ground that the pleadings fail to satisfy the statute of limitations imposed by each of these acts. Both the Alabama and Arizona consumer protection statutes have a one-year statute of limitation. *See, e.g.*, *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) ("[N]o action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action.") (quoting Ala. Code §§ 8-19-1, et seq.); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (under Arizona law, one-year statute of limitation for an Arizona consumer fraud claim "begins running when the defrauded party discovers or with reasonable diligence could have discovered the fraud.") (internal quotations omitted).

"[S]tatutes of limitations provide an affirmative defense that ordinarily must be specifically pleaded, [and] a complaint is subject to dismissal for failure to state a claim when the affirmative limitations defense clearly appears on the face of the complaint." *Sanders v. Dep't of Army*, 981 F.2d 990, 991 (8th Cir. 1992) (per curiam) (internal citations

and quotations omitted). Here, Target argues that because the named plaintiffs from Alabama and Arizona each allege a purchase date more than one year before the initiation of this lawsuit (*see* Compl. ¶¶ 21–22), their claims are facially barred by the statute of limitations. The Court agrees that the Complaint states purchase dates more than a year before the filing of this lawsuit, but disagrees that this fact alone bars the Alabama and Arizona plaintiffs from proceeding to discovery. Indeed, the case law makes abundantly clear that under both Alabama and Arizona law, the statute-of-limitations clock begins to run only when a consumer knows or should have known that they have been defrauded. Here, nothing in the Complaint establishes when Pearlie Boyd (Alabama) or Alberto Camacho (Arizona) knew of the alleged fraud, and neither plaintiff was obliged to plead the date they became aware of the fraud to preemptively satisfy a statute of limitations defense. *Aguilar v. Ocwen Loan Servicing*, *LLC*, 289 F. Supp. 3d 1000, 1004 (D. Minn. 2018) ("A plaintiff need not plead facts responsive to an affirmative defense before that defense is raised.") (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009). Target's arguments for dismissal on statutes of limitation grounds amount to a factual dispute over when Ms. Boyd or Mr. Camacho knew or should have known of the alleged fraud in the Target Clean program, and this will not be resolved by the Court on a motion to dismiss. *Hile v. Jimmy Johns Highway 55, Golden Valley*, 899 F. Supp. 2d 843, 847 n.6 (D. Minn. 2012) ("The statute of limitations is an affirmative defense that a *defendant* must plead and prove, . . . and hence questions regarding timeliness generally must be resolved by a motion for summary judgment rather than a motion to dismiss.") (internal citation omitted).

###### 4.        Breach of Warranty

Plaintiffs assert a common law breach of warranty claim, which the Court will assume for the purposes of deciding the pending motion arises under Minnesota law. "To establish a breach of warranty claim, a plaintiff must prove: 'the existence of a warranty, a breach, and a causal link between the breach and the alleged harm.'" *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1220 (D. Minn. 2020) (quoting *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52–53 (Minn. 1982)). Here, Target urges the Court to dismiss the breach of warranty claim for several reasons.

Initially, Target argues that the breach of warranty claim depends on the same acts and/or omissions as Plaintiffs' fraud claims, and that if the facts alleged cannot support a fraud claim they likewise cannot support a breach of warranty claim. ECF 26 at 32 (citing *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1343–46 (8th Cir. 2022) ("*Song II*")). The Court agrees with Target that Plaintiffs' breach of warranty theory depends on substantially the same allegations as their fraud claims and therefore they rise and fall together at this stage. But the Court has denied the pending motion with respect to the fraud claims, rendering moot this argument in favor of dismissing the breach of warranty claims.

Target raises additional arguments specific to the breach of warranty claim. First, Target argues that "Target Clean is not a sufficiently certain affirmation of fact that can form the basis of a warranty between Plaintiffs and Target, especially where each Product discloses its ingredients and where Target explains what Target Clean does and does not represent." *Id*. at 33. Additionally, Target argues that "Plaintiffs [cannot] allege a breach of

warranty for off-label statements that Plaintiffs do not claim to have seen." *Id*. This argument challenges both the formation of a warranty as well as its breach.

"An express warranty is created when a seller makes '[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *McGregor v. Uponor, Inc.*, No. 09-cv-1136 (ADM/JJK), 2010 WL 55985, at *8 (D. Minn. Jan. 4, 2010) (quoting Minn. Stat. § 336.2–313(1)(a)) (alterations in *McGregor*). Arguing that Plaintiffs have failed to plead the existence of a warranty, Target again relies on *Chin*, where the court concluded that a label stating that a product was "100% natural" was a "product description that does not constitute a written warranty." 2013 WL 2420455, at *5 (D. Minn. June 3, 2013) (internal quotations omitted). But as noted above, *Chin* relied on numerous cases rejecting claims that the words "100% natural" or "all natural" form an express warranty. In other words, *Chin* ruled on a specific descriptive claim that has been the subject of repeated litigation over the years. Furthermore, as discussed above, this is not a product description case. It is a case alleging that a retailer, Target, has misrepresented its *own* actions undertaken with respect to marketing others' products. Plaintiffs allege that Target has curated a selection of products under a "Target Clean" labeling program. Plaintiffs' allegations raise numerous questions about what information consumers reasonably possess about the program's own terms and definition, as well as what a consumer reasonably understands is represented by the Target Clean program, either broadly or according to its own "fine print." In short, Target is alleged to have explained the Target Clean program to consumers at various levels of detail and in various places. This creates a unique set of factual allegations that the Court cannot simply adjudicate

within a body of case law, including *Chin*, that deals with simple, affirmative statements placed by a manufacture on its own product labels. Here, the Court concludes that Plaintiffs have adequately alleged the existence of a warranty and are entitled to fact discovery to substantiate that allegation. Again, developed facts may prove to the contrary, but the allegations are adequate for now.

As for breach of that warranty, Target's argument appears to blend another factual attack about what plaintiffs actually saw (that no breach is possible for claims of the Target Clean program "that Plaintiffs do not claim to have seen" (ECF 26 at 33)) with a quasi-factual attack about how the Target Clean program should be perceived (that Target cannot be in breach of an express warranty "when it conformed to its own representations of which ingredients were and were not included in the Products" (ECF 38 at 22)). But contrary to Target's arguments, Plaintiffs do, in fact, allege that they saw the Target Clean labeling and that the Target Clean program became part of the basis of the bargain of their purchasing decisions. *See, e.g.*, Compl. ¶ 21 ("The Target Clean label on the TruBlend Foundation impacted Ms. Boyd's decision to purchase the product and she would not have purchased the product, or would have purchased the product under different terms, had she known the TruBlend Foundation contained some unwanted or harmful ingredients."). The Court likewise disagrees that the Complaint has not alleged that Target failed to conform to the representations about the ingredients that would not be found in Target Clean products. Plaintiffs do so on the Target Clean program's literal terms (e.g., in the allegations about the ingredients in the bronzer product) and they do so on more implicit terms (e.g., alleging that Target Clean products deceptively contain equally "unwanted" ingredients to those

36

ingredients identified as being "banned"). As above, Target raises serious doubts that any of the Plaintiffs were sincerely impacted by the Target Clean labeling, may believe that the plaintiffs had more (or less) information about the meaning of the program than they claim, and may dispute the allegations around both the presence and the significance of the allegedly harmful ingredients not included in the ban. But these are matters for factual development in discovery and improper for disposition on a motion to dismiss.

### 5.   Unjust Enrichment

Finally, Plaintiffs assert a common law unjust enrichment claim, which the Court will also assume for the purposes of deciding the pending motion arises under Minnesota law. To state a claim for unjust enrichment, a plaintiff must allege facts showing "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Christensen L. Off., PLLC v. Ngouambe*, No. A17-1917, 2018 WL 2293423, at *6 (Minn. App. May 21, 2018). Here, Target argues for dismissal for two reasons.

First, as with Plaintiffs' breach of warranty claim, Target argues that where an unjust enrichment claim depends on common allegations of deception that fail to support a fraud claim, the unjust enrichment claim must fail, too. ECF 26 at 34 (citing *Song II*, 27 F.4th at 1343–46). Again, the Court agrees with Target that Plaintiffs' breach of warranty theory depends on substantially the same allegations as their fraud claims, but as discussed above, the Court has denied Target's motion with respect to the underlying fraud claims. Target's second basis for dismissal of Plaintiffs' unjust enrichment claim has to do with the equitable

nature of the remedy provided by unjust enrichment and Target's assertion that equitable relief cannot be pleaded in the alternative to Plaintiffs' damages claims. *See id.* (citing *Moreno v. Wells Fargo Bank, N.A.*, No. 18-cv-2760 (PJS/DTS), 2019 WL 1438248, at *7 (D. Minn. Apr. 1, 2019) (dismissing an unjust enrichment claim that was "entirely duplicative" of a breach-of-contract claim)). However, "courts routinely decline to dismiss unjust-enrichment claims when pleaded in the alternative," *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 893 (D. Minn. 2021), and the Court will do so here. Whether this claim is unduly duplicative to other theories pleaded in the alternative can be resolved at a later stage. In the meantime, the existence of the unjust enrichment claim will not materially alter the scope of litigation, and Target may again seek its disposition at summary judgment should facts and plaintiff's theories point to that outcome.

**B.**   **Motion to Strike**

Target's motion to strike is overwhelmingly directed toward the class allegations in the Complaint. However, Target also asks the Court to strike requests for injunctive relief. The Court will analyze each request in turn.

**1.**   **Class Claims**

Plaintiffs make nationwide and state-by-state class allegations in the Complaint (*see* Compl. ¶¶ 197–204) but have not yet sought class certification. To certify a class, Plaintiffs must show that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;

38

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Eighth Circuit

> permit[s] class allegations to be stricken at the pleading stage [before certification] if it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained.

*Donelson*, 999 F.3d at 1092 (internal quotations omitted). "[U]nless it appears beyond doubt that plaintiffs cannot establish an actionable class action lawsuit, district courts regularly deny motions to strike class actions as premature." *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 758 (D. Minn. 2022) (citing *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 741–42 (S.D. Iowa 2007)) (internal quotations omitted). Here, Target asks the Court to strike plaintiff's class allegations for three reasons. The Court will analyze these in turn.

*Standing*: Target's arguments regarding standing present a challenge to the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). This raises a "facial" standing challenge, which is directed only to the pleadings and essentially applies the Rule 12(b)(6) standard. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When considering a facial attack on jurisdiction, courts presume the facts alleged in the complaint to be true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). To meet the burden to allege Article III standing, Plaintiffs must show (1) an injury in fact that (2) is

fairly traceable to the defendant's alleged conduct and (3) is likely to be redressed by a favorable court ruling. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Each named plaintiff in a putative class action must allege facts establishing the elements of his or her own standing and may not rely on the injuries of unidentified class members. *Spokeo*, 578 U.S. at 338 & n.6; *see also In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (same).

Target's first standing argument has to do with multi-product accusations contained within the Complaint, and the fact (as alleged) that no single named plaintiff has purchased each of the Target Clean products. Target maintains that since "[n]o Plaintiff purchased all of the Target Clean Identified Products[,]" then "no Plaintiff has standing to bring claims arising out of all of the Identified Products on behalf of all alleged class members." ECF 20 at 7. In response, Plaintiffs once again argue that Target has misapprehended the nature of the Complaint (and its class allegations) as a product-description case, rather than a case about a "misleading program," out of which all of the Plaintiffs' injuries commonly arise. ECF 32 at 16. Plaintiffs furthermore suggest that standing is better addressed after class certification. ECF 32 at 4.

There is case law in this district to support both parties' arguments. *Compare, e.g.*, *Chin*, 2013 WL 2320455, at *3–4 (plaintiff who purchased one product lacked standing to challenge alleged misrepresentations pertaining to another related product that plaintiff had not purchased), *and Ferrari v. Best Buy Co.*, No. 14-cv-2956 (MJD/FLN), 2015 WL 2242128, at *7 (D. Minn. May 12, 2015) ("Plaintiff lacks standing to assert claims on behalf of the class for televisions that he did not purchase or advertising that he did not see

or rely upon"), *with Gisairo*, 516 F. Supp. 3d at 886 (holding that class certification was "logically antecedent" to resolving whether a plaintiff had standing to assert class claims related to laptop models other than the one he purchased), *and Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *6 (D. Minn. Oct. 15, 2020) (concluding that the issue of whether plaintiffs may "assert any claims concerning treadmill models that they did not purchase" is not an issue of standing but instead "is better resolved at class certification"). Other courts have noted that the question of whether a named plaintiff who allegedly purchased one product within a grouping of products "can adequately represent purchasers of the other products" in that group presents a "critical inquiry [as to] whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012). Here, the Court finds that the critical inquiry required in this case will be more suitable to the "rigorous analysis" of class certification, where the Court must "probe behind the pleadings" to determine if the requirements of Rule 23 are met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982).

Target's second argument on standing deals specifically with class claims brought under the two Minnesota statutes invoked by the Complaint. According to Target, Plaintiffs may not bring class claims under the MCFA or MUDTPA because "no Plaintiff is a resident of Minnesota, and no Plaintiff purchased any Target Clean Identified Product in Minnesota." ECF 20 at 10. In support of this position, Target cites case law for the proposition that "Article III standing for state-law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state." *Id*. at 11 (quoting

*McAteer v. Target Corp.*, No. 18-cv-349 (DWF/LIB), 2018 WL 3597675, at *3 (D. Minn. July 26, 2018)). Plaintiffs, in turn, argue that both Minnesota statutes provide a cause of action for "any person" injured by a violation of either law, and that "nothing in the text of the MCFA or MUDPA supports [Target's] argument or prohibits non-residents from bringing claims against entities whose wrongful acts occurred in Minnesota." ECF 32 at 23 (quoting Minn. Stat. §§ 8.31, subd. 3a and Minn. Stat. § 325D.072). Plaintiffs also argue that Targets' position would require a premature choice-of-law analysis that is better postponed until class certification. *Id*. at 20 (citing *Chen v. Target Corp.*, No. 21-cv-1247 (DWF/DTS), 2022 WL 1597417, at *7 (D. Minn. May 19, 2022)).

Here, there is again abundant case law on both sides, and the Court will once more follow those cases that defer the resolution of state-law standing until class certification is sought. *See In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 776 (D. Minn. 2020) (denying defendant's motion to strike state-claims arising under the laws of states from which there was no representative plaintiff in the complaint because in class action cases the Court may defer standing questions as "logically antecedent" to class certification); *Hudock v. LG Elecs. U.S.A.*, Inc., No. 16-cv-1220 (JRT/FLN), 2017 WL 1157098, at *2 (D. Minn. Mar. 27, 2017) ("[T]he Court can determine during the class certification process whether Plaintiffs' can bring claims under the laws of states in which no currently-named plaintiff resides. . . .").

To be sure, nothing about the Court's deferment is an endorsement of Plaintiffs' argument that any plaintiff in this matter necessarily has Article III standing to sue under Minnesota law for purchases made outside of the state due to the language of the statute.

Instead, the Court's deferment is a practical decision and echoes *Chen* by acknowledging that the considerable geographic reach of Target, a major nationwide retailer, makes it "unlikely that any alleged liability is limited to the states in which a Plaintiff is currently named." 2022 WL 1597417, at *4; *accord In re Buspirone Pat. Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (deferring standing analysis in nationwide antitrust and unfair competition lawsuit until class certification because "[i]f certification is granted, the proposed class would contain plaintiffs who have personal standing to raise claims under the laws governing purchases in all of the fifty states, and the only relevant question about the named plaintiffs' standing to represent them will be whether the named plaintiffs meet the ordinary criteria for class standing"); *Gisairo*, 516 F. Supp. 3d at 887 (deferring standing questions, but reminding that "[w]ithout question, at least one named plaintiff must [ultimately] have standing") (citing *In re SuperValu, Inc.*, 870 F.3d at 768). This is particularly true as to whether there is likely to be a named Minnesota plaintiff in a case involving Target, which is a dominant market player in the state.

This case is in its infancy. "Plaintiffs have not had the opportunity to discover and present evidence pertinent to the commonality and typicality of the proposed class-members' claims." *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 946 (D. Minn. 2021). Indeed, Plaintiffs readily concede that the pleadings may eventually need to be restructured through amendment to resolve standing challenges posed by the nature of this lawsuit. *See* ECF 32 (maintaining that, in the alternative, Plaintiffs "can easily amend their complaint to create product-specific nationwide subclasses comprised of the Identified Product at issue"). "If standing issues remain after class certification, Defendants are free

to make a motion at that time." *In re Pork Antitrust Litig.*, 495 F. Supp. 3d at 776 (internal quotations omitted).

**Alabama Class Ban**: Target seeks to strike class allegations arising under Alabama's Deceptive Trade Practice's Act ("ADTPA") because of a limitation written into the statute by the Alabama legislature that purports to ban the formation of class actions. ECF 20 at 11–12. The relevant portion of the statute reads as follows:

> A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter.

Ala. Code § 8-19-10(f). Plaintiffs argue that the state of Alabama cannot proscribe the formation of a class action lawsuit in federal court pursuant to Rule 23 and the Rules Enabling Act. ECF 32 at 17–18.

As previously discussed, Rule 23 governs the formation of classes in federal litigation. The Rules Enabling Act states that

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
>
> (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2072. In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, the Supreme Court considered whether a New York statutory ban on the formation of certain class action lawsuits trumped Rule 23 or vice versa under the Rules Enabling Act. 559 U.S. 393 (2010). When faced with a conflict between a federal rule and a state law, the plurality opinion by Justice Scalia concluded that federal courts should first look to the rule itself to determine whether it was substantive or procedural. *Id*. at 410. A procedural rule would control over state law, regardless of its effect on any state right. *Id*. A separate concurrence by Justice Stevens urged that the nature of the federal rule alone could not end the analysis and that the federal courts must be mindful at all times of the nature of the state law in question and the effect of the application of the federal rule on that law. *Id*. at 421 ("A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."). Both Justices Scalia and Stevens agreed that the particular New York state law banning class formation in certain lawsuits was procedural, and both concluded that the operation of Rule 23 over that ban did not violate the Rules Enabling Act. *Compare id*. at 408, *with id*. at 436.

How to apply *Shady Grove*'s 4-1-4, majority-free decision has vexed the district courts ever since. To start, many courts have concluded that *Shady Grove*'s concurrence by Justice Stevens represents the narrowest concurring viewpoint and therefore the controlling opinion of the case. *See, e.g.*, *Davenport v. Charter Commc'ns, LLC*, 35 F. Supp. 3d 1040, 1050–51 (E.D. Mo. 2014) (collecting cases applying the Justice Steven's

concurrence but noting the lack of an Eighth Circuit holding). Others have concluded differently on this threshold question. *See Wittman v. CB1, Inc.*, No. CV 15-105-BLG-BMM, 2016 WL 3093427, at *5–6 (D. Mont. June 1, 2016) (collecting cases adopting the plurality opinion of Justice Scalia or otherwise declining to adopt Justice Stevens's concurrence). In the specific context of class-action bans in state-law consumer protection statutes, courts applying the *Shady Grove* concurrence have frequently concluded that such bans affect a substantive right and therefore cannot be overruled by Federal Rule 23. *See, e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (ADPTA class action ban "defines the scope" of a substantive right and therefore controls over Rule 23); *Davenport*, 35 F. Supp. 3d at 1051 (same ruling with respect to Kentucky consumer protection class action ban); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1012–13 (E.D. Mich.2014) (same ruling with respect to South Carolina class action ban). But courts that do not apply Justice Stevens's concurrence as the controlling opinion have held otherwise. *See, e.g.*, *Wittman*, 2016 WL 3093427 at *6; *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A] rule barring class actions does not prevent individuals who would otherwise be members of the class from bringing their own separate suits or joining in a preexisting lawsuit. The substantive rights of these individuals are not affected.").

Notably, the Eleventh Circuit has held that whether applying the concurrence or the plurality opinion, the outcome is the same for ADTPA's class action ban. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015). In reaching this conclusion, the *Lisk* court explicitly rejected that Alabama's statutory ban on class action

formation under the ADPTA implicated any substantive right. *Id.* at 1336 (noting that

because ADPTA allows for class actions "so long as they are brought by the [Alabama]

Attorney General or a district attorney," it was "difficult to conclude that Rule 23 abridges,

enlarges, or modifies a substantive right in Alabama, when all the statute does is prescribe

who can bring a class claim based on the very same substantive conduct."). According to

*Lisk*, the substantive rights and obligations imposed by ADPTA were more fundamental:

> [Defendant's] substantive obligation was to comply with the
> ADTPA—to make only accurate representations about its
> product. The substantive right of [plaintiff] and other buyers
> was to obtain wood that complied with Lumber One's
> representations. . . . Rule 23 alters these substantive rights and
> obligations not a whit; with or without Rule 23, the parties have
> the same substantive rights and responsibilities.

*Id.* at 1337; *accord Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 465 (6th Cir.

2014) (state pleading requirement was "procedural in nature" in part because it "did not

alter any of the elements of an age-discrimination claim under state law").

This Court will follow *Lisk*, a thorough and highly persuasive decision from the

federal appellate court most likely to consider the ADPTA. The substantive right created

by ADPTA is that of a consumer's private right of action to sue for damages arising from

deceptive trade practices. A federal court's capacity under Rule 23 to gather consumers

under a properly certified class is, in essence, a matter of organizational housekeeping, not

an enlargement of a substantive right. The State of Alabama may organize consumer

lawsuits in its own courts differently, but cannot impose those preferences on the federal

courts.[5] The motion to strike is therefore denied with respect to the Alabama consumer class claims.

**Breach of Warranty Laws**: Target next seeks to strike nationwide class allegations of breach of warranty, both express and implied. *See* ECF 20 at 12. According to Target, each claim in this case requires an individualized choice-of-law analysis (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822–23 (1985)), and that "clear differences in state breach of warranty laws are sure to preclude class certification because individual legal issues will necessarily predominate under Rule 23(b) or of due process considerations related to conflicts of laws." *Id.* at 12–13. In support of this latter proposition, Target cites *Hudock v. LG Electronics U.S.A., Inc.*, No. 16-cv-1220 (JRT/KMM), 2020 WL 1515233, at *7 (D. Minn. Mar. 30, 2020). *Id.* at 13. But reliance on this case demonstrates the flaw

---

[5] Target attempts to diminish the *Lisk* ruling in part by noting that it predates a 2016 amendment to ADTPA, in which the state legislature added language that the class action ban is a "substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter." Ala. Code § 8-19-10(f). But clearly, the nuanced analysis required under the Rules Enabling Act, as guided by *Shady Grove*, does not hinge on whether a state simply *says* that a given law does or does not implicate a substantive right. Indeed, *Lisk* acknowledged that Alabama had placed its class action ban in the substantive text of ADTPA (as opposed to the New York ban considered in *Shady Grove*, which was included in a procedural provision of state law), and nevertheless concluded that "how a state chooses to organize its statutes affects the [Rules Enabling Act] analysis not at all." 792 F.3d at 1336. This Court cannot substitute the opinion of Alabama's legislators for the requisite substantive rights analysis, and Alabama's amendment does not change the outcome. *See Jones v. Coty*, 362 F. Supp. 3d 1182, 1199 (S.D. Ala. 2018) ("Whether the Alabama Legislature chooses to label something a 'substantive right' is certainly not dispositive of, and perhaps not even relevant to, the matter of whether a substantive right actually is at stake for Rules Enabling Act purposes."); *In re Takata Airbag Prod. Liab. Litig.*, 462 F. Supp. 3d 1304, 1321 n.7 (S.D. Fla. 2020) (same).

in Target's argument. *Hudock* is a decision reached on a class certification motion, not a motion to strike. On a motion to strike, the question before the Court is not whether Target has a good argument that one or more class claims will not be certified, but whether it "appears beyond doubt" that Plaintiffs "cannot" certify a class around their claims as pleaded. *U.S. Bancorp*, 635 F. Supp. 3d at 758. That is not the case here. The Court defers consideration of the choice-of-law issues posed by Plaintiffs' breach of warranty claims until class certification is sought.

**Overbreadth:** Target makes a number of arguments that Plaintiffs' class definitions are overbroad and should therefore be stricken. The Court will take these arguments in turn.

First, Target asserts that Plaintiffs' have failed to identify "any ascertainable time period that would limit when an eligible class member purchased a Target Clean Identified Product." ECF 20 at 15. According to Target, each of the common law and statutory claims comprising Plaintiffs' nationwide class claims has, "at most, a statutory limitations period of six years," while each of the state-subclass claims proceeds under a "statutory limitation periods in the range of one year to six years." *Id*. Plaintiffs respond that statutes of limitation create an affirmative defense that a plaintiff need not plead around, and that setting that fact aside, there are numerous reasons that one or more statutes of limitation in this case may have been tolled. *See* ECF 32 at 25–27 (arguing the "Court should deny Target's attempt to impose such sweeping legal and factual determinations at this stage"). Assuming without deciding that Target has accurately represented the statute of limitations for each of Plaintiffs' statutory and common law claims, the Court finds that the Complaint

is sufficiently certain on the time period that would limit the eligible class members in this case. As discussed previously, the Complaint clearly alleges that the Target Clean program began in 2019. This case was brought in 2023. To the extent that Target views the class definition as too broad and uncertain to proceed under Rule 23, this is once again premature as no class certification has been sought. Moreover, Plaintiffs allege an eligible class of consumers that extends back, at most, four years from the filing of the Complaint. To the extent that Target views the lack of additional date specificity as potentially problematic for determining the operation of various statutes of limitation, the Court observes again that the statute of limitations is an affirmative defense that a defendant must plead and prove. Target may take discovery on Plaintiffs' claims and lodge such statute of limitations defenses as are supported by evidence at the appropriate time.

Second, Target argues that Plaintiffs' class definitions are too broad because they would include individuals who were not misled by the "Target Clean" advertising, did not rely on that advertising in any way, and did not sustain any sort of recoverable injury. Rather, a class member need only have purchased one of the 13 Target Clean Identified Products." ECF 20 at 18. Target quotes *Hudock v. LG Electronics USA* for the proposition that "fraud cases often are unsuitable for class treatment, because proof often varies among individuals concerning what representations were received, and the degree to which particular persons relied on the representations." 12 F.4th 773, 776 (8th Cir. 2021) ("*Hudock II*"). *Hudock II*, a decision rendered on appeal of a district court class certification order discussed immediately above, observes an important reality about the nature of fraud claims that may indeed bear on the contours of any certification (or failure in certification)

of a class in this case. However, it plainly does not state a bright-line rule that fraud claims are *per se* incompatible with the requirements of Rule 23. Indeed, Plaintiffs' preview a number of arguments for why individual reliance issues will not limit their ability to certify a class under Minnesota law in this litigation. *See* ECF 32 at 28–29. At this juncture, having determined that the named plaintiffs have stated individual fraud claims sufficient to survive a motion to dismiss, the Court will once more defer adjudication of the suitability of those claims to a broader class of plaintiffs if and when certification of such a class is sought.

### 2.    Injunctive Claims

Finally, the Court turns to Target's request to strike any request for injunctive relief from the Complaint. This request, which would include striking the entirety of Count VII alleging violations of MUDTPA, is due to a purported lack of allegation of any threat of ongoing or future harm. See ECF 20 at 19–21. This argument again invokes standing, which as discussed above, requires that a plaintiff show (1) an injury in fact that (2) is fairly traceable to the defendant's alleged conduct and (3) is likely to be redressed by a favorable court ruling. *Spokeo,* 578 U.S. at 338. When a plaintiff seeks injunctive relief, "the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983) (stating that the threat of future injury must be "real and immediate").

MUDTPA provides an injunctive remedy. Minn. Stat. § 325D.45; *see also Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2022 WL 486999, at *1 (D.

Minn. Feb. 17, 2022) ("The M[U]DTPA's only remedy is injunctive relief."). The statute provides this remedy only for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. Because MUDTPA provides injunctive relief only for a person likely to be damaged, it provides relief from future damage, not past damage. *Lofquist v. Whitaker Buick-Jeep-Eagle, Inc.*, C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001) (internal quotations omitted). As such, a MUDPTA claim requires a showing of likely future harm that is seemingly "indistinguishable from Article III's threat-of-future-harm requirement for injunctive relief." *Barclay*, 2022 WL 486999, at *2 (D. Minn. Feb. 17, 2022) ("In other words, under the M[U]DTPA, like Article III, a plaintiff cannot obtain an injunction without showing a likelihood of future injury."). Therefore, "to state a [MU]DTPA claim, the plaintiff must allege 'a likelihood of future harm.'" *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-869 (PAM/TNL), 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (quoting *Gardner v. First Am. Title Ins. Co.*, 296 F.Supp.2d 1011, 1020 (D. Minn. 2003)); *see also Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) ("A plaintiff asserting a claim under the M[U]DTPA must allege an irreparable injury or threat of future harm in order to withstand a motion to dismiss."); *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660,677 (D. Minn. 2021) (same).

Here, the Court will deny the motion to strike injunctive claims for three reasons. First, the Court notes that this request to entirely "strike" injunctive relief from the Complaint operates indistinguishably from a request for dismissal of claims under Rule 12(b)(6). Here, Target chose to bring exhaustive motions under both Rule 12(b) and Rule 12(f) in an attempt to kill this litigation outright. This was certainly Target's prerogative.

However, to whatever extent that Target's maximalist approach left no room in its "motion to dismiss" for this additional argument on injunctive standing, the Court is disinclined to entertain it as a request to "strike" injunctive claims. *Accord Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, No. 04-cv-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (arguments suited for a memorandum in support of summary judgment were not appropriately lodged via a separate "motion to strike").

Second, and more substantively, the Court disagrees that the Complaint fails to allege a likelihood of future harm that is sufficient for the pleading stage. Here, the Plaintiffs allege that Target's misrepresentations are ongoing and seek injunctive relief due to a continuing threat of harm. *See e.g.*, Compl. ¶¶ 14, 300, 324, 368. Admittedly, there is a tension between the allegation that a person has been deceived by an allegedly fraudulent practice and the allegation that this same person could or will be deceived by the same practice again. However, as this Court has recently explained, "the threat of future harm can be situated in an injury other than a repeat case of deception," such as where a consumer is deceived once and thereafter harmed by being unable to rely on advertising or labeling in the future, absent an injunction. *Mekhail v. N. Mem'l Health Care*, No. 23-cv-440 (KMM/TNL), 2024 WL 1332260, at *10 (D. Minn. Mar. 28, 2024) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)). Moreover, this Court noted that denying injunctive standing to a consumer who has been allegedly deceived by an ongoing business practice simply because *that consumer* is unlikely to be personally deceived again, while ignoring the obvious implication of ongoing harm to other consumers, can risk

rendering the public interest element of consumer protection law toothless. *Id*. This is especially true for a statute whose only remedy is injunctive.

Third, and finally, the Court concludes that the question of whether these Plaintiffs will ultimately be entitled to injunctive relief is premature. *See Barclay*, 2020 WL 6083704 at *5 n.2 (concluding that the argument that there is no threat of future injury once a plaintiff becomes aware of an allegedly deceptive practice is better suited for determining whether the plaintiff is "entitled to injunctive relief on the merits, not whether they have standing"). In general, the Court expects Plaintiffs to appropriately narrow their theories of liability and requests for relief in this case based on the evidence that is developed. And should discovery provide facts further supporting the argument that Plaintiffs cannot show a likelihood of future harm, nothing prevents Target from seeking summary judgment on the MDPTA claim at the appropriate time.

**I.  Order**

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1.  Defendant's Motion to Dismiss (ECF 24) is **DENIED**; and

2.  Defendant's Motion to Strike (ECF 18) is **DENIED**.

Date: September 25, 2024               *s/ Katherine M. Menendez*
                                       Katherine M. Menendez
                                       United States District Judge

54