ZIMMERMAN | REED

April 6, 2026

*Via CM / ECF*

The Honorable Magistrate Judge Dulce J. Foster
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:    Boyd, et al. v. Target Corp.
       Case No. 0:23-cv-02668-KMM-DJF

Dear Magistrate Judge Foster:

Pursuant to the Court's March 25, 2026 Order (ECF No. 147), the Parties respectfully submit this joint letter apprising the Court on the issues in dispute and the Parties' efforts to resolve those disputes.

On March 31, 2026, the following counsel participated in a meet and confer on Microsoft Teams from 11:00am Central until 12:20pm Central: Brain Gudmundson (via video); Rachel Tack (via video); Jason Earley (via video); Ben Cooper (via video); Ana Tagvoryan (via phone); Melanie Carter (via phone); Serena Gopal (via phone); and Fiona Steele (via phone).

### TARGET'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES 15-20

1. **The Initial Dispute**

Target has not supplemented its responses to Plaintiff's interrogatories that were addressed during the previous IDR conference. Plaintiff requested a date-certain for supplementation and amendment.

2. **Negotiation and Resolution**

Target agreed to supplement and amend its responses to Interrogatories 15-20 by the end of the week of April 6, 2026.

### TARGET'S AMENDED PRIVILEGE LOGS FOR WITHHELD DOCUMENTS AND REDACTED DOCUMENTS

1. **The Initial Dispute**

*Issue No. 1.* Target's initial privilege logs did not identify email subject lines, document titles, or attorneys. Plaintiff requested amended privilege logs to identify this information so that Plaintiff could assess whether privilege claim challenges were warranted.

*Issue No. 2.* Target produced a separate privilege log identifying 280 documents on which Target had made redactions for purported attorney-client privileged material. Target's redaction privilege

log contained the same deficiencies as its withheld document privilege logs, and Target is addressing those issues in part. Upon review of the 280 redacted documents, Plaintiff believed that only two of the redacted documents contained a defensible basis of privilege. Plaintiff reached this conclusion based on the content of the unredacted documents: they either contained third parties (individuals outside of Target), did not contain an attorney, were duplicates of unredacted documents already produced, or dealt with business matters unrelated to legal advice.

## 2. Negotiation and Partial Resolution

***Issue No. 1.*** Target served amended privilege logs on Friday, April 3, 2026. Plaintiff is reviewing those logs, but notes that it appears that most entries contain the requested document description information.

***Issue No. 2.*** Target's amended privilege logs do not resolve the redacted document dispute. Plaintiff informed Target prior to the meet and confer on March 31, 2026, that she had a basis to challenge nearly all the redactions on the privilege log as improper, but she was willing to narrow the dispute to a group of 105 documents that contained highly relevant information. This narrowing removed a substantial number of documents that appear to contain marginally relevant information, are duplicates of other produced documents, or are earlier-in-time emails from similar email threads that were otherwise produced.

## 3. Unresolved Dispute

**Plaintiff's Current Position:** Plaintiff identified the prevalent issue with Target's redactions on March 13, 2026. Plaintiff provided her narrowed position, that she intended to challenge 105 of the 278 improperly redacted documents, to Target on March 31, 2026. Target should reproduce the 105 redacted documents Plaintiff identified by Bates number without redactions, as there is no basis for privilege redactions.

**Target's Current Position:** Plaintiff's counsel identified by specific number the 105 redacted documents for Target's review the morning of the March 31, 2026 meet and confer. This did not leave any meaningful time for Target to investigate and be prepared to discuss at the meet and confer. Target is still reviewing the 105 documents identified and consulting with counsel on whether it will change the entries on the log and reproduce any of those documents in unredacted form. Target will be able to provide Plaintiff with its position on these documents by next Monday, April 13.

### TARGET'S RESPONSE TO PLAINTIFF'S RULE 30(B)(6) NOTICE

## 1. The Initial Dispute

***Issue No. 1.*** Since receiving the Notice of Deposition on November 7, 2025, Target declined to identify witnesses for topics 33, 34, and 58. The topics and objections are posted below in their entirety.

> 33.   Target's plans for the Target Clean program's future, including whether Target has created any written strategy plans, analyses, financial goals and objectives for the Target Clean program.

**RESPONSE:** In addition to the General Objections, Target objects to this Topic on the grounds that this Topic is overly broad, unduly burdensome, disproportionate to the needs of the case, exceeds the temporal scope of this case in seeking information from an undefined time period, is framed to cover an extremely broad range of information, and assumes the existence of activities within Target without support or definition. Target further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other applicable privilege. Furthermore, the information sought in this Topic is highly sensitive company information and irrelevant to and far attenuated from Plaintiffs' claims that they were misled by Target Clean to purchase the makeup (Covergirl TruBlend Matte Foundation, Almay Multi-Benefit Mascara, and Covergirl Clean Fresh Pressed Powder) that they allege to have purchased. Target will not designate a witness as to this Topic.

34.    Target's participation in the Retail Leadership Council and Green Chemistry Council, including the role Target plays in those groups and the guidance or standards adopted by those groups.

**RESPONSE:** In addition to the General Objections, Target objects to this Topic on the grounds that this Topic is overly broad, unduly burdensome, disproportionate to the needs of the case, exceeds the temporal scope of this case in seeking information from an undefined time period, is framed to cover an extremely broad range of information, and assumes the existence of activities within Target without support or definition. Target further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other applicable privilege. Furthermore, the information sought in this Topic is far attenuated from the Target Clean program and Plaintiffs' claims that they were misled by Target Clean to purchase the makeup (Covergirl TruBlend Matte Foundation, Almay Multi-Benefit Mascara, and Covergirl Clean Fresh Pressed Powder) that they allege to have purchased. Subject to and without waiving the foregoing objections, Target will make available a designee solely to testify regarding Target's general involvement in these organizations, if any, to the extent such information relates specifically and directly to the Target Clean program.

Target will not designate a witness to testify regarding the full scope of the organizations' activities, their internal standards, or Target's participation unrelated to Target Clean.

58.    The process and rationale behind selecting a green hexagon in marketing for the Target Clean program, including research, analysis, or investigation concerning the impact of the color green, the hexagonal shape, or the word "clean" on consumer perception, and whether the documents reflecting this rationale and process have been produced in discovery in this case.

**RESPONSE:** In addition to the General Objections, Target objects to this Topic as overly broad, unduly burdensome, compound, vague, and disproportionate to the needs of the case. The Topic improperly seeks testimony on (1) creative design rationales, (2) all research or analysis regarding color, shape, and terminology, (3) consumer-perception inquiries, and (4) the completeness of document production. Target further objects to the extent the Topic seeks privileged strategy, marketing analyses, or internal deliberations. Target also objects to the portion of the Topic asking whether documents "have been produced," which calls for legal conclusions, intrudes on work-product and discovery-related communications, and is not a proper subject of Rule 30(b)(6) testimony. Target will not designate a witness as to this Topic.

***Issue No. 2.*** For the remaining topics in the Notice, Target had identified witnesses Tim Oberle and Kate Schaust, but had not provided the witnesses' availability for the deposition. On March 17, 2026, after many attempts to obtain mutual availability for deposition scheduling, Plaintiff notified Target of her intention to conduct the 30(b)(6) deposition on April 22-23 (for Ms. Schaust) and April 29-30 (for Mr. Oberle). Plaintiff requested a response as to the suitability of those dates by March 24, 2026. Target did not respond bv that date.

***Issue No. 3.*** Target designated Tim Oberle for several topics, and is willing to produce Mr. Oberle for a single day deposition because, according to Target, the Deposition Protocol in this case limits each Rule 30(b)(6) deposition in time. Plaintiff requested Mr. Oberle be available for two days, as the Deposition Protocol contemplates each party taking more than one Rule 30(b)(6) deposition or serving multiple notices and the protocol should not act as a barrier to a reasonable request and solution to the deposition logistics.

## 2. Negotiation and Unresolved Issues

In a March 17, 2026 letter, Plaintiff requested that Target withdraw its objections to topics 33, 34, and 58 and designate a witness for those topics. Target did not respond to Plaintiff's letter. During the most recent meet and confer, Target agreed to provide Plaintiff with its final position by the end of the day on Monday, April 6, 2026. Target has since agreed to designate a witness for these topics, subject to further limitations as outlined in its email.

During the March 31 meet and confer, Target informed Plaintiff that Ms. Schaust and Mr. Oberle were not available on the dates noticed. Target further requested that Ms. Schaust, who was separately noticed for a deposition in her personal capacity, be deposed in one day. Plaintiff agreed to endeavor to complete the examination of Ms. Schaust as an individual witness and as a corporate designee in a single day. Target also requested that Mr. Oberle's deposition be limited to one day. Plaintiff is not willing to agree to that limitation, as Target had elected to designate Mr. Oberle for many of the topics noticed.

Target agreed to provide deposition availability to Plaintiff by the end of the day on Monday, April 6, 2026.

### 3. Unresolved Dispute

**Plaintiff's Current Position:** Plaintiff's request that Target withdraw its objections to the three identified topics constituted a significant concession, as there were other topics for which Target unilaterally narrowed the testimony it would provide. Target should provide deposition availability for Ms. Schaust and Mr. Oberle immediately. Mr. Oberle's deposition should continue until he has been deposed on the topics for which Target designated him, and Plaintiff has requested two days of availability.

**Target's Current Position.** Target has not "refused" to provide deposition dates for Ms. Schaust and Mr. Oberle, and Target takes issue with Plaintiff's imprecise articulation of the facts. Target will email Plaintiff's counsel deposition dates by today for these two corporate witnesses (Ms. Schaust and Mr. Oberle). As for length of time for the 30(b)(6) deposition of Mr. Oberle, the deposition protocol does not state as Plaintiff's counsel represents. The deposition protocol provides that "[e]ach deposition notice served counts as one deposition…." ECF 91 ¶ 1. The November 7, 2025 30(b)(6) Notice (the "Notice") therefore counts as "one deposition." The protocol further states that "[t]he duration of each deposition will be governed by Federal Rule of Civil Procedure 30(d)(1)." *Id.* ¶ 1. Fed. R. Civ. P. 30(d)(1) plainly provides that the time limit for a deposition is 7 hours. Therefore, Target will not agree to permitting Mr. Oberle's 30(b)(6) deposition related to the Notice to extend beyond 7 hours.

## 30(b)(1) WITNESS DEPOSITION AVAILABILITY

### 1. The Initial Dispute

Plaintiff noticed 30(b)(1) depositions for current Target employees Matthew Griffin, Fervent Igbineweka, Kate Schaust, Katherine King, and Lauren Cala. Following the deposition protocol, Plaintiff requested that Target provide the availability for these witnesses. Via letter on March 17, 2026, Plaintiff most recently identified dates-certain for the depositions of these witnesses, and requested, pursuant to the deposition protocol and the customs of this District, that Target confirm that the witnesses were available on those dates.

### 2. Negotiation and Partial Resolution

During the March 31, 2026 meet and confer, Target stated that the noticed dates were not available for the witnesses and counsel. Target also asked about the relevance and need for the depositions of Katherine King and Matthew Griffin, which counsel discussed. Target agreed to provide by Monday, April 6, 2026, witness availability and its position on whether it would provide availability for Ms. King and Mr. Griffin for 30(b)(1) depositions.

### 3. Unresolved Dispute

**Plaintiff's Current Position:** Target should provide deposition availability for Matthew Griffin, Fervent Igbineweka, Kate Schaust, Katherine King, or Lauren Cala. Target's representation regarding Plaintiff's agreement concerning Mr. Griffin is not accurate. Plaintiff intends to depose Mr. Griffin and agreed that deposition could take place after the Rule 30(b)(6) deposition, and if

determined appropriate at that time, may not require Mr. Griffin to have access to the Target Clean Dashboard or Greenfield. This was part of the parties' negotiation related to Plaintiff's Request for Inspection.

**Target's Current Position:** By today, Target will email deposition availability for the above-identified 30(b)(1) witnesses. The parties have agreed, however, to preserve the objections and need for the deposition of Matthew Griffin subject to any follow up that is needed after the 30(b)(6) deposition on the same topics for which Mr. Griffin's deposition is needed (as explained by Plaintiff).

<u>**TARGET'S RESPONSES TO PLAINTIFF'S THIRD AND FOURTH SETS OF REQUESTS FOR DOCUMENTS**</u>

### 1. The Initial Dispute

Target's response to Plaintiff's Third and Fourth Sets of Requests for Documents (comprising RFP Nos. 29-41) included several refusals to search for documents and many objections that Plaintiff considers unfounded. According to Plaintiff, Target's document production responsive to these Requests appeared to be incomplete, including specifically identified documents and regular reports that were missing from a sequence without explanation. Target informed Plaintiff that it would not conduct additional unfettered ESI searches for documents beyond the initial ESI search and collection the parties agreed to and which Target performed in the Summer of 2025. Instead, Target asked Plaintiff to identify specific deficiencies in the ESI collection and production which Target will investigate and address. Plaintiff identified specific issues with Target's production by identifying documents that refer to other documents that were not produced and identified search terms for Target to run to address the gaps in Target's productions.

### 2. Negotiation and Partial Resolution

During the meet and confer, Target provided additional information regarding how it collected information related to Target's "margin," as sought in the Requests, and this resolved some of the issues Plaintiff had with Target's productions. Target confirmed that it did not and would not conduct a new ESI pull for the vast majority of the Requests in the Third and Fourth Sets; however, it will investigate specific deficiencies in the production to date if Plaintiff identifies them. Plaintiff proposed Target run the identified search terms to find all the missing documents more quickly.

### 3. Unresolved Disputes

Target agreed to confirm by April 6, 2026, whether it will supplement its production for RFP Nos. 37, 40, and 41. Target informed Plaintiff during the meet and confer that it was standing on its objections to RFP Nos. 36 and 38. These Requests and Target's response are provided in full below.

> **REQUEST FOR PRODUCTION NO. 37:**
>
> For each Product identified in the Complaint, ECF No. 1, documents sufficient to identify any non-Target Clean products that Target has identified, classified, or categorized as comparable or competing products, and the factors Target considers when placing comparable or competing products into product groups.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

In addition to the General Objections, Target objects on the grounds that this Request is overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to discovery of admissible evidence, vague, and ambiguous. It is unclear what Plaintiffs mean by "documents sufficient to identify any non-Target Clean products that Target has identified, classified, or categorized as comparable or competing products" without additional context and clarification regarding the comparison. Additionally, Target objects to "the factors Target considers" as vague, ambiguous, and overly broad. Target further objects to this Request insofar as it is compound and contains subparts that are impermissible as a single request.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications related to in store and online customer-facing materials concerning the Target Clean Program during the Relevant Time Period. For the avoidance of doubt, this Request includes (but is not limited to) all versions of the in-store signage, "store experience marketing," "SEM," "in-store marketing," "ISM," "shelf talkers," labels, pamphlets, banners, and placards Target drafted, revised, commissioned, or reviewed, regardless of whether the materials were actually implemented. This Request also includes but is not limited to any notes or comments in Target's possession, custody, or control related to these documents or communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

In addition to the General Objections, Target objects on the grounds that this Request is overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to discovery of admissible evidence, vague, and ambiguous because it seeks all types of "Documents and Communications" related to in store and online customer-facing materials concerning the Target Clean Program, without limitation, while failing to define "customer-facing materials." Target operates thousands of stores nationwide, across many states, all of which have unique store layouts, personnel, and materials viewable by customers. Searching for *all* materials that may have been customer-facing at any of these numerous locations as well as online is not only unduly burdensome (and likely impossible), but also highly irrelevant and not proportional to the facts of this action, which concerns only four remaining Plaintiffs who allege they purchased cosmetic products at specific in-store Target locations. Target further objects to this Request insofar as it seeks documents protected by the attorney-client privilege, work product doctrine, or other applicable privileges.

Subject to and without waiving the foregoing, Target responds that an ESI protocol and search has already been conducted by mutual agreement of the parties. Accordingly, unless Plaintiffs can identify deficiencies in that search as it relates to

this RFP, no further documents will be searched for and collected. Responsive documents may be found in the ESI productions.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications related to Target's guidelines, standards, protocols, or expectations for implementing customer-facing materials concerning the Target Clean Program during the Relevant Time Period. For the avoidance of doubt, this Request includes (but is not limited to) all drafts and versions of the in-store signage, "store experience marketing," "SEM," "in-store marketing," "ISM," "shelf talkers," labels, pamphlets, banners, and placards Target drafted, revised, commissioned, or reviewed, regardless of whether the materials were actually implemented in-store. This Request also includes but is not limited to any notes or comments in Target's possession, custody, or control related to these documents or communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

In addition to the General Objections, Target objects on the grounds that this Request is overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to discovery of admissible evidence, vague, and ambiguous because it seeks all types of documents and communications "related to Target's guidelines, standards, protocols, or expectations for implementing customer-facing materials," without limitation, while failing to define "customer-facing materials." Target operates thousands of stores nationwide, across many states, all of which have unique store layouts, personnel, and materials prepare which may or may not ultimately be viewed by customers. Searching for all documents and communications relating to all potential implementation of any materials that would be customer-facing at any of these numerous locations as well as online is not only unduly burdensome (and likely impossible), but also highly irrelevant and not proportional to the facts of this action, which concerns only four remaining Plaintiffs who allege they purchased products at specific in-store Target locations. Target further objects to this Request insofar as it seeks documents protected by the attorney-client privilege, work product doctrine, or other applicable privileges. Additionally, Target objects to this Request insofar as it is compound and contains subparts that are impermissible as a single request.

Subject to and without waiving the foregoing, Target responds that an ESI protocol and search has already been conducted by mutual agreement of the parties. Accordingly, unless Plaintiffs can identify deficiencies in that search as it relates to this RFP, no further documents will be searched for and collected. Responsive documents may be found in the ESI productions.

During the meet and confer, Plaintiff explained that certain keywords could provide an easy way to identify relevant correspondence and documents (for example, the quoted terms in RFPs 40 and 41) and that certain Target employees identified in Target's earlier productions might be sources for these documents, whether they are added as formal "custodians" or not.

Target responded that it would confirm by April 6, 2026, whether it would agree to supplement RFP 37. In response to Target's request for a specific document that demonstrates the deficiency of Target's production in response to RFPs 40 and 41, Plaintiff identified an email document, but reiterated her position that this is demonstrative and not exhaustive of the deficient production.

**REQUEST FOR PRODUCTION NO. 36:**

For each Product identified in the Complaint, ECF No. 1, documents sufficient to show factors that materially impacted Target's profit margins for the Products during the Relevant Time Period, including discounts, rebates, returns, supply chain disruptions, pricing changes, or market conditions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

In addition to the General Objections, Target objects on the grounds that this Request is overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to discovery of admissible evidence, vague, and ambiguous because it seeks "documents sufficient to show factors that materially impacted Target's profit margins" without defining either "factors" or "materially impacted." Further, this Request is not limited in geographic scope or store location and purports to require Target to produce documents that show *all* factors, without distinction, explanation, or limitation, that impacted Target's profit margins for any of numerous separate products (with different manufacturers and circumstances) across thousands of stores nationwide for a period of multiple years, including years during the Covid pandemic. It would be impossible for Target to produce documents sufficient to show, for example, all market conditions across thousands of stores and multiple years that impacted a product's profit margins.

Subject to and without waiving the foregoing General and Specific Objections, Target will produce non-privileged documents showing discounts, rebates, and returns of the Products that are in Target's possession, custody, or control, to the extent they exist and can be located by a reasonable search.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to identify, explain, and describe the categories of information You collect from Your customers from an in-store and online purchase and the period of time after the purchase that You retain that information, including information related to the purchase, the customer, including biometric data, payment method, purchase history, location of the purchase, cost of the items purchased, proof of purchase, or other customer or purchase related information.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

In addition to the General Objections, Target objects on the grounds that this Request is overly broad, unduly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to discovery of admissible evidence, vague, and ambiguous. In essence, this Request purports to seek documents sufficient to

identify, explain, and describe *all information* that Target may collect from its customers, in any form, using any methods, from any location (including both any in-store location and online), and at any undefined time. Most of the requested information is clearly irrelevant to the facts of this case. This is a consumer class action involving four remaining Plaintiffs who allege they made purchases in-store, at specific Target locations. This is *not* a privacy case. For example, requiring Target to search for documents relating to biometric data, categories of information gathered online, and information collected at locations and during time periods outside of those connected to this action are not only highly irrelevant, but also unduly burdensome and not proportional to the needs of the case. Target further objects to this Request insofar as it is compound and contains subparts that are impermissible as a single request.

Subject to and without waiving the foregoing General and Specific Objections, Target directs Plaintiffs to the purchase information relating to Plaintiffs that Target has already produced, including TARGET_BOYD00094066, TARGET_BOYD00094067, TARGET_BOYD00082439, TARGET_BOYD00082438, and TARGET_BOYD00094062–TARGETBOYD00094065. Target will not produce additional documents responsive to this Request.

During the meet and confer, Target confirmed that it was standing on its relevance, proportionality and burden objection to RFP 36 regarding supply chain disruptions, pricing changes, and market conditions. Target also stated that it would not provide additional information beyond what was indicated in the written objection. According to Target, it has produced the narrower set of documents as outlined in its original response.

Target also stood on its objection to RFP 38, which the parties had discussed previously as well. Plaintiff narrowed her request to confirm that she was not seeking specific data about specific customers other than herself. Instead, this Request seeks documents about the general categories of data that Target collects from its customers. It is analogous to Interrogatory 18. Target informed Plaintiff that it is standing on its objections. Target pointed Plaintiff to the documents already produced with respect to the information collected as to Plaintiff and prior named plaintiffs, as documents responsive to this request. Target requested information as to relevance of the request more broadly, which counsel provided and with which Target disagreed.

**Plaintiff's Current Position:** Target should supplement its responses and produce additional documents in response to RFP Nos. 37-38 and 40-41. Because of Target's basis for refusing to produce supply chain disruptions, pricing changes, and market conditions information in response to RFP No. 36—which it detailed during the meet and confer—that it is not relevant to the damages assessment, Plaintiff will not move to compel production of documents demonstrating this information.

**Target's Current Position:** Target has no documents to produce in response to RFP 37 as Target understands that request. Regarding RFPs 40-41, Target has already produced the following categories of documents responsive to these requests (which Target confirmed by employing key

words that are suggested by the language of RFPs 40 and 41 against the body of documents Target has already produced), and which hit on the search terms identified by Plaintiff:

- "SEM": 1,499 produced
- "store experience marketing": 333 produced
- "in-store marketing": 78 produced
- "ISM": 2,453 produced
- "shelf talkers": 6 produced
- Labels: 2,662 produced
- Banners: 24 produced

RFPs 40 and 41 are therefore duplicative. There are documents that Target's review team marked as nonresponsive in prior review that also indicate hits on these specific additional terms. Despite RFPs 40 and 41 being duplicative, Target is willing to produce the documents previously marked nonresponsive, after a privilege review. Target has also identified a small set of "go-get" documents that are potentially responsive. Target can complete the privilege review of the previously marked nonresponsive documents identified above and of the "go-get" documents in the next two weeks, or by April 20.

Plaintiff's counsel provided **one** document by Bates number reflecting purported "deficiencies" late Friday, April 3, 2026. Target is still investigating the document identified by Plaintiff's counsel and encourages Plaintiff's counsel that, if she has identified other documents that reflect a "deficiency," those should be identified to Target for investigation.

Target appreciates Plaintiff's statement of position regarding RFP 36.

## <u>TARGET'S RESPONSES TO PLAINTIFF'S INTERROGATORIES 3, 8, AND 9</u>

### 1. The Initial Dispute

***Rog No. 3.*** Plaintiff informed Target that its answer to Interrogatory 3 was deficient because it referenced a document Target produced that was not responsive to the Interrogatory. Plaintiff asked Target to supplement the response by either identifying responsive documents or providing a responsive narrative. After Target amended its response and identified the intended document, Plaintiff identified additional deficiencies, including that she believes the document did not completely response to the interrogatory. Interrogatory No. 3 and Target's substantive response is provided below.

**INTERROGATORY NO. 3**: Describe the process by which Target developed its Banned Ingredient list for the Target Clean Program, including all sources, scientific studies, or regulatory standards considered.

**Target's Response (summary).** Target directed Plaintiff to the Target Chemical Priority List's "Approach" tab, dated from 2017, two years prior to the launch of Target Clean for beauty products. According to Plaintiff, the identified tab does not describe how Target identified the sources it used and does not provide pre-screening analysis details that the tab generally describes as "GreenScreen information."

***Rog No. 8.*** According to Plaintiff, Target's response to Interrogatory 8 is deficient because it does not respond to the part of the interrogatory seeking information on whether and how Target audits program compliance after products enter the Target Clean program.

**INTERROGATORY NO. 8:** Describe the process by which Target reviews, updates, or audits the compliance of products in the Target Clean Program with the program's criteria.

**Target's Response (summary).** Target states that vendors input product formulation data for their beauty products into an application operated by UL called the WERCS/PurView system (often referred to as "PurView").  A vendor's product formulation data is then screened against the TPCL to determine if the product qualifies for Target Clean. Vendors also attest to whether the product is cruelty-free. Vendors are responsible for making sure all information in PurView related to their products is current and accurate. On some occasions, when a product fails the Target Clean screening, the vendor will reach out to Target and UL. Target and/or UL then work to inform the vendor what formulation changes must be made for the product to qualify for Target Clean.

***Rog No. 9.*** According to Plaintiff, Target's response to Interrogatory 9 is deficient because it did not include details about key parts of its response: when Target began measuring the program's performance; the "in house database;" and the "different efforts" Target employed to measure the program's performance.

**INTERROGATORY NO. 9:** Describe the business reason(s) behind why Target developed and maintained the Target Clean Program and how, if at all, Target measured the Program's business performance.

**Target's Response (summary).** Target states that the Target Clean Program was started to meet a consumer desire to more easily identify products that are formulated without commonly unwanted ingredients, in addition to helping Target meet its chemicals goals at the time relating to reducing certain chemicals in Target's assortment of products. Target recognized that a program like Target Clean could incentivize vendors to reformulate products to meet Target's chemicals goals. *See also* publicly available information at the hyperlink provided in response to Interrogatory 1. When Target Clean launched, Target did not immediately measure the program's business performance. Target only began efforts to measure the business performance of Target Clean several years into the program. Over the course of the Target Clean program, different efforts have been made to measure aspects of Target Clean's business performance, but many of these efforts were not actually used by Target in any meaningful capacity. At present, Target refers to an in-house database to measure aspects of Target Clean products' financial performance. Target is not sure when this process began and how consistently it has been performed over time. Investigation is ongoing.

## 2. Negotiation and Unresolved Dispute

For all three Interrogatories, Target agreed to provide its final position by April 6, 2026.

**Plaintiff's Current Position:** Target should supplement its responses to include the specific information Plaintiff identified.

**Target's Current Position:** Target will not supplement Interrogatory 3. This Interrogatory asks Target to "Describe the process by which Target developed its Banned Ingredient list for the Target Clean Program, including all sources, scientific studies, or regulatory standards considered." Target responded with a description of that process: "Target responds that it worked with third-party consultants at Anthesis to formulate the [Target Priority Chemical List]." Target then directed Plaintiff to a specific document produced and its "Approach" tab, which information is also publicly available (and Target directed Plaintiff to that publicly available hyperlink).[1] The Approach tab further describes the process by which Target developed its Priority Chemical List. Plaintiff has not sufficiently explained what more is needed here or how the response is deficient. The same is true for Interrogatory No. 8.

Target will provide a supplemental responses to Interrogatory No. 9.

**TARGET'S RESPONSE TO PLAINTIFF'S REQUEST FOR INSPECTION**

### 1. The Initial Dispute

Plaintiff served a Request for Inspection of a database maintained and organized by Target, variously referred to as the "Target Clean Dashboard" and "Greenfield." Plaintiff served this Request after Target informed Plaintiff that it could not produce documents from the database and that the database was not covered by an specific RFP. According to Plaintiff, Target suggested that Plaintiff serve an RFI regarding the database. Now, Target has refused to allow Plaintiff to inspect the database. Target served objections to the RFI, proposing instead that Plaintiff lay a proper foundation in the first instance, and inquire about the database during a deposition.

### 2. Negotiation and Partial Resolution

During the meet and confer, Plaintiff offered to inquire about the database during the deposition of Matthew Griffin (the Target employee identified by documents and correspondence as creating and maintaining the relevant portions of the database) provided that Mr. Griffin have full access to the database during the deposition.

Plaintiff has served the 30(b)(6) deposition Notice discussed above. A Topic in that notice includes the topic of this "Target Clean Dashboard" and "Greenfield." Target has identified a corporate representative as to this topic. Thus, it is Target's position that it will only provide a "conditional date" for Mr. Griffin's deposition "toward the end of discovery," once the parties meet and confer as to the information already provided at the 30(b)(6) deposition testimony, including as to relevance, burden and duplication.

**Plaintiff's Current Position:** This issue is separate from Mr. Griffin's Rule 30(b)(1) deposition, and Plaintiff maintains that Mr. Griffin should be deposed regardless of the parties resolution of the Request for Inspection dispute. Plaintiff agrees to continue meeting and conferring on the Request for Inspection issue, including to discuss the timing of a deposition that may cover the requested information.

---

[1] Chemicals | Target Corporation. *See also* "Our priority chemical list and formulation approach" button on this page for the priority chemical list and the "Approach" tab.

**Target's Current Position:** Target agrees to make Mr. Griffin available for a 30(b)(1) deposition once the need is established after the 30(b)(6) deposition. Target does not agree that Plaintiff may use Mr. Griffin's deposition as a means to walk through the Greenfield database or as a means for Plaintiff to complete its Request for Inspection. Target suggested, and Plaintiff's counsel agreed during the March 31 meet and confer, that the 30(b)(6) deposition would proceed first in order for Plaintiff's counsel to determine whether the Request for Inspection of the Greenfield database would be proportional and necessary. Target does not understand what other relevance Mr. Griffin has to this case and believes Plaintiff has not articulated any.

## TARGET'S REQUEST FOR A DISCOVERY STAY

**Plaintiff's Current Position:** A stay is not appropriate, as a possible dispositive motion is not good cause to stay discovery and any stay will unnecessarily delay the case. The Court has already ordered the parties to continue with discovery. On March 25, 2026, the Court ordered that Target's anticipated motion for summary judgment and Plaintiff's anticipated motion to amend the Complaint shall not serve as grounds for withholding discovery. ECF 147. Plaintiff opposes the requested stay in the first instances because this Court instructed the parties to proceed with discovery.

Target has also not demonstrated good cause for a stay. "A court will only grant a motion to stay discovery when the movant shows good cause for the stay." *Unbehaun v. Minnesota Energy Res. Corp.,* No. 23-CV-1145 (NEB/DTS), 2023 WL 8434460, at *2 (D. Minn. Aug. 16, 2023). In essence, Target makes one argument for the stay—Target will succeed at summary judgment. This is not a basis for a discovery stay. *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steels Minnesota, LLC,* No. CV 09-3037 (SRN/LIB), 2012 WL 12895231, at *3 (D. Minn. July 5, 2012) ("Standing alone, the pendency of a dispositive motion does not establish good cause to stay discovery.") (internal citations omitted). The Court has not granted leave for Target's early motion, the motion is not yet filed, and neither side has briefed the issues. This limits the Court's ability to meaningfully review, even in some small way, the merits of the proposed motion. If nothing else, there is a disagreement about the scope and meaning of the Complaint, which weighs against a stay and the material factual disputes are a barrier to summary judgment at any rate. *Compare* ECF 148 (Plaintiff does not have standing because she did not purchase the Target Clean product alleged in the Complaint), *with* ECF 149 (Plaintiff has standing because she purchased Target Clean products). Thus, the Court should deny the request for a discovery stay premised on a possible summary judgment motion, which is unlikely to dispose of the action. *Great Lakes Gas Transmission Ltd. P'ship*, 2012 WL 12895231, at *3 (denying a motion to stay because "[i]n the absence of a clear and unmistakable result, this Court does not believe the issuance of a protective order should depend upon its prediction of how the District Judge will decide defendants' dispositive motion." )

As part of its request, Target also excludes relevant evidence in the record—Plaintiff DeFlorio purchased multiple Target Clean products during the relevant period—and incorrectly asserts Plaintiff's proposed amended complaint will add entirely new claims. It will not add any claims that were not part of the original filed complaint, and will only seek to add new class members to address Target's challenges to Ms. DeFlorio as a class representative. This is generally permissible through the time plaintiffs move for class certification.

**Target's Current Position:** Target requests a hearing date for a non-dispositive motion to stay discovery, including a stay of the deadline for Target to respond to Plaintiff's anticipated motion to compel discovery. Target does not believe this dispute is appropriate for IDR. Target disagrees with the Plaintiff's reading of the Court's ECF 147 Order, as the request for a stay was not part of that communication, at all.

Target seeks a stay of discovery because Target's anticipated motion for summary judgment will raise a threshold jurisdictional challenge (standing) to the sole remaining plaintiff that, if granted, will dispose of this entire action. Indeed, the sole remaining named Plaintiff, Ms. Harmony DeFlorio, has admitted under oath that she did not purchase the makeup product as alleged in the Complaint, she did not purchase any other Target Clean Identified Product, and there is no evidence in the record sufficient to create a genuine dispute of material fact that she purchased any other similar product advertised as Target Clean during the time of her purchase. *See e.g.*, *Kahsai v. DeJoy*, No. 20-CV-1060 (JRT/DJF), 2023 WL 2597056, at *2 (D. Minn. Mar. 22, 2023) (Foster, Mag. J.) (staying discovery until after resolution of defendant's early summary judgment motion, finding that "because summary judgment may resolve all pending claims in this matter, the Court finds that the interests of judicial economy are best served by staying" discovery).

Target also requests a stay of the deadline for Target to respond to Plaintiff's anticipated motion to compel to preserve judicial resources and avoid duplicate proceedings because Target's response will necessarily raise the very same jurisdictional standing issues that will potentially be before Judge Menendez. *See e.g.*, *Danger v. Nextep Funding, LLC*, No. 18-CV-567 (SRN/LIB), 2019 WL 4917181, at *5 (D. Minn. Jan. 22, 2019) (granting stay of discovery pending Article III standing challenge because "[i]f the request for a stay was denied and discovery was permitted to proceed and if any discovery disputes were brought before the undersigned, then the undersigned would be compelled to reach a decision of the issue of whether Plaintiff has Article III standing to pursue her claims before addressing the merits of any potential discovery dispute").

Additionally, even if Target is not permitted to file an early summary judgment motion, Plaintiff will soon file a motion to amend the complaint to add entirely new claims and potentially new plaintiffs. Specifically, Plaintiff's counsel represented during the meet and confer that they intend to add new products (beyond cosmetics), new putative class representatives (although as of last week's meet and confer, Plaintiff's counsel represented that they did not know who the new plaintiffs would be or how many new plaintiffs there would be), other purchases made upon which to claim a misrepresentation (based upon Target's records), and other class definitions. Plaintiff's counsel's own actions have caused unnecessary delay in this case, and they have previewed significant changes to the contours of this case. Therefore, if the motion to amend the Complaint is granted, the scope of discovery will necessarily change.

Resolution of these forthcoming motions while discovery is stayed will be beneficial to preserve the Court's and the parties' resources.

Respectfully submitted,

| | |
|---|---|
| */s/ Rachel K. Tack* | */s/ Ana Tagvoryan (with permission)* |
| Brian C. Gudmundson (MN #336695) | Faris A. Rashid |
| Rachel K. Tack (MN #399529) | **GREENE ESPEL PLLP** |

Benjamin R. Cooper (MN #403532)
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
rachel.tack@zimmreed.com
benjamin.cooper@zimmreed.com

Christopher D. Jennings (*pro hac vice*)
Tyler B. Ewigleben (*pro hac vice*)
**JENNINGS & EARLEY**
500 President Clinton Avenue, Suite 110
Little Rock, AR 72201
Telephone: (501) 247-6267
chris@jefirm.com
tyler@jefirm.com

Joseph Lyon (*pro hac vice*)
Kevin M. Cox (*pro hac vice*)
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com
kcox@thelyonfirm.com

*Attorneys for Plaintiffs*

222 S. Ninth Street
Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-8375
frashid@greeneespel.com

Ana Tagvoryan (admitted *pro hac vice*)
Erica R. Graves (admitted *pro hac vice*)
**BLANK ROME LLP**
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Telephone: (424) 239-3465
ana.tagvoryan@blankrome.com
erica.graves@blankrome.com

Melanie Carter (admitted *pro hac vice*)
Serena S. Gopal (admitted *pro hac vice*)
Fiona Steele (admitted *pro hac vice*)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
melanie.carter@blankrome.com
serena.gopal@blankrome.com
fiona.steele@blankrome.com

*Attorneys for Defendant Target Corporation*