**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| Harmony Deflorio individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| Target Corp., | ) ) ) |
| Defendant. | ) ) |

Case No. 0:23-cv-02668-KMM-DJF

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ...................... 3

    A.   The Case Timeline ................................................................................. 3

    B.   The Original Complaint and the "Identified Products" ............................. 3

    C.   Ms. DeFlorio's Claim of Deception as Pled in the Complaint .................... 6

    D.   The Motions to Dismiss and Strike, and the District Court's Order
        on Same ................................................................................................ 7

    E.   The Lack of Reasonable Inquiry as to the Thirteen Dismissed
        Plaintiffs' Claims .................................................................................. 9

    F.   The Lack of Evidentiary Support as to Ms. DeFlorio's Factual
        Allegations .......................................................................................... 10

III. THE PROPOSED AMENDMENTS ARE SIGNIFICANT, AND THE
    MAJORITY ARE IRRELEVANT TO DEFLORIO'S PURCHASE OR THE
    IDENTIFIED PRODUCTS ............................................................................. 11

IV.  LEGAL STANDARD ...................................................................................... 13

V.   ARGUMENT .................................................................................................. 14

    A.   Plaintiff Lacks Standing to Prosecute Her Claims or Seek
        Amendment ........................................................................................ 15

    B.   Plaintiff Fails to Establish Good Cause as Required by Rule 16. .............. 18

        1.   Plaintiff Has Not Demonstrated the Requisite Diligence to Change
            Her Product Allegations ................................................................ 19

        2.   Plaintiff Lacks Good Cause to Add New Plaintiffs with Purchases of
            Different Products ....................................................................... 23

    C.   Plaintiff Cannot Satisfy Rule 15 Because the Proposed Amendment
        Would Cause Significant, Undue Prejudice to Target ............................. 25

    D.   The Proposed Amendments Are Futile, and Plaintiff's and Counsel's
        Bad Faith Is Evident. .......................................................................... 32

        1.   Many of Plaintiff's Newly Proposed Allegations Are Implausible. 33

        2.   Standing Remains a Pleading Defect ............................................ 33

        3.   The New Class Definition Is Unworkable. ..................................... 35

        4.   A Finding of Bad Faith Is Warranted. ........................................... 36

    E.   Plaintiff Cannot Substitute in New Class Representatives at this
        Juncture. ............................................................................................ 37

ii

VI.    CONCLUSION ............................................................................................... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-MD-2481 (KBF), 2016 WL 1629350 (S.D.N.Y. Apr. 25, 2016) .................... 32

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*,
187 F.R.D. 578 (D. Minn. 1999) ................................................................................. 25

*Barnes v. First Am. Title Ins. Co.*,
473 F. Supp. 2d 798 (N.D. Ohio 2007) ...................................................................... 28

*Barstad v. Murray Cnty.*,
420 F.3d 880, 883 (8th Cir. 2005) .............................................................................. 21

*Bell v. Allstate Life Ins. Co.*,
160 F.3d 452, 454 (8th Cir. 1998) .............................................................................. 29

*Bernor v. Takeda Pharms. Am., Inc.*,
No. LACV1204856VAPJPRX, 2018 WL 588563 (C.D. Cal. Jan. 25,
2018) ........................................................................................................................... 39

*Boyd v. Target Corp.*,
750 F. Supp. 3d 999 (D. Minn. 2024) ................................................................. *passim*

*Brown v. Pfeiffer*,
No. 019CV03132WMWKMM, 2020 WL 1164594 (D. Minn. Mar. 11,
2020) ........................................................................................................................... 37

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) .............................................................................................. 1, 19

*Castillo v. United Rentals (N. Am.), Inc.*,
No. C17-1573JLR, 2018 WL 3429936 (W.D. Wash. July 16, 2018) ......................... 39

*In re Cattle & Beef Antitrust Litig.*,
No. CV 22-2903, 2024 WL 4355119 (D. Minn. Sept. 30, 2024) ............................... 29

*Cencast Servs., L.P. v. United States*,
729 F.3d 1352 (Fed. Cir. 2013) .................................................................................. 27

*Dalton v. JJSC Props., LLC*,
967 F.3d 909 (8th Cir. 2020) ...................................................................................... 17

iv

*Desio v. State Farm Mut. Auto. Ins. Co.*,
  339 F.R.D. 632 (D. Nev. 2021)................................................................................... 20

*Deutsch v. My Pillow, Inc.*,
  No. 20CV00318SRNECW, 2023 WL 3125549 (D. Minn. Apr. 27,
  2023) ........................................................................................................................ 31

*ecoNugenics, Inc. v. Bioenergy Life Sc., Inc.*,
  355 F. Supp. 3d 785 (D. Minn. 2019)....................................................................... 37

*Ellingsworth v. Vermeer Mfg. Co.*,
  949 F.3d 1097 (8th Cir. 2020) .................................................................................. 37

*In re Gen. Mills Glyphosate Litig.*,
  No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017)................................ 35

*Gutierrez v. Uni Trans, LLC*,
  No. 1:21-cv-00073, 2022 WL 3101068 (D.N.M. Aug. 4, 2022)............................... 20

*Jacob v. Cotton*,
  No. 4:20CV3107, 2022 WL 94410 (D. Neb. Jan. 10, 2022), *aff'd*, No.
  23-1023, 2023 WL 6532393 (8th Cir. Oct. 6, 2023) ................................................ 28

*Lidie v. State of California*,
  478 F.2d 552 (9th Cir. 1973) .................................................................................... 38

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d 901 (C.D. Cal. 2021) ...................................................................... 34

*Minnesota Laborers Health & Welfare Fund v. Swenke*,
  No. CIV. 02-992(RHK/AJB), 2003 WL 21521755 (D. Minn. July 2,
  2003) ................................................................................................................... 15, 18

*MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*,
  546 F.3d 533 (8th Cir. 2008) ............................................................................... 20, 23

*In re Namenda Direct Purchaser Antitrust Litig.*,
  331 F. Supp. 3d 152 (S.D.N.Y. 2018)....................................................................... 31

*Oetting v. Norton*,
  795 F.3d 886 (8th Cir. 2015) ......................................................................... 15, 37, 38

*Oh v. Fresh Bellies, Inc.*,
  No. CV 24-5417 PSG, 2024 WL 4500727 (C.D. Cal. 2024) .................................... 34

*Plubell v. Merck & Co., Inc.*,
    434 F.3d 1070 (8th Cir. 2006) ...................................................................... 24

*Reuter v. Jax Ltd., Inc.*,
    711 F.3d 918 (8th Cir. 2013) ....................................................................... 14

*Scott v. Harris*,
    550 U.S. 372 (2007) ..................................................................................... 17

*In re Select Comfort Corp. Secs. Litig.*,
    202 F.R.D. 598 (D. Minn. 2001) .................................................................. 31

*Seutter v. Mead Johnson Nutrition Co.*,
    763 F. Supp. 3d 783 (D. Minn. 2025) .................................................... 34, 35

*Shank v. Carleton Coll.*,
    329 F.R.D. 610 (D. Minn. 2019) .................................................................. 14

*Sherman v. Winco Fireworks, Inc.*,
    532 F.3d 709 (8th Cir. 2008) ................................................................. 13, 18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................... 33

*Star Auto Sales of Queens LLC v. Iskander*,
    No. 19CV06791RPKST, 2023 WL 5631155 (E.D.N.Y. Apr. 20, 2023) .................... 32

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ....................................................................................... 15

*Titus v. Sullivan*,
    4 F.3d 590 (8th Cir. 1993) ............................................................................ 17

*Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*,
    194 F.R.D. 378 (D. Mass. 2000) ................................................................... 19

*Velazquez v. GMAC Mortg. Corp.*,
    No. CV 08-05444DDPPLAX, 2009 WL 2959838 (C.D. Cal. Sept. 10,
    2009) ........................................................................................................... 38

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ........................................................... 17, 18, 34

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New
    York, Inc.*,
    889 F. Supp. 2d 912 (S.D. Tex. 2012) ......................................................... 38

*Zutz v. Nelson*,
601 F.3d 842 (8th Cir. 2010) ....................................................................... 32

**Other Authorities**

6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ......................................................... 24

Fed. R. Civ. P.
9(b) ...................................................................................................... 33
11 ............................................................................................... 1, 18, 20
15 ...................................................................................................*passim*
15(a) ................................................................................................ 13, 37
16 ...................................................................................................*passim*
16(b) ...............................................................................................*passim*
23 ......................................................................................................... 26

Defendant Target Corporation ("Target"), by and through its undersigned counsel, respectfully submits this Memorandum of Law ("MOL") in Opposition to Plaintiff's Motion for Leave to File the First Amended Complaint.

## I.   <u>**INTRODUCTION**</u>

After two-and-a-half years of litigation, thirteen dismissed plaintiffs, and the exposure of the sole remaining Plaintiff's false verified allegations, Plaintiff now asks this Court to let her start over—blaming Target for her own failure to verify the most basic fact underpinning her claims: what product she purchased based on purported reliance on Target's advertising. This is not how federal litigation works. Rule 11 imposes on Plaintiff and her counsel a "personal, nondelegable responsibility" to investigate claims before filing them. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 547 (1991). Federal pleading standards are not a "file now, ask questions later" regime, and the good-cause standard of Rule 16(b) does not exist to rescue a plaintiff from the consequences of her own pre-filing failures.

When this Court denied Target's motions to dismiss and strike the Complaint, which was based in large part on the unmanageable scope of the claims already asserted, it did so with the express expectation that "[t]he contours of this litigation will certainly narrow through the course of discovery, as theories adapt to the facts that are developed and the evidence that accrues." *Boyd v. Target Corp.*, 750 F. Supp. 3d 999, 1022 (D. Minn. 2024). The Court likewise expected Plaintiffs to "appropriately **narrow** their theories of liability and requests for relief in this case based on the evidence that is developed." *Id*. at 1047 (emphasis added). Plaintiff now proposes the opposite: to radically expand this case at the

eleventh hour by adding five new plaintiffs, substituting new products, broadening the class definition from thirteen identified makeup products to thousands of unidentified products across entirely new categories, and advancing a fundamentally new theory of deception— all because her original claims have collapsed under the weight of her own testimony.

The facts and the record are straightforward. Ms. DeFlorio, the sole remaining Plaintiff, did *not* purchase the product she alleged in the Complaint and confirmed in multiple verified interrogatory responses. She came to this "realization" not through any new evidence from Target, but simply after looking at a photograph of the product two days before her deposition—an exercise she and her counsel could and should have performed before filing this lawsuit, particularly where the image of the product is also included in the Complaint. Yet Plaintiff points the finger at Target, as though Target bore responsibility for verifying the truth of Plaintiff's own sworn allegations.[1] The audacity of this position is compounded by Plaintiff's counsel's pattern of dilatory conduct throughout this case, outlined in the accompanying declaration of counsel, which has burdened Target, the Court, and numerous non-parties for over two years.

The Court should deny Plaintiff's Motion for four independent reasons. First, the Court lacks subject matter jurisdiction over the Motion—as Ms. DeFlorio lacks Article III

---

[1] To that end, Plaintiff relies on several misrepresentations in crafting this argument, which Target objects to insofar as they constitute purported evidentiary support for Plaintiff, and further warrant correcting. *See* Tagvoryan Decl. Ex. C, which reflects a chart comparing statements in Plaintiff's Memorandum of Law in support of her Motion to Amend the Complaint (ECF 158, "Pl. Mem.") to the actual evidence cited and attached to the Declaration of Rachel Tack. These are more than "discrepancies" and instead rise to intentionally loose representations to the Court.

standing by virtue of the lack of an actual injury-in fact, both because she did not purchase the Target Clean product alleged in the operative pleading, and because her contradictory deposition testimony regarding a different product does not support a finding of an injury-in-fact. Second, Plaintiff cannot demonstrate the "good cause" required by Rule 16(b) because the need for amendment arises entirely from Plaintiff's own pre-filing failures—not newly discovered evidence, the newly introduced products and plaintiffs have no relation back to the original identified products, and the amendment deadline has been fixed since January 2025 through three rounds of scheduling modifications. Third, the proposed amendments would cause undue prejudice to Target by fundamentally transforming this case over two years later, requiring Target to restart discovery across an entirely new universe of products and plaintiffs with no ties to the original products or theory of deception. Fourth, and lastly, substitution of new class representatives is improper where no class has been certified, and the proposed replacement plaintiffs were recruited at the last minute through renewed counsel advertisements to rescue a failing case. The instant Motion is an attempt to salvage a case that Plaintiff's and counsel's own conduct has fundamentally undermined, and should be rejected in its entirety.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Case Timeline

The Complaint was filed almost three years ago on August 29, 2023. Although stayed, discovery closes in this case on May 13, 2026, and motions for class certification are due June 12, 2026. ECF 123. Significantly, the Pretrial Scheduling Order has already been modified on three separate occasions—on July 2, 2025, October 22, 2025, and

January 28, 2026—each time extending fact discovery and document production deadlines. ECF 97, 107, 123. None of those modifications extended the January 21, 2025 amendment deadline. This was a conscious choice by the parties and the Court, and Plaintiff never requested to include the extension of the deadline to amend the Complaint in any subsequent modification of the schedule.

**B.      The Original Complaint and the "Identified Products"**

This case was originally filed on behalf of fourteen named plaintiffs, alleging that Target's "Target Clean" wellness icon as related to thirteen specified makeup products was misleading to consumers. ECF 1. The Complaint sets forth those products and explicitly defines them for purposes of the claims, allegations and the class definition (the "Identified Products"), ECF 1 ¶ 16. In particular, the Complaint's deception theory is inherently product-specific and is expressly limited to the thirteen Identified Products. The theory of deception as to the definition of "Target Clean" with respect to the Identified Products also depends on a product-by-product ingredient analysis, which is also tied to the class definition. *See id.* ¶ 197. The Complaint asserts claims for breach of express and implied warranty, fraud, negligent misrepresentation, unjust enrichment, and violations of various state consumer protection statutes on behalf of a proposed nationwide class and state-specific subclasses of purchasers of the "Identified Products." *Id.*

The "Identified Products" have been an intentional focus of the Complaint and basis of Plaintiff's claims. Before filing the Complaint, Plaintiff's counsel prepared a pre-Complaint demand letter dated June 6, 2023 in which counsel expressly stated "We identified several products stamped with the Target Clean label that either contain banned

4

ingredients or contain ingredients that pose the same risks as those on the Target Clean Banned Ingredients list." Tagvoryan Decl. Ex. D at 2. The demand letter further stated, **"The products we identified, collectively referred to as 'Identified Products', include [the same 'Identified Products' that are in paragraph 16 of the Complaint]."** *Id.* (emphasis added).

And after the pleadings were settled, Plaintiff's counsel agreed during discovery to limit the scope of information produced as to specific product details and sales numbers to the Identified Products, only. *See e.g.*, Tagvoryan Decl. Ex. Q at 2 ("As a compromise . . . Plaintiffs are willing to narrow this request to all unit sales and revenue data for the products identified in the Complaint from two years prior to the launch of the Target Clean program through the present (the "Discovery Products")."). The definition of the "Discovery Products" is identical to the Complaint's definition of the Identified Products. *Id.* at 2 n.1. Further, Plaintiff's counsel specifically told this Court that discovery issues were "resolved" per this very agreement. *See* Tagvoryan Decl. Ex. R at 2 ("Resolved Issues Concerning Target's Discovery Responses . . . By February 6, 2026, Target will produce sales and revenue information for the products identified in the Complaint."). Indeed, consistent with the Identified Products is Plaintiff's counsel's original social media advertisement for this case, which they produced a copy of in discovery, which lists eight of the Identified Products as those being "Under Investigation." Tagvoryan Decl. Ex. E at PLF0000157.

In short, according to Plaintiff's theories as alleged, each product has a unique formulation, and the question of whether any given product is deceptively labeled as

5

"Target Clean" requires an individualized assessment of that product's ingredients as alleged in the Complaint and as compared across specifically identified products. Plaintiff's counsel plainly investigated specific makeup products before advertising the potential case to the public, drafted a complaint based on specific makeup products, sent Target a demand letter concerning only the Identified Products, and filed a Complaint consistent with all of counsel's actions.[2]

### C.       Ms. DeFlorio's Claim of Deception as Pled in the Complaint

When Ms. DeFlorio retained counsel on February 13, 2023, she believed that she was signing up as a potential plaintiff in this case because she purchased and wore CoverGirl makeup products. *See* Tagvoryan Decl. Ex. A at 133:1-13; Tagvoryan Decl. Ex. F. The Complaint specifically alleges that she purchased CoverGirl Clean Fresh Pressed Powder from Target in Bohemia, New York, and that the Target Clean label influenced her decision to do so. ECF ¶ 31; *see also* ¶ 35. The Complaint also includes a photograph of this product. *Id.* ¶ 154. In her discovery responses, DeFlorio verified she used the CoverGirl powder and that "[b]ecause the Product was not clean, as Plaintiff expected based on Defendant's representations, she used ingredients she did not want to put on her skin without her knowledge." *See* Tagvoryan Decl. Ex. O, Supp. Response to Interrogatory No. 11.

---

[2] Indeed, the third-party subpoenas at issue and before the Court at the last discovery conference focused only on the manufacturers of the "Identified Products." ECF 154, 155 (April 7, 2026 IDR Conference).

**D.      The Motions to Dismiss and Strike, and the District Court's Order on Same**

The District Court's Order denying Target's Motion to Dismiss and Motion to Strike confirms that the litigation is tethered to the specific Identified Products and the particular factual allegations surrounding them. First, the Court's framing of the case is consistently product-specific. It describes the case as involving "14 named plaintiffs" who each "purchased one or more of a group of 14 [*sic*] 'identified' Target Clean Beauty Products that Plaintiffs allege 'are not actually clean' and do contain unwanted or harmful ingredients." *Boyd*, 750 F. Supp. 3d at 1008.[3]  The Court framed the operative allegations as arising from purchases of specific products with specific ingredient-level deficiencies.

Second, in connection with the Court's treatment of the Physicians Formula Mosaic Bronzer—the only product alleged to literally contain a banned Target Clean ingredient (propylparabens), the Court viewed the deception inquiry as requiring product-by-product, ingredient-by-ingredient factual development. *Id.* at 1012 ("Whether Target is correct about what the [Physicians Formula Mosaic Bronzer] ingredient label would have shown (and whether the omission of propylparaben from that ingredient label would necessarily disprove Plaintiffs' allegations that the product contains propylparaben) are clearly matters of factual dispute, not amenable for resolution on a motion to dismiss. Target may prevail on this argument, but they cannot do so at this stage."). The Court did not conclude that the Target Clean program is alleged to be deceptive across the board; it concluded only that

---

[3] In its opinion, the District Court stated that there were fourteen identified products but the Complaint identifies only thirteen. ECF 1 ¶ 16.

there were enough *product-specific* factual disputes to survive a motion to dismiss. *Id.* (noting that the Physicians Formula Mosaic Bronzer allegations were "more than speculative accusations").

Third, the Order repeatedly signals that the scope of the litigation would likely contract as facts are developed. The Court stated that "[t]he contours of this litigation will certainly narrow through the course of discovery, as theories adapt to the facts that are developed and the evidence that accrues." *Id.* at 1017. Similarly, the Court observed that "Plaintiffs' theories of liability may necessarily narrow or become more refined through the course of this litigation, or they may be unproveable." *Id.* at 1020. These statements confirm that the Court views the current scope of the case as finite and expects the claims to be pruned to match only those already-alleged products and facts that survive factual scrutiny.

Fourth, the Court engaged extensively with Target's argument that "no Plaintiff has standing to bring claims arising out of all of the Identified Products on behalf of all alleged class members" because no single plaintiff purchased all thirteen products. *Id.* at 1025-26. Importantly, the Court's rejection of this argument was not an indication that standing can exist as to *unidentified* products; but rather it deferred the standing question as to the thirteen Identified Products to the class certification stage. The Court recognized "that the pleadings may eventually need to be restructured through amendment to resolve standing challenges posed by the nature of this lawsuit," but only as to "product-specific nationwide subclasses comprised of the Identified Product at issue." *Id.* at 1027.

8

Lastly, and perhaps most tellingly, the Court repeatedly stated that it expects Plaintiffs to "appropriately *narrow* their theories of liability and requests for relief in this case based on the evidence that is developed." *Id.* at 1032 (emphasis added). The Court's explicit expectation of narrowing—rather than expansion—confirmed that the case, as it proceeded through discovery, remained anchored to the specific products and facts alleged in the Complaint.

### E. The Lack of Reasonable Inquiry as to the Thirteen Dismissed Plaintiffs' Claims

Since the filing of the Complaint, thirteen of the fourteen original named plaintiffs, and their corresponding claims (Counts VIII through XIX, XXI, and XXII) have been dismissed. *See* ECF 98, 100, 114, 115, 120, 125, 140, 141, 142, 145. These dismissals followed extensive discovery efforts for which Target expended substantial time and resources attempting to confirm whether named Plaintiffs were participating in the litigation, had served complete discovery responses, and could substantiate their alleged purchases and claimed injuries where Target was unable to do so on its end. These efforts included repeated meet-and-confer communications, follow-up on plainly deficient discovery responses, and attempts to obtain basic proof-of-purchase and participation information necessary to secure depositions and assess standing and class viability. *See e.g.*, Tagvoryan Decl. ¶ 5. The extent of the waste of resources and the dilatory actions with respect to the dismissed plaintiffs are discussed in the accompanying declaration of Ana Tagvoryan. *Id.* ¶¶ 18-37. Their relevance to this Motion is to demonstrate Plaintiff's counsel's failure to thoroughly investigate their clients' claims and willingness to

participate before filing this lawsuit, which undermines any finding of good cause to amend at this late stage.

### F. The Lack of Evidentiary Support as to Ms. DeFlorio's Factual Allegations

The instant Motion does not come as a result of newly discovered facts; rather, it is filed foremost because Ms. DeFlorio's allegations about her product purchase—in the Complaint and in four sets of verified interrogatory responses served between July 2025 and February 2026—were proven to be false. Throughout discovery, Plaintiff consistently stated that she purchased the CoverGirl Clean Fresh Pressed Powder from the Bohemia, New York Target as alleged, though she never provided a day, month or even year of purchase. That was never true. *See* Tagvoryan Decl. Ex. Q; *id.* Ex. A at 266:21-267:4. Likely on suspicion of same, Plaintiff intentionally delayed her deposition until after Target produced her purchase records. Then, two days before her March 2, 2026 deposition, on Friday, February 27, Plaintiff's counsel served "Amended" verified interrogatory responses stating that Ms. DeFlorio did not purchase the CoverGirl product. Tagvoryan Decl. Ex. P. Yet Ms. DeFlorio claims she did not realize the truth until the day after, on Saturday, February 28—when her attorneys showed her a photograph of the products. *Id.* Ex. A at 266:21-267:4. She had no explanation for why she served verified responses about this "realization" the day before she claims to have actually made it. *Id.* at 250:10-23

(agreeing she verified her responses on Friday but confirms she "didn't realize this until Saturday").[4]

## III. THE PROPOSED AMENDMENTS ARE SIGNIFICANT, AND THE MAJORITY ARE IRRELEVANT TO DEFLORIO'S PURCHASE OR THE IDENTIFIED PRODUCTS

On the basis of her "mistake" as to the purchase that supposedly caused her harm, Plaintiff seeks to amend the Complaint to add five new plaintiffs, and extend the scope of this case dramatically beyond the thirteen Identified Products. These amendments are not minor corrections that narrow the claims to the discovered facts or otherwise relate to the Identified Products or the previous plaintiffs' purchases during the relevant time period. Instead, they constitute a wholesale rewrite of the entire case. A summary of the new alleged purchases and proposed plaintiffs are shown as follows:

| Name | State | Alleged Purchases (and Dates of Purchase) |
|------|-------|--------------------------------------------|
| Harmony DeFlorio | NY | L'Oreal Paris True Match Makeup Super Blendable Oil-Free Powder (01/21/2020) <br><br> SheaMoisture Smoothie Curl Enhancing Cream (12/12/2021) <br><br> CeraVe Foaming Facial Cleanser (01/21/2021) <br><br> Flexible Hold Aussie Mega Hold Hairspray (06/20/2021) <br><br> Garnier Fructis Texturizing Invisible Dry Shampoo – Beach Tonic (12/12/2021) |

---

[4] At her deposition, Ms. DeFlorio's counsel also sought to verbally amend her verified interrogatory responses to switch out the originally alleged product at issue with the L'Oreal product. *Id.* at 6:25-7:23. Ms. DeFlorio confirmed: "The L'Oreal -- the L'Oreal powder" was the product giving rise to her claims, and not the Covergirl product currently alleged in the Complaint. *Id.* at 126:19-22.

11

|  |  | Pantene Hydrating Glow with Baobab Essence Thirsty Ends Milk to Water Hair Serum (12/12/2021)<br><br>Not Your Mother's Clean Freak Refreshing Dry Shampoo (07/09/2022 & 03/14/2023) |
|---|---|---|
| Rakeedha Scarlett | NY | e.l.f. Lash 'N Roll Curling & Lifting Mascara (03/14/2025)<br><br>Maybelline Fit Me Matte + Poreless Oil Free Liquid Foundation (03/19/2025) |
| Amanda Sullivan | NY | Eva NYC Mane Magic 10-in-1 Shine Mask (01/30/2026)<br><br>Vitamasques Lip Mask (03/20/2026) |
| Amber Kokenge | MN | Being Frenshe Women's Hair, Body & Linen Mist Body Spray with Essential Oils (03/03/2025)<br><br>Raw Sugar The Moisture Smoothie Shampoo (12/13/2025)<br><br>Being Frenshe Renewing Body Wash (02/04/2026) |
| Roz Saedi | CA | L'Oreal Paris EverPure Restore Conditioner (11/26/2025)<br><br>Method Aluminum Gel Hand Soap (11/26/2025)<br><br>Method Body Wash - Pure Peace (11/26/2025) |
| Stephanie Andrecs | CA | Eva NYC Freshen Up Invisible Dry Shampoo Warm Vanilla (09/18/2025 & 10/11/2025) |

*See* Plaintiff's proposed first amended complaint ("PAC"), Ex. 1 to Tack Decl., ¶¶ 21-26.

The proposed amendments fundamentally transform the nature, scope, and theory of this litigation in at least four material respects:

- **Changed Product Allegations for DeFlorio**: The PAC switches out the product Ms. DeFlorio allegedly purchased—from the CoverGirl Clean Fresh Pressed Powder originally alleged to the L'Oreal Paris True Match Powder—and adds numerous additional products that DeFlorio never identified during her deposition and is otherwise not explained under the good cause standard below.

12

- **Five New Plaintiffs**: The PAC adds five entirely new plaintiffs from three different states—New York (Scarlett and Sullivan), California (Saedi and Andrecs), and Minnesota (Kokenge), none of whom were part of this case during the prior two-plus years of litigation or otherwise purchased the Identified Products (or substantially similar products) during the relevant time period before the Complaint was filed. Nor was there any plaintiff in the original Complaint from Minnesota.

- **Scope Expansion & Broadened Class Definition**: The original Complaint is based on the Identified Products. The PAC seeks to expand to thousands of *unidentified* products across beauty, personal care, and household categories—including hair care, body wash, hand soap, and dry shampoo—none of which were at issue in this litigation. The PAC accordingly redefines the class from purchasers of specifically identified "Target Clean Identified Products" to purchasers of any "Target Clean Beauty Product" which does not have a limited definition and features a wholesale expansion that could encompass at least thousands of new products, many of which do not contain the original ingredients alleged to be harmful.[5]

- **New Deception Theory**: The original Complaint alleged deception from Target Clean due to "unwanted" ingredients on the skin through makeup products. The PAC now alleges deception based on "unwanted ingredients" in other products that are inhaled, such as "fragrance" ingredients, or applied to hair—a fundamentally different theory of deception that does not comport with the issues addressed through the case thus far.

## IV.    LEGAL STANDARD

Both Federal Rules of Civil Procedure 15 and 16 apply to Plaintiff's motion to amend the complaint. "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional" and Plaintiff must show good cause to amend the complaint now. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman*, 532 F.3d at 716–17 (internal citation and quotation marks

---

[5] Plaintiffs have already served subpoenas on the manufacturers of the Identified Products. These new products implicate potentially additional non-party discovery.

omitted). Other factors relevant to "good cause" under Rule 16 can be a plaintiff's evidentiary burden, the timeframe in which plaintiff sought the information, plaintiff counsel's good faith and whether plaintiff was dilatory. *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019).

In addition, Federal Rule of Civil Procedure 15 provides that the Court has discretion to allow a party to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). A party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted).

## V.    **ARGUMENT**

The Court should deny Plaintiff's Motion for four independent reasons. First, Ms. DeFlorio does not have a cognizable injury in fact, thereby stripping this Court of subject matter jurisdiction under Article III of the U.S. Constitution. She has not purchased the sole product at issue in the operative pleading. Moreover, the product Plaintiff put at issue at the eleventh hour by way of her deposition testimony was not designated as Target Clean at the time of her purchase, and thus her newfound "harm" is without merit. Second, Plaintiff cannot demonstrate the good cause required by Rule 16(b) to modify the Pretrial Scheduling Order, as the need for amendment arises from Plaintiff's own pre-filing failures and her decision to limit the products at issue in the Complaint, not newly discovered evidence or changed circumstances, and the scheduling order has already been modified

14

three times without any party seeking to extend the amendment deadline. Third, even under Rule 15's more permissive standard, the proposed amendments come too late and would cause undue prejudice to Target by fundamentally altering this case after key discovery deadlines have passed, requiring the reopening of fact discovery to depose five new plaintiffs across multiple states and investigate an entirely new universe of products and ingredients. Fourth, substitution of new class representatives is improper where the sole remaining named plaintiff lacks standing, no class has been certified, and the newly found proposed plaintiffs were recruited on an entirely different theory of deception, outside the relevant time period, in an effort to avoid summary judgment.

### A.    Plaintiff Lacks Standing to Prosecute Her Claims or Seek Amendment

It is well established that if a court "lacks subject matter jurisdiction" then "the [c]ourt cannot entertain a motion to add parties or amend the pleadings." *See e.g.*, *Minnesota Laborers Health & Welfare Fund v. Swenke*, No. CIV. 02-992(RHK/AJB), 2003 WL 21521755, at *4 (D. Minn. July 2, 2003); *Oetting v. Norton*, 795 F.3d 886, 892 (8th Cir. 2015) (denying motion to substitute and stating that "[t]he normal rule is that, 'if a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed.'") (internal citation omitted). Thus, Plaintiff's standing must be examined now, without regard to Plaintiff's potential amendments. Standing is a jurisdictional prerequisite, which must be resolved promptly at any stage of litigation because without it, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (internal

15

citation omitted). Here, Plaintiff's deposition testimony made clear that the injury alleged in the Complaint does not exist.

First, Ms. DeFlorio did not purchase the CoverGirl product alleged in the Complaint to have caused her harm. Plaintiff tries to avoid the fact that the Complaint currently fails to allege an injury-in-fact by relying on her purchases not alleged in the Complaint.

Second, the L'Oreal powder now at issue was not advertised as Target Clean at the time of Plaintiff's alleged purchase. Plaintiff claims that Target is raising "a factual dispute regarding whether the L'Oreal True Match Powder was marked 'clean' in the store at the time of Ms. DeFlorio's purchase" Pl. Mem. at 10. That is not true. According to Target's business records, this product did not qualify for the Target Clean program at the time of Plaintiff's purchase, as Plaintiff admits. *See* Tack Decl., Ex. 20. Plaintiff's inconsistent deposition testimony fails to raise a genuine issue as to this fact. [6] Moreover, the Complaint

---

[6] While Plaintiff also relies on Exhibit 21 to the Tack Decl. to support the contention that this product was advertised as Target Clean, Plaintiff's reading of Exhibit 21 is objectively unreasonable. Exhibit 21, comprised of several unrelated email chains, does not contain a single example of a non-Target clean product having mistakenly received Target Clean in-store signage. Rather, Exhibit 21 includes discussions of actual Target Clean products that *were not* being advertised as such. *See e.g.,* Ex. 21 to Tack Decl. at TARGET_BOYD00096506 ( ███████████ ); *id.* at TARGET_BOYD00096508 (" ███████████ ?"); *id.* at TARGET_BOYD00096501 ( ███████████ "). Exhibit 21 also includes discussions of ███████████ *See generally* Ex. 21. Said differently, Exhibit 21 does *not* show that products that *were not* Target Clean were being advertised as Target Clean. It is telling that Plaintiff cannot point to a single example of such a scenario in over 15,000+ documents produced by Target in discovery. Thus, Exhibit 21 does not lend support to the manufactured theory that Ms. DeFlorio testified to and if

does not allege a theory of liability with respect to products mistakenly advertised as Target Clean; rather, the Complaint focuses on products that did qualify as Target Clean but the banned ingredients were not exhaustive or complete. Plaintiff's new-found purchase does not fit within this theory.

For example, when asked about the in-store signage, Plaintiff testified: "Q. And what sign did you see? A. I saw the Clean sign. Q. And where did you see it exactly? A. **I can't tell you exactly where in the store, you know**. But there was – that's what attracted me to it. Because I was kind of running around like crazy stocking up, you know" and "Q. And you're saying that there was a Target Clean icon that was above each one of these three separate stacks of products? A. **I'm not really sure. Honestly, I don't know**. All I know is there was one big Clean sign that said Clean." Tagvoryan Decl. Ex. A at 168:16-23 and 194:6-11 (emphasis added).

Where the other party makes a factual challenge to standing, the Court may consider the probative value of the evidence submitted for purposes of evaluating subject matter jurisdiction. *See e.g.*, *Dalton v. JJSC Props., LLC*, 967 F.3d 909, 914 (8th Cir. 2020); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Here, it is clear that Ms. DeFlorio cannot substantiate the injury alleged in the Complaint with any competent, reliable evidence and therefore cannot demonstrate the injury-in-fact required by Article III. *See e.g.*, *Wallace v.*

---

anything, it supports what the rest of the documents show, that the L'Oreal product was not sold with the Target Clean logo in January 2020. *See e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts").

*ConAgra Foods, Inc.*, 747 F.3d 1025, 1029-30 (8th Cir. 2014) (plaintiff lacks standing where there is no economic injury and plaintiff did not purchase a defective product). Rather than rule on the Motion, the Court must dismiss the case for lack of subject matter jurisdiction. *See Minnesota Laborers Health & Welfare Fund*, 2003 WL 21521755, at *4.

**B.    Plaintiff Fails to Establish Good Cause as Required by Rule 16**

Plaintiff cannot show the good cause required to modify the scheduling order more than fifteen months after the amendment deadline expired. "The primary measure of good cause is the movant's diligence in" seeking the amendment. *Sherman*, 532 F.3d at 716. Here, Plaintiff tries to amend her own purchase history, add new products with new theories of deception, and add new plaintiffs with purchases after the Complaint was filed. None of these amendments are warranted under a good cause analysis. This is not a case where new evidence revealed a previously unknowable defect; counsel simply never bothered to verify the plaintiffs' purchases or even show her a picture of the CoverGirl product, and Plaintiff never asked herself whether she relied on a Target Clean advertisement related to a CoverGirl product. All other proposed amendments to add new products and new purchases through new plaintiffs fail the good cause standard altogether, as they do not arise out of the discovery record in this case or otherwise relate back to any Identified Product. Tellingly, Plaintiff does not even address it in her Memorandum of Law.

18

### 1. Plaintiff Has Not Demonstrated the Requisite Diligence to Change Her Product Allegations

Ms. DeFlorio has not demonstrated good cause to substitute the CoverGirl product with the L'Oreal product or to add new purchases. Her claim that she needed Target's records to discover her "mistake" is contradicted by her own testimony: she realized she identified the wrong product after looking at photographs of the two makeup products—not Target's records. Tagvoryan Decl. Ex. A at 266:21-267:4 ("Then when I was shown the pictures of the CoverGirl fresh powder and the L'Oreal True Match, I was, like, I never bought that CoverGirl."). She claims Target's spreadsheet merely "confirmed" what the photographs already revealed. *Id*. at 165:1-7.

Regardless, this "mistake" excuse fails as a matter of law. A plaintiff is expected to have personal knowledge of her own purchases when filing a complaint, and counsel bears "a personal, nondelegable responsibility" to verify the truth of allegations before filing. *Bus. Guides, Inc.*, 498 U.S. at 547; *see also Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.*, 194 F.R.D. 378, 382 (D. Mass. 2000) ("The violation of Rule 11 that occurred when an inadequate pre-filing investigation was done before the filing of the original complaint is not cured by the filing of an amended complaint."). Ms. DeFlorio could have looked at the photograph of the CoverGirl product in the Complaint, ¶ 154, at any point—which would have "jogged [her] memory" that she neither purchased nor relied on advertising for that product. She did not. Tagvoryan Decl. Ex. A at 165:13-16 ("Q. Before the complaint was filed, did you review images of the CoverGirl product to confirm whether or not you had purchased it? A. No, I didn't.").

19

Moreover, since filing the Complaint, Ms. DeFlorio could not identify even the month or year she purchased the CoverGirl product—yet Plaintiff never sought to extend the amendment deadline to account for the fact that such details were still missing. Her motion, filed nearly fifteen months after that deadline, cannot establish diligence where Plaintiff acquiesced for over a year while the Court accommodated other scheduling adjustments. *See MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 545 (8th Cir. 2008) (affirming denial of leave to amend when motion was filed months after Rule 16 deadline); *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 643 (D. Nev. 2021) (no good cause where plaintiff had reason to know facts earlier); *Gutierrez v. Uni Trans, LLC*, No. 1:21-cv-00073, 2022 WL 3101068, at *1 (D.N.M. Aug. 4, 2022) ("Plaintiff failed to show diligence" where she "should have known the facts . . . now [sought] to add"). To be sure, Target repeatedly challenged the fact of the purchase as to each plaintiff, including DeFlorio, including at each meet and confer regarding Plaintiff's discovery responses, and during the court-mandated meetings between counsel concerning settlement. *See e.g.*, Tagvoryan Decl. Exs. N, T.[7]

There is absolutely nothing in the record that would support Plaintiff's wild allegation that somehow Target obstructed discovery of the basic fact that her counsel's diligence should have substantiated, particularly where Plaintiff's Initial Disclosures stated

---

[7] Plaintiff's contention that she had no basis to seek amendment of the deadline because "each plaintiff had alleged good faith purchases of the Target Clean beauty products identified in the Complaint, and Target had not contested any of the alleged purchases" is absurd, and sanctionable. Pl. Mem. at 19. Target has contested the purchases at every meeting and sought proof of purchase from Plaintiff and the former plaintiffs since the inception of this case. *See e.g.*, Tagvoryan Decl. Exs. G, H, I, N, K, T.

20

very clearly that they had possession, custody and control of "[m]aterials related to Plaintiffs' purchase(s) of Defendant's product(s)." Tagvoryan Decl., Ex. B; *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 643 (D. Nev. 2021) (finding no good cause to allow amendment, rejecting plaintiff's contention that defendant's disclosure of forms "confirmed" the basis for her new factual allegations and she could only seek amendment after that disclosure, when in reality plaintiff had reason to know much earlier).[8] Moreover, the substantial completion deadline that Target sought to extend related to the production of electronically stored information (ESI), not any records specific to the Plaintiff. Tagvoryan Decl. Ex. V.

Even accepting Plaintiff's characterization of the discovery timeline, Target's compliance with scheduling order deadlines is a separate issue from Plaintiff's obligation to verify her own allegations before filing them. Target's production obligations do not relieve Plaintiff of her independent duty under Rule 11 to investigate the facts underlying her own claims—facts that were entirely within her personal knowledge. The "inconsistent application" theory Plaintiff advances is a red herring: the scheduling order's deadlines serve independent purposes, and a party's compliance with one deadline has no bearing on another party's obligation to comply with a different one. *Barstad v. Murray Cnty.*, 420 F.3d 880, 883 (8th Cir. 2005) ("the [new] claims did not hinge on the concluding depositions.")

---

[8] Even absolving Plaintiff of any responsibility to reasonably verify the veracity of her own sworn allegations, contrary to Plaintiff's assertions, Target did not delay its productions. Target made document productions at each stage of the discovery process consistent with the Pretrial Scheduling Order and its modifications. Tagvoryan Decl.¶ 9, Ex. V.

21

***Second,*** Ms. DeFlorio also has no excuse to add additional non-makeup products to her claims. Her deposition testimony makes clear that this case has always been about makeup. Tagvoryan Decl. Ex. A at 12:16-22 (identifying misleading advertising to be "signs that basically say[] there were clean makeup products"); *see also id.* at 20:8-10 ("You're bringing up my financial obligations because I bought some fricking makeup?"). When asked about other products that may be at issue, Plaintiff originally responded in the negative. Tagvoryan Decl. at Ex. P (original response to Interrogatory No. 20). The new products she seeks to add—including dry shampoo, hairspray, facial cleanser, and acne care systems—were not mentioned by Plaintiff in her deposition and are not makeup. *See* PAC ¶ 21. Most remarkably, Ms. DeFlorio seeks to add an allegation that she was misled into buying a certain dry shampoo product a few weeks *after* she retained counsel in this case to sue Target for the purportedly "misleading" Target Clean advertising. *Compare* Tagvoryan Decl. Ex. F (retainer agreement dated February 13, 2023 and signed February 14, 2023) *with* PAC ¶ 21 (purchase on March 14, 2023). This defies credulity, and Plaintiff fails to provide any justification for why she did not know earlier that she had relied on Target Clean advertisements when purchasing these other products.

The theory of liability is deception by affirmative misrepresentation, and the facts of Plaintiff's reliance are entirely within her own knowledge. Once Plaintiff was on notice of the purported false advertising, she could have identified the offending purchases made in reliance on "Target Clean" advertisements. She did not—because she did not rely on any such advertisements for these non-makeup products. Instead, these new claims are sought to be added only in an effort to avoid summary judgment on Plaintiff's existing

22

claims. *See MSK EyEs Ltd.*, 546 F.3d at 545 (it was not an abuse of discretion to deny leave to amend pleadings when the motion was filed months after the Rule 16 deadline for amendment, years after the action was commenced, and after defendant notified the plaintiffs that it was moving for summary judgment).

### 2. Plaintiff Lacks Good Cause to Add New Plaintiffs with Purchases of Different Products

Plaintiff's PAC seeks to introduce five new plaintiffs with entirely different products, purchased at different times, and to expand the class definition to encompass thousands of unidentified products. Plaintiff's Memorandum of Law does not argue that she has good cause to add the proposed new plaintiffs. On that basis alone, the Court should deny her motion as to these new plaintiffs.

Plaintiff's only justification is that such amendments "respond to Target's challenges" and "replace the prior dismissed plaintiffs." Pl. Mem. at 23. This is not diligence—it is an attempt to circumvent proper procedures. Good cause requires more than a general desire to "address challenges," and Plaintiff offers no explanation for why these new plaintiffs and products could not have been added earlier. The only explanation in the record is that counsel launched new advertisements for plaintiffs after their original clients began dismissing their claims. *See* Tagvoryan Decl., Ex. U. This is not diligence, and is contemptuous. What is more, none of the new products nor the dates of purchase relate back at all to the scope of the operative Complaint or to Target's challenges as evaluated by the Court in the Order on Target's motions to dismiss and strike. The Court should not entertain these amendments.

23

Plaintiff's reliance on *Plubell v. Merck & Co., Inc.*, 434 F.3d 1070, 1074 (8th Cir. 2006) is misplaced. Unlike in *Plubell*, the new plaintiffs here: (1) would not have been "a member of the putative class in the original petition" because they did not purchase an Identified Product; (2) do not allege purchases that "arise[] out of the same conduct, transaction or occurrence set forth in the original pleadings" in that they are not cosmetics; and (3) do not assert claims that are "exactly the same in both pleadings." *See id.* The operative Complaint's deception theory is inherently product-specific—each product has a unique formulation, and the question of whether any given product is deceptively labeled as "Target Clean" requires an individualized ingredient analysis. None of the newly proposed plaintiffs' products relate to the Identified Products, nor do their purchases fall within the same timeframe as the dismissed plaintiffs' purchases. There is no good cause for these late amendments, and the prejudice to Target outlined below negates any argument to the contrary.

Plaintiff's argument that amendment should be permitted because it "supports adjudication on the merits" likewise fails. Plaintiff invokes the principle that case management orders should not override the Court's "fundamental obligation to achieve a just adjudication of a civil claim." Pl. Mem. at 18 (citing *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Pracs. Litig.*, 2002 WL 31371945, at *5 (D. Minn. Oct. 7, 2002)). But this principle does not transform Rule 16(b) into a tool that permits a plaintiff to rewrite her entire case whenever her original allegations prove false. The good cause standard exists precisely to ensure that scheduling order deadlines are meaningful, and permitting amendment whenever a plaintiff claims a desire to litigate "on the merits" would render

24

those deadlines meaningless. *See Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 582 (D. Minn. 1999) ("Rule 16(b) assures that '[a] magistrate judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'") (alteration in original) (internal citation omitted). The merits of Plaintiff's claims do not change the threshold inquiry: whether Plaintiff was diligent in seeking amendment. She was not. Plaintiff's inability to litigate her claims on the merits is not a consequence of the scheduling order.

### C.    Plaintiff Cannot Satisfy Rule 15 Because the Proposed Amendment Would Cause Significant, Undue Prejudice to Target

Even if Plaintiff could demonstrate good cause, her motion should still be denied because the proposed amendments would cause significant, undue prejudice to Target. An essential factor for the Court is consideration of whether "the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 FED. PRAC. & PROC. CIV. § 1487 (3d ed.).

Here, the proposed amendments easily support a finding of prejudice for at least three reasons: (1) significant portions of product-specific discovery to date, including discovery as to product specifications, ingredients, sales and profits, and third-party discovery has been scoped to the thirteen Identified Products, and expansion to thousands of unspecified new products would require Target to start over and seek court guidance on renewed discovery disputes; (2) the amendment would effectively restart this case on new damages theories, claims and class definitions, warranting another challenge to the sufficiency of the pleadings and sacrificing judicial efficiency; and (3) Target would have

25

to re-engage experts on the new allegations insofar as the claims of consumer perception and deception based on the reasonable consumer standard would be extended beyond cosmetics.

### 1.    Relevant Discovery Has Been Limited to the Identified Products

To date, the responses to discovery requests seeking product and sales information, product specifications, returns, comparability analyses, and ingredient panels, as well as subpoenas to third-party vendors, and expert analyses regarding damages and consumer perception, have been limited to the thirteen Identified Products set forth in the original Complaint. Tagvoryan Decl. Exs. Q, R. And discovery as to the Target Clean advertisements, program specifics, banned ingredient lists, and related issues were similarly limited to beauty products. Based on this record, the Court should not give any weight to Plaintiff's assertion that the Complaint alleges claims that cover the newly proposed Target Clean products.

Permitting Plaintiff to expand their allegations now would render all of this prior discovery work incomplete, permit Plaintiff to renege on meet-and-confer compromises which the parties have abided by throughout discovery, and require Target to go back to square one for a massive universe of products and new time periods including during litigation.[9] The Court should deny Plaintiff's Motion for this reason alone. *See e.g.*, *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1363-64 (Fed. Cir. 2013) (denying motion to

---

[9] Pursuant to the Court's instruction that the parties should confer and agree to an appropriate and limited time period, the parties agreed that the relevant time period would extend to January 31, 2024. *See* Tagvoryan Decl. ¶ 10, ECF 112.

amend to broaden the issues where parties had entered into stipulations "meant to define and narrow the relevant issues in the case").

### 2. The Proposed Amendments Introduce New Damages Theories, Claims, and Broader Class Definitions

The proposed expansion into thousands of new products also change the Rule 23 calculus and the underlying deception theories. In particular, Plaintiff seeks to add non-cosmetics with new ingredients that she claims negate the "Target Clean" certification through consumer use not originally at issue, with newly defined consumer expectations that are not alleged in the operative Complaint, including from exposure to sprays and oils. *See e.g.*, PAC ¶¶ 204-11, 232-35. These allegations, if allowed to proceed here, will essentially rewrite the entire case. This is per se prejudicial to Target. *See e.g.*, *Cencast Servs., L.P.*, 729 F.3d at 1363-64 (holding that "'if the amendment [to a pleading] substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.'") (alteration in original) (quoting 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1487 (Apr. 2013)).

Plaintiff claims she will not seek additional discovery beyond what she has already sought. Pl. Mem. at 32. This is also far fetched. But even so, the burden is not evaluated only as to what discovery a defendant may be served with, but also what discovery defendant would need to prove up its defenses. *See e.g.*, *Jacob v. Cotton*, No. 4:20CV3107, 2022 WL 94410, at *3 (D. Neb. Jan. 10, 2022), *aff'd*, No. 23-1023, 2023 WL 6532393 (8th Cir. Oct. 6, 2023) (denying motion to amend because, *inter alia*, "[i]f two additional claims

and a Defendant were added at this point, the Defendants would need to repeat discovery on the additional claims, perform full discovery on an additional Defendant"). Here, the amendments would require Target to investigate entirely new product lines (including hair care, body wash, hand soap, and dry shampoo), take additional depositions and serve discovery on the new plaintiffs, and retain additional experts to evaluate the elements of class certification and the Plaintiff's new claims. The burden would be compounded by the broadened class definition, which would require class-related discovery on a potentially limitless set of products. And this motion comes after the last day to notice depositions and subpoenas has already passed and experts have already been retained. *See e.g.*, *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 799 (N.D. Ohio 2007) (denying motion for leave to substitute new class plaintiffs because proposed amendment sought "a wholesale substitution of parties with different facts and discovery" and "since this case has been pending for ten months and substantial discovery has been completed, there is significant prejudice to the Defendant").

Plaintiff claims that the proposed new plaintiffs "have already collected relevant documents and can produce them immediately" and "have already gathered deposition availability for the months of April and May 2026." Pl. Mem. at 23. But the readiness of the proposed plaintiffs to produce documents and sit for depositions says nothing about the burden imposed on Target. These burdens exist regardless of whether Plaintiff serves additional written discovery requests. And Plaintiff's suggestion that the discovery stay Target requested somehow minimizes the prejudice is equally unavailing because the stay was requested to preserve judicial resources pending resolution of this motion and a motion

28

for summary judgment, not to provide Plaintiff with a convenient vehicle to reset the case and start over with new parties and products.

Plaintiff argues that the Court must balance the prejudice to Target against the prejudice to Plaintiff from denying the amendment, citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) and *In re Cattle & Beef Antitrust Litig.*, No. CV 22-2903, 2024 WL 4355119, at *4 (D. Minn. Sept. 30, 2024). Pl. Mem. at 25-26. But the balancing test does not tip in Plaintiff's favor here. Plaintiff claims she will suffer "substantial prejudice" because she will be unable to adjudicate her claims on the merits and will face a premature summary judgment motion. Pl. Mem. at 26. This argument ignores that Plaintiff's predicament is entirely self-inflicted and says nothing about how Plaintiff will be prejudiced from the denial of her attempt to bring in new plaintiffs with claims and purchases different from hers. Here, the relevant facts (i.e., what product Plaintiff purchased and whether more plaintiffs exist with additional purchases of different products) were always within Plaintiff's and counsel's own knowledge. By contrast, the prejudice to Target from granting the amendment is concrete and substantial: Target would be required to redo discovery across entirely new product lines and categories, depose five new plaintiffs, re-engage experts, and defend a fundamentally different case after more than two years of litigation. The balance of prejudice thus weighs decidedly against amendment.

### 3. Plaintiff's Proposed Amendments Would Effectively Restart the Case

When this Court denied Target's motion to dismiss, it expressly anticipated that "[t]he contours of this litigation will certainly narrow through the course of discovery, as

29

theories adapt to the facts that are developed and the evidence that accrues." *Boyd*, 750 F. Supp. 3d at 1022. The Court similarly expected Plaintiffs to "appropriately narrow their theories of liability and requests for relief in this case based on the evidence that is developed." *Id*. at 1047. Plaintiff's proposed amendment flouts those expectations entirely. Rather than narrowing based on the facts developed in discovery—which have revealed that she did not even purchase the product she claimed—Plaintiff seeks to exponentially expand the scope of this litigation. The original class definition was tied to thirteen specifically identified products, and the Court's reasonable consumer analysis was similarly focused. But Plaintiff now seeks to redefine the proposed class from purchasers of the specifically identified "Target Clean Identified Products" to purchasers of any "Target Clean Beauty Product." This is not a minor refinement; it is a wholesale rewrite of the class definition and the consumer perception theory that would encompass potentially thousands of products across dozens of brands and product categories—many of which would not contain the ingredients alleged to be harmful and many of which have different labeling histories, and certification records. Each of these products would require individualized expert analysis, which significantly expands the expert needs in this case.

Plaintiff relies on authority holding that courts have "significant discretion to modify the class definition, even at the certification stage." Pl. Mem. at 30. But none of those cases involved the wholesale rewrite of a class definition that Plaintiff proposes here. In *Deutsch*, the court's discussion of class definition modification arose in the context of certification, not as a basis for leave to amend under Rules 15 and 16 and even then, the court noted that any expansion of the class definition at the certification stage is a "rare

30

occurrence." *See Deutsch v. My Pillow, Inc.*, No. 20CV00318SRNECW, 2023 WL 3125549, at \*33 (D. Minn. Apr. 27, 2023). Similarly, both *In re Select Comfort Corp. Secs. Litig.*, 202 F.R.D. 598 (D. Minn. 2001), and *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018), involved minor refinements to class boundaries and not the transformation of a class defined by thirteen specifically identified products into one encompassing potentially thousands of unidentified products across entirely new product categories. *See In re Select Comfort Corp. Secs. Litig.*, 202 F.R.D. at 606 (permitting slight expansion of class definition by changing subclass effective date from December 4, 1998 to December 3, 1998 to conform to the evidence); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 211 (permitting slight expansion of class definition to include generic purchasers in addition to brand purchasers of drug already in class definition because there were no "notice and discovery" issues for defendant and distinguishing Rule 16 good-cause caselaw because court was ruling on "a timely motion for class certification, not a belated motion for leave to file an amended complaint"). Plaintiff's attempt to use these authorities as a backdoor to expand her claims far exceeds the bounds of what those cases contemplate.

Moreover, when modifying a class definition during class certification determination, courts adapt the class to the evidence and discovery in the record—not to general unvetted new claims. *See e.g.*, *In re Select Comfort Corp. Secs. Litig.*, 202 F.R.D. at 606. A court's discretion to modify a class definition does not extend to permitting a plaintiff to fundamentally change the scope of a case that has been litigated for over two years on the basis of specific products and specific deception theories. *See e.g.*, *In re*

*Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (KBF), 2016 WL 1629350, at

*1 (S.D.N.Y. Apr. 25, 2016) (denying motion to amend complaint which would have

broadened the class definition shortly before scheduled class certification briefing

deadlines, holding "[n]ot only would allowing the amendments seriously prejudice

defendants and cause substantial delays to the existing schedule, but plaintiffs, moreover,

did not exercise reasonable diligence in putting these motions before the Court in a timely

manner. The time for raising entirely new theories of the case has long since passed.").

> ### D. The Proposed Amendments Are Futile, and Plaintiff's and Counsel's Bad Faith Is Evident

Even setting aside the threshold defects discussed above, Plaintiff's proposed

amendments are futile under Rule 15 because they fail to state viable claims or are

otherwise implausible on their face. An amendment is futile if it "could not withstand a

motion to dismiss." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Indeed, if

amendment is allowed, Target would have no choice but to challenge the pleadings once

again, expending further time and resources, based on Plaintiff's choice to adopt even

broader allegations than the ones currently alleged. *See e.g., Star Auto Sales of Queens

LLC v. Iskander*, No. 19CV06791RPKST, 2023 WL 5631155, at *3 (E.D.N.Y. Apr. 20,

2023) (when plaintiff files an amended complaint to add factual allegations, "a defendant

is entitled to an opportunity to respond and may file a motion to dismiss despite having

previously filed an answer" to the original complaint).

Here, several of the proposed amendments are subject to dismissal for multiple

reasons: (1) certain product allegations—such as Ms. DeFlorio's claim that she was

deceived into purchasing a Target Clean product after she retained counsel to sue Target for that very advertising—are implausible under *Twombly* and *Iqbal*; (2) the inclusion of products that no current or prospective plaintiff purchased is improper under basic standing principles; and (3) the wholesale expansion of the class definition to encompass thousands of unidentified products would create insurmountable individualized issues that preclude class treatment and would likely fail at the pleading stage for lack of particularity under Rule 9(b).

### 1.  Many of Plaintiff's Newly Proposed Allegations Are Implausible

Plaintiff's new allegations state that Ms. DeFlorio purchased "Not Your Mother's Clean Freak Refreshing Dry Shampoo" on March 14, 2023 after retaining counsel in this case and after signing her retainer agreement seeking to pursue Target for false advertising with respect to its Target Clean program. *Compare* Tagvoryan Decl. Ex. F (retainer agreement dated February 13, 2023 and signed February 14, 2023) *with* PAC ¶ 21 (DeFlorio purchased Not Your Mother's Clean Freak Refreshing Dry Shampoo on March 14, 2023). The allegation that she was misled into buying a Target Clean product after she signed up to file this lawsuit is borderline frivolous and at best, futile and implausible.

### 2.  Standing Remains a Pleading Defect

Plaintiff's inclusion of specific products such as the CoverGirl TruBlend Matte Made Foundation (PAC ¶ 169) that no current or prospective plaintiff purchased, is improper. *See e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citation omitted) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally

have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").

While district courts differ on whether a plaintiff has standing to sue for a product she did not purchase, this Court should not adopt such a theory to allow Plaintiff to sue for thousands of other Target Clean products for two reasons. First, Plaintiff does not, and cannot, allege that all the thousands of Target Clean products have "unwanted" ingredients. *See Wallace*, 747 F.3d at 1030 (plaintiff does not have standing to sue for a product that does not "actually exhibit[] the alleged defect") (internal citation omitted). Second, as courts discussing the split have explained, "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing [because] . . . [t]he similarity of a product, by itself, says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908–09 (C.D. Cal. 2021); *Oh v. Fresh Bellies, Inc.*, No. CV 24-5417 PSG, 2024 WL 4500727, at *4 (C.D. Cal. 2024) ("The Court acknowledges that it has previously held that a class action plaintiff can bring claims for products they did not purchase and postponed the substantially similar inquiry until the class certification stage. . . . However, in light of the analysis in *Lorentzen*, the Court is persuaded that Plaintiff does not have standing to bring claims for products she did not purchase.").

But even if the Court accepts this "substantially similar" theory, Plaintiff does not have standing. In Plaintiff's letter to the Court opposing early summary judgment (ECF 149), Plaintiff relied heavily on *Seutter v. Mead Johnson Nutrition Co.*, 763 F. Supp. 3d 783 (D. Minn. 2025) and claimed that this case is the same. Not so. In *Seutter*, the court

34

found that the plaintiff had standing to sue at the pleading stage because the "slightly different **variations** of the **same product**" were "substantially similar" enough. *Id.* at 792 (emphasis added). Plaintiff DeFlorio is not suing for a slightly different variation of the CoverGirl product or a "substantially similar" product, but a different product entirely. Her other new alleged purchases implicate products that are not even similar to the original makeup product, let alone substantially similar. Understanding that district courts do not agree whether products have to be substantially similar (*id.*), the "substantially similar" is *at minimum* the bar to meet, which Plaintiff cannot. Plainly put, Plaintiff's articulated basis for standing does not hold up, looking to their own cited authority. *See also In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *3 (D. Minn. July 12, 2017) (extending standing to variations of "Nature Valley crunchy granola bars and Nature Valley chewy granola bars" but *not* to other products like "Sweet & Salty granola bars, Breakfast Biscuits, … Oatmeal Bars or Oatmeal Bistro Cups").

### 3.  The New Class Definition Is Unworkable

While the District Court chose to defer the standing issue to class certification for a class defined by thirteen different products, the District Court will have to decide if the same result is warranted for a proposed class defined to include thousands of "Target Clean Beauty Products," which is undefined and which Plaintiff cannot plausibly allege to all be substantially similar to any of the purchased products. In its order on Target's motion to dismiss, the District Court "acknowledge[d] that some of Target's arguments present[ed] a close call" (*Boyd*, 750 F. Supp. 3d at 1006) and with this amendment, Plaintiff veers far beyond what the District Court found to be sufficient allegations at the pleading stage.

35

Ultimately, starting this case over from the beginning is not an efficient or just use of judicial resources and the Court should exercise its discretion to prevent that result.

And notably, there would be no finality if the amendment is granted. If the Court permits Plaintiff to substitute in new plaintiffs and expand the product universe at this stage, there is nothing to prevent further rounds of amendment as additional proposed plaintiffs review their purchase histories and identify still more products, perpetuating the cycle of delay that has characterized this case from its inception. This cycle would be based on the nonsensical assumption that a plaintiff can assert claims of an instance of deception that they have no present recollection of whatsoever, by working backwards from Target's records.

### 4. A Finding of Bad Faith Is Warranted

Plaintiff argues that she did not act in bad faith in seeking to file the PAC, defining bad faith as acting "with intent to deceive, harass, mislead, delay, or disrupt." Pl. Mem. at 28 (citing *Brown v. Pfeiffer*, No. 019CV03132WMWKMM, 2020 WL 1164594, at *3 (D. Minn. Mar. 11, 2020)). But the record belies this characterization. In addition to the dilatory and costly tactics employed by Plaintiff's counsel as described in counsel's declaration attached hereto, Plaintiff served multiple verified interrogatory responses—sworn under penalty of perjury attesting to the purchase of a product she never bought. This is not an innocent mistake; it reflects a pattern of filing and verifying allegations across over a dozen plaintiffs without conducting even the most basic factual investigation. The timeline of these events, including Plaintiff's own purported "realization' about the veracity of her claim *a day after* she served amended discovery responses, suggest, at a minimum, a

36

cavalier approach to the truth of verified filings. Overall, the broader pattern of conduct in this case— including the dismissal of almost all plaintiffs after failing to substantiate their claims or respond to discovery, the last-minute recruitment of entirely new plaintiffs through renewed advertisements, and the attempt to expand the case into new product categories to avoid summary judgment—is inconsistent with the good faith required under Rule 15(a). *See ecoNugenics, Inc. v. Bioenergy Life Sc., Inc.*, 355 F. Supp. 3d 785, 787, 791 (D. Minn. 2019) (finding amendment was futile and in bad faith, noting bad faith includes "the conscious doing of a wrong because of dishonest purpose or moral obliquity") (internal citation omitted); *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020) (plaintiff's "attempted addition of the claim had more to do with a change in litigation strategy than in the factual or legal basis of his case."). While Target recognizes that courts make all reasonable inferences in favor of allowing amendment, the cumulative weight of Plaintiff's conduct in this case warrants skepticism of Plaintiff's professed good faith.

### E.    Plaintiff Cannot Substitute in New Class Representatives at this Juncture

Finally, Plaintiff attempts to circumvent the Rule 16 requirements by prematurely seeking to substitute new class representatives. However, a class has not been certified. *See Oetting*, 795 F.3d at 892 (denying a motion to substitute where a class had not yet been certified and where a plaintiff had "ample notice that defendants were asserting lack of standing as a jurisdictional defense"). "Rule 15 does not permit a plaintiff who lacks standing to cure this defect by adding additional parties through amendment." *See*

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*, 889 F. Supp. 2d 912, 929 (S.D. Tex. 2012) ("where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs"). The Court should be skeptical of this last-minute "plaintiff shopping" to rescue a case from dismissal. *See e.g.*, *Velazquez v. GMAC Mortg. Corp.*, No. CV 08-05444DDPPLAX, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) (denying pre-certification substitution of new plaintiffs when deposition evidence revealed that the named plaintiffs were inadequate and holding that court "will not permit amendments that amount to a 'back-door attempt to begin the action anew' where, in all likelihood, 'the original plaintiffs were never qualified to represent the class.'") (citing *Lidie v. State of California,* 478 F.2d 552, 555 (9th Cir. 1973)).

Here, there is no dispute that this case does not have a certified class. Under *Oetting*, 795 F.3d at 892, "substitution of plaintiffs is often appropriate when a class representative's claim becomes moot after the class is certified" but court's duty to protect unnamed class members and permit substitution "does not exist prior to certification of the class in a separate action such as this."

Moreover, Plaintiff has had "ample notice that [Target was] asserting lack of standing as a jurisdictional defense" for over two years. Target asserted standing as a basis to strike Plaintiffs' class claims in response to Plaintiffs' Complaint. *See* ECF 18, 20. The District Court observed as much. *See Boyd*, 750 F. Supp. 3d at 1027 ("Plaintiffs readily concede that the pleadings may eventually need to be restructured through amendment to resolve standing challenges posed by the nature of this lawsuit"). If the Court rightfully

finds that Ms. DeFlorio lacks standing, then it cannot permit substitution. *See e.g.*, *Castillo v. United Rentals (N. Am.), Inc.*, No. C17-1573JLR, 2018 WL 3429936, at *2 (W.D. Wash. July 16, 2018) ("when the named plaintiff's claim is defective—say, for instance, the named plaintiff lacks standing—substitution of that named plaintiff is permissible only when the class or collective has already been certified") (collecting cases).

Similarly, there is also no valid basis to "substitute" new plaintiffs for the former California and Minnesota class representatives who have *already dismissed* their claims. *See e.g.*, *id*; *Bernor v. Takeda Pharms. Am., Inc.*, No. LACV1204856VAPJPRX, 2018 WL 588563, at *4 (C.D. Cal. Jan. 25, 2018) (rejecting plaintiffs' contention that the court "may allow the substitution of a new plaintiff, although the putative class has not been certified in this case" when the purported class representatives to be substituted had settled and voluntarily dismissed their claims).

The timing of the proposed plaintiffs' purchases further underscores the impropriety of substitution. Several of the proposed plaintiffs made their purchases very recently, some within weeks of this motion. For example, Sullivan purchased at least one product around March 20, 2026, less than a month before this motion was filed. PAC ¶ 23; *see also* Table of Plaintiffs in the PAC in Section III, *supra*. This pattern suggests that the proposed class representatives were recruited specifically for this litigation at the eleventh hour to remedy current defects, rather than organically joining a long-standing dispute to step in for the dismissed plaintiffs and their original purchase experiences. Indeed, Plaintiff argues that she "simply seeks to amend her Complaint to replace persons initially proposed and address

39

challenges raised by Target," but does not explain how the new plaintiffs fit that mold. Pl. Mem. at 23.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Target respectfully requests that the Court deny Plaintiff's Motion for Leave to File the First Amended Complaint. Plaintiff's motion is an attempt to escape the consequences of her own failures and those by her counsel, by radically expanding a case that this Court expected would narrow. Good cause does not exist and the Court should not permit it.

Respectfully submitted,

Dated: April 20, 2026

**BLANK ROME LLP**

*/s/ Ana Tagvoryan*
Ana Tagvoryan
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Tel.: (424) 239-3465
Fax: (424) 239-3690
Email: ana.tagvoryan@blankrome.com

Melanie S. Carter
Serena S. Gopal
Fiona Steele
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
Tel.: 215.569.5644
Email: melanie.carter@blankrome.com
        serena.gopal@blankrome.com
        fiona.steele@blankrome.com

40

**GREENE ESPEL PLLP**

*/s/ Faris A. Rashid*
Faris A. Rashid, Reg. No. 0391508
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
frashid@greeneespel.com
(612) 373-0830


*Attorneys for Defendant, Target Corporation*

41